1  Eric H. Gibbs (SBN 178658)
2  Dylan Hughes (SBN 209113)
   Steve Lopez (SBN 300540)
3  **GIRARD GIBBS LLP**
   One Kaiser Plaza, Suite 1125
4  Oakland, California 94612
   Telephone: (510) 350-9700
5  Facsimile: (510) 350-9701
6  ehg@classlawgroup.com
   dsh@classlawgroup.com
7  sal@classlawgroup.com

8  Gregory F. Coleman (*pro hac vice* to be submitted)
9  Lisa A. White (*pro hac vice* to be submitted)
   **GREG COLEMAN LAW, PC**
10 First Tennessee Plaza
   800 S. Gay Street, Suite 1100
11 Knoxville, TN 37929
   Telephone: (865) 247-0080
12 Facsimile: (865) 522-0049
13 greg@gregcolemanlaw.com
   lisa@gregcolemanlaw.com
14

15 [Additional Counsel on Signature Page]

16                **UNITED STATES DISTRICT COURT**
17                **NORTHERN DISTRICT OF CALIFORNIA**

18 CHERYL TAPP, RENEE SITAVICH,            Case No. _____
   SARAH HUDSON, BRANDON COLSON,
19 and BRÜNO LOZANO, on behalf of          **CLASS AND COLLECTIVE ACTION**
   themselves and all others similarly situated,  **COMPLAINT**
20
21              Plaintiffs,               **JURY TRIAL DEMANDED**
          v.
22
23 SKYWEST, INC., and SKYWEST
   AIRLINES, INC.,
24
25              Defendants.
26
27
28

**INTRODUCTION**

1.     SkyWest flight attendants spend hours each day performing required duties when an aircraft is not in flight. These duties are essential to the operation of the airline and include pre- and post-flight safety inspections, boarding and deplaning passengers, checking in for duty up to an hour before the flight, and remaining at the airport in full uniform between flights.  SkyWest Airlines does not pay its flight attendants for any of these activities.  Even though this work is essential to the airline's business operations and many of the duties are strictly required by the Federal Aviation Administration, SkyWest only pays its flight attendants for the portion of the workday that they spend in the airplane when the cabin doors are closed.

2.     Plaintiffs Cheryl Tapp, Renee Sitavich, Sarah Hudson, Brandon Colson, and Brüno Lozano, current and former SkyWest flight attendants, bring this action on behalf of themselves and all other similarly situated flight attendants who are or were paid hourly wages by SkyWest, Inc. and SkyWest Airlines, Inc. (collectively "SkyWest") during the applicable statute of limitations period (three years for FLSA and some state claims; four years for other state claims). By essentially paying wages only when flight attendants are on an airplane in motion, SkyWest violates applicable state and federal laws.  In addition, SkyWest fails to properly record and display flight attendants' work hours and hourly wages on pay records in a manner that allows them to determine the airline's adherence to the applicable state and federal laws.

**JURISDICTION & VENUE**

3.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, 29 U.S.C. § 201, *et seq*. This Court has supplemental jurisdiction and 28 U.S.C. § 1367, over the California, Arizona, and Washington statutory claims alleged herein.

4.     This Court has personal jurisdiction over SkyWest because it: (1) operates a business within this District; (2) committed acts in violation of the FLSA as alleged herein within this District;

CLASS AND COLLECTIVE ACTION COMPLAINT

(3) maintained continuous and systematic contacts with this District over a period of years; and (4) purposefully availed itself of the benefits of doing business within this District.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because SkyWest conducts business within this District, has agents within this District, transacts its affairs in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

6.     Assignment is proper to the San Francisco or Oakland division of this District under Local Rule 3-2(c)-(d), as a substantial part of the events which give rise to the claims below occurred in the City and County of San Francisco.

## THE PARTIES

7.     Plaintiff Cheryl Tapp is a resident of San Mateo, San Mateo County, California. She is currently employed by SkyWest Airlines as a flight attendant, and is based in San Francisco, California at the San Francisco International Airport (SFO). She was hired as a flight attendant on January 5, 2010. She has been based in San Francisco for the majority of her tenure with SkyWest. For the period from June 1, 2015 to August 1, 2015, she was based in Los Angeles, California at Los Angeles International Airport (LAX).

8.     Plaintiff Renee Sitavich is a resident of Napa, Napa County, California. She was formerly employed by SkyWest Airlines as a flight attendant based in Chicago, Illinois (ORD) from July 2005 until August 2012. From September 2012 until she resigned from her position in January 2014, she was based in San Francisco, California (SFO). She was hired by SkyWest on July 18, 2005.

9.     Plaintiff Sarah Hudson is a resident of San Luis Obispo, San Luis Obispo County, California. She was formerly employed by SkyWest Airlines as a flight attendant. She was hired by SkyWest on March 14, 2013 and resigned from her position in February 2015. She was based at Fresno Yosemite International Airport (FAT) for all of her tenure working for SkyWest.

10.     Plaintiff Brandon Colson is a resident of Phoenix, Maricopa County, Arizona. He was formerly employed by SkyWest Airlines as a flight attendant. He was hired by SkyWest on August 8, 2012 and resigned from his position in August 8, 2014. He was based at Phoenix Sky Harbor International Airport (PHX) in Arizona for all of his tenure working for SkyWest.

CLASS AND COLLECTIVE ACTION COMPLAINT

11.    Plaintiff Brüno Lozano is a resident of Ypsilanti Township, Michigan. He was formerly employed by SkyWest Airlines as a flight attendant. He was hired by SkyWest on May 22, 2007 and resigned from his position in March 1, 2014. While he was with SkyWest, he was based in Milwaukee (MKE), Chicago (ORD), Los Angeles (LAX), San Francisco (SFO), and Seattle. He was based at Seattle-Tacoma International Airport (SEA) in Washington for approximately the last year of his tenure working for SkyWest.

12.    Plaintiffs and members of the Nationwide Class have been employed as flight attendants by SkyWest Airlines during the three years preceding this lawsuit.

13.    Defendant SkyWest, Inc. is a Utah corporation that is registered to do business in California, and whose principal office is located at 444 South River Road, St. George, Utah 84790.

14.    Defendant SkyWest Airlines, Inc. is a Utah corporation that is registered to do business in California, and whose principal office is located at 444 South River Road, St. George, Utah 84790. SkyWest Airlines is a wholly owned subsidiary of SkyWest, Inc.

15.    SkyWest, Inc. and SkyWest Airlines, Inc. are, for the purposes of the FLSA and the state statutory claims, a common or joint enterprise or partnership that is collectively, jointly and severally liable to Plaintiffs and members of the Class as described herein. Defendants schedule approximately 1700 flights per day and have a fleet of approximately 350 aircraft that operate as SkyWest Airlines. SkyWest Airlines, Inc. employs approximately 10,800 people.

16.    SkyWest is in the business of providing regional commercial air service to cities across the United States, Canada, Mexico, and the Caribbean.

17.    Upon information and belief, SkyWest Airlines, Inc. currently employs approximately 2,663 flight attendants in the United States.

## AIRLINE TERMINOLOGY

18.    Relevant airline terms are explained below using an actual (but also typical) work trip of a typical flight attendant. The example schedules were those of trips flown by former SkyWest Airlines flight attendant Andrea Hirst. This schedule format and terminology is typical for every SkyWest flight attendant. The schedules of all SkyWest flight attendants is recorded in SkyWest's computerized scheduling and pay record system, SkedPlus+.  Figure 1, below, is an excerpt of Ms. Hirst's schedule

CLASS AND COLLECTIVE ACTION COMPLAINT

from that system:

**Figure 1: Typical Pairing Details.**



**Pairing Details**

AWD E1599 CRJ  -  038405 Annie Hirst  -  ORD CR7 FA

Tuesday 10-30-2012   Report: 14:20

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | DL4466 | N460SW | CRJ | MSP | MOT | 15:38 | 16:57 | 49 | 1:19 | 1:30 | 449 | 3515 | 0:22 |
| 2. | DL4466 | N460SW | CRJ | MOT | MSP | 17:19 | 18:37 | 40 | 1:18 | 1:28 | 449 | 3033 | 0:55 |
| 3. | DL4724 | N460SW | CRJ | MSP | ATW | 19:32 | 20:29 | 37 | 0:57 | 1:01 | 236 | 2010 | |

Day Total: 3:34  3:59   Duty: 6:24

Release: 20:44/30   Hotel: Holiday Inn Select (920)735-9955   Layover: 9:31
Shuttle: SHUTTLE OPERATED BY HOTEL

Wednesday 10-31-2012   Report: 06:15

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4. | DL4846 | N460SW | CRJ | ATW | MSP | 06:45 | 07:44 | 40 | 0:59 | 1:06 | 236 | 2290 | 1:25 |
| 5. | DL4560 | N659BR | CRJ | MSP | FAR | 09:09 | 10:11 | 30 | 1:02 | 1:02 | 223 | 2078 | 1:04 |
| 6. | DL4560 | N659BR | CRJ | FAR | MSP | 11:15 | 12:17 | 46 | 1:02 | 1:03 | 223 | 2005 | 0:47 |
| 7. | DL4655 | N659BR | CRJ | MSP | YWG | 13:04 | 14:34 | 40 | 1:30 | :30 | 394 | 3242 | |

Day Total: 4:33  4:41   Duty: 8:34

Release: 14:49/31   Hotel: Radisson Hotel Downtown (204)956-0410   Layover: 15:41
Shuttle: TRANSPORTATION PROVIDED BY THIRD PARTY VENDOR – Hollywood (2

Thursday 11-01-2012   Report: 06:30

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credt | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8. | DL4736 | N915EV | CRJ | YWG | MSP | 07:23 | 08:46 | 47 | 1:23 | 1:29 | 394 | 2833 | 2:31 |
| 9. | DL4472 | N460SW | CRJ | MSP | LNK | 11:17 | 12:34 | 28 | 1:17 | 1:17 | 331 | 2497 | 0:24 |
| 10. | DL4472 | N460SW | CRJ | LNK | MSP | 12:58 | 14:15 | 47 | 1:17 | 1:19 | 331 | 2676 | 1:54 |
| 11. | DL4556 | N453SW | CRJ | MSP | BNA | 16:09 | 18:12 | 50 | 2:03 | 2:07 | 695 | 4509 | |

Day Total: 6:00  6:12   Duty: 11:57

Release: 18:27/01   Hotel: Wingate Nashville Airport (615)884-9777   Layover: 11:03
Shuttle: SHUTTLE OPERATED BY HOTEL

Friday 11-02-2012   Report: 05:30

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12. | DL4811 | N453SW | CRJ | BNA | CVG | 06:13 | 08:18 | 30 | 1:05 | 1:06 | 230 | 2126 | 0:40 |
| 13. | DL4648 | N453SW | CRJ | CVG | BNA | 08:58 | 08:54 | 46 | 0:56 | 1:01 | 230 | 2069 | 0:59 |
| 14. | DL4791 | N453SW | CRJ | BNA | MSP | 09:53 | 12:04 | 50 | 2:11 | 2:11 | 695 | 5130 | |

Day Total: 4:12  4:18   Duty: 6:49

Release: 12:19/02

**Totals:** Report 14:20/30  Release **12:19/02**  Block **18:19**  Credit **19:10**  TAFB **69:59**

Key:  Scheduled;  Estimated;  **Actual**;  Overridden;

Trip Summary  Crewmembers for Each Flight

* First Flight
✓ Checked In

| Captain | First Officer | Flight Attendant |
|---|---|---|

19.     Each scheduled day above consists of a series of flights, which are together called a pairing, while each individual flight is called a leg. The schedule above is called a "Pairing Detail," and is electronically updated during and immediately following the completion of the trip and reflects the actual circumstances of the pairing as flown. Currently employed flight attendants are able to see their own past and upcoming Pairing Details, which are kept on the SkedPlus+ system for no less than five years.

20.     At the top left of each day's schedule (Fig. 1: A), the crew members' report time is shown. Report time is the time at which a crew member must have arrived at the airport, in full uniform, with all necessary items for flight, cleared security, and "checked in" through the company computer or a smart phone or tablet (Fig. 2; discussed further below). Thus, on October 30, 2012, Ms. Hirst reported for duty at or before 14:20 (or 2:20 p.m.).[1]  If a flight attendant checks in before required, the mandatory report time is recorded rather than the actual check in time.[2]

21.     When the main cabin door is opened at the day's final destination, the release time (Fig. 1: B) is automatically calculated. The scheduling system adds fifteen minutes to the time the doors open, whether or not all passengers have actually deplaned and whether or not all flight attendant duties are complete. The Figure 1 pairing detail shows Ms. Hirst's release time as 20:44/30 (Fig. 1: B), which means the main cabin door opened at 8:29 p.m. on October 30, 2012, and the entire crew was "released from duty" at 8:44 p.m.

22.     The difference between report time and release time is considered a flight attendant's duty day.  This constitutes the flight attendant's continuous workday, during which, flight attendants are not allowed to be out of uniform and are at all times under the direction of the company.  The length of the flight attendant's duty day is important because many Federal Aviation Administration ("FAA")

---

[1] Time of day designations are shown in local 24-hour military time, and all elapsed time is shown as hours: minutes. Note: generally the term crew member refers to both pilots and flight attendants. This complaint only addresses the circumstances of flight attendants.

[2] Upon information and belief, flight attendants' actual check-in times would be available through electronically stored information preserved by SkyWest.

CLASS AND COLLECTIVE ACTION COMPLAINT

flight safety regulations are tied to it. On October 30, 2012, Ms. Hirst's duty day lasted for six hours and twenty-four minutes (Fig. 1: C). All crew members who work a particular pairing have the same report times, release times, and duty day hours.

23.     Although certain of flight attendants' required work activities fall beyond the duty day, SkyWest does not acknowledge the time spent on these activities (e.g., reading "Must Know Before You Go" notices, updating manuals, time in excess of fifteen minutes after the last flight of a duty day, and time spent writing up irregular operations reports). For the purposes of this complaint, we use the terms working hours and working day as inclusive of all work activities.

24.     Figure 1, notations D, E, F, and G are highlighted to explain the travel details for a single day, October 31, 2012. The first flight of this day originated at ATW (Outagamie County Regional Airport in Wisconsin) at 6:45 a.m. and arrived at MSP (Minneapolis St. Paul) at 7:44 a.m. (Fig. 1: D, line 4). The "block time" (sometimes called "flight time" with minor distinctions) for this trip is 59 minutes (Fig. 1: E). Block time indicates the actual length of time that it took to fly between these two airports on this specific day, from "block out" (closing the main cabin door and moving away from the jet bridge) to "block in" (arriving at the destination jet bridge and opening the main cabin door).

25.     Further to the right on line 4, the "turn time" (or time between flights) is indicated in elapsed hours and minutes. As shown in Fig 1: F, line 4, the turn time between the flight on line 4 and the flight on line 5 was one hour and twenty-five minutes. Generally, if the turn time is less than forty-five minutes, flight attendants *cannot* leave the airplane due to FAA and SkyWest required postliminary and preliminary responsibilities. During longer turn times, flight attendants may leave the plane, eat a meal, or use the airport's restroom. However, regardless of the *scheduled* length of the turn time in a given duty day, flight attendants are required to remain in the airport and in full uniform. Flight attendants are not paid for turn time.

26.     SkyWest can, and often does, rearrange flight attendant schedules mid-duty day to reduce overall flight delays by replacing a delayed crew with a crew that is already in the airport. The ability of the airline to rearrange a flight attendant's schedule and destination (without a consultation

CLASS AND COLLECTIVE ACTION COMPLAINT

with the flight attendant) is an airline scheduling tool to reduce or avoid service delays for revenue passengers, thereby keeping the overall national transportation system more efficient and timely.

27. If SkyWest has scheduled an "equipment change" (change from one aircraft to another) or if there are mechanical problems with the original aircraft, flight attendants use turn time to gather all of their belongings, walk to the other gate, and perform a security and supply check on the new aircraft prior to boarding passengers. Any unanticipated delays (e.g., mechanical problems or weather delays) fall into turn time and are uncompensated for flight attendants.

28. SkyWest records the actual turn time between each flight, as shown in Fig. 1: F. A pairing with four legs, as compared to one leg, means that the flight attendant will work a longer day with more uncompensated hours, because there is more turn time and there are more associated preliminary and postliminary duties. Even if both pairings may have the same block time, the continuous workday for the four leg duty day is much longer than the one leg duty day, yet the flight attendants would receive exactly the same wage compensation.

29. Figure 1: G shows the layover or rest time. This number is calculated from the release time of day 1 to the report time of day 2, and so on. In Figure 1, beginning on October 31, 2012, Ms. Hirst was no longer on duty beginning at 2:49 p.m. on October 31, 2012 and ending at 6:30 a.m. on November 1, 2012, a layover lasting fifteen hours and forty-one minutes. Flight attendants are only permitted to leave the airport and to be out of uniform during layovers, during which they receive no wage compensation. Layover times are strictly regulated by the FAA, including *inter alia* the number of hours required for rest, the use of alcohol during a layover, and the amount of rest time required based upon the length of the flight attendant's duty days both before and after the layover.

30. Figure 1: H highlights the credit time (hours and minutes each specific flight is estimated to take) for the four flights scheduled for November 1, 2012 (1:29, 1:17, 1:19, and 2:07). When the actual block out to block in takes less time than the estimated credit time, flight attendants receive hourly pay based upon the estimated credit time. For example, comparing Figure 1: H, line 8 block time of 1:23 to line 8 credit time of 1:29. Ms. Hirst received pay for one hour and twenty-nine minutes for this flight.

CLASS AND COLLECTIVE ACTION COMPLAINT

31.     However, on a completed schedule, when the credit time appears in red as it does on Figure 1: H, line 9, the credit time has been "overridden" due to the flight requiring more actual block time than estimated. To receive the additional credit time, the airline requires that each crew member of a flight submit a form for the increased compensation. The flight attendant's compensation is based exclusively on the credit time for each day as highlighted in Figure 1: H. As illustrated in Fig. 1: H, Andrea Hirst was paid hourly for a total of six hours and twelve minutes on November 1, 2012.

32.     The bottom row of Figure 1 ("Trip Summary") shows cumulative pairing information. The first report time and last release time of the entire pairing are shown (here, 14:30/30 and 12:19/02) along with the cumulative block and credit times.

33.     Finally, TAFB ("Time Away from Base") indicates that Ms. Hirst was away from her base (here, Minneapolis) for a total of sixty-nine hours and fifty-nine minutes. For those hours, she received an untaxed travel expense *per diem* of $1.80 per hour. Like a travel per diem in any occupation, the purpose of the flight attendant's *per diem* is to offset the extra expenses associated with eating out while traveling, transportation while away from home, etc. For each 24-hour period, this $1.80 per hour *per diem* equals $43.20.

34.     As shown in Figure 1, Ms. Hirst was compensated (indicated as credit) for a total of nineteen hours and ten minutes between October 30, 2012 and November 2, 2012. However, for the same period of time, she was *actually on duty and working* for a total of thirty-three hours and forty-four minutes (adding together her four continuous workdays, shown as the daily duty day times of 6:24, 8:34, 11:57, and 6:49).

35.     Although each day's schedule shows a specific release time (*e.g.,* Fig. 1: B), the actual end of the flight attendant's duty day is frequently significantly later than that time. For example, if the last flight of the duty day includes a passenger who requires wheelchair assistance or an unaccompanied minor, the flight attendant must wait for an airport agent to assist the passenger off the plane, at times extending the duty day over an hour past release time.

36.     If something irregular or unexpected occurs during a flight, the flight attendant is required to complete and file an irregular operations report. These reports are mandatory and are

8

CLASS AND COLLECTIVE ACTION COMPLAINT

generally completed after the flight attendant's release time. Flight attendants are not compensated for the time required to complete these reports, even though they are required by the FAA and the airline.

37.     Finally, flight attendants are required to regularly complete FAA and airline required training sessions, both in-person and online. SkyWest pre-determines (and often underestimates) the time allotted for the training and pays flight attendants one-half of their block time wage rate for the allotted—not actual—training time.

## SUBSTANTIVE ALLEGATIONS

### Flight Attendant Responsibilities

38.     SkyWest employs flight attendants to ensure the safety of the passengers through required inspections of the aircraft prior to and after each flight, to assist passengers while the passengers are boarding or are onboard the aircraft, to provide customer service such as serving meals and drinks, and to assist passengers and the flight crew until all passengers have departed from the aircraft.

39.     SkyWest, on its "Careers" website,[3] describes the duties of a flight attendant:

- Ensure safety and comfort of customers onboard the aircraft
- Prepare/serve meals and beverages including alcohol
- Greet passengers, assist with carry-on baggage stowage, and deliver onboard announcements
- Provide leadership in emergency and non-emergency situations
- Calmly resolve passenger situations during flight, including disorderly passengers, and medical emergencies
- Ensure compliance with safety regulations
- Adhere to established procedures and performance standards.

---

[3] https://rn21.ultipro.com/sky1000/jobboard/JobDetails.aspx?__ID=*899EC10BCA5CC4E1 (last viewed on October 23, 2015).

CLASS AND COLLECTIVE ACTION COMPLAINT

**Uncompensated Integral and Indispensable Preliminary Activities**

40.    Prior to reporting for duty, each flight attendant must have cleared airport security screening, met all uniform requirements, and have in his or her possession all mandatory items for duty, which include:

- Passport
- Badge
- Flight attendant certificate
- Flashlight
- SkyWest InFlight Operations Manual
- Uniform–all mandatory pieces
- Wings
- Liquor fund money

41.    In addition, certain required emails from SkyWest (called: "Must Know Before You Go") must be opened and confirmed as read prior to check in. These emails include training information and manual updates, some of which are hundreds of pages long. SkyWest Manual updates must be printed and physically in each flight attendant's Manual prior to the beginning of their duty day.

42.    Each flight attendant is required to check in with the airline a minimum of 45 minutes prior to their first flight's scheduled departure time. To do so, the flight attendant must either check in on a company computer, or alternatively, remotely check in through the company's website using a smart phone or tablet.  If remotely checking in through a smart phone or tablet, each flight attendant must affirm that they are inside the airport terminal and that they have completed the appropriate security requirements.   An image of this affirmation is below:

CLASS AND COLLECTIVE ACTION COMPLAINT

**Figure 2: Smart Phone Check-In Screenshot**



43.     For international flights, flight attendants must report for duty sixty minutes prior to the scheduled departure time. For subsequent days of a pairing, the report time may be reduced to 30 minutes for smaller aircraft which are scheduled to travel to domestic destinations. These variations in report for duty time do not change the methodology for calculating wage hours for compensation or the flight attendants' compensation since the flight attendants are not paid at all until the main cabin door is closed.

44.     Since January 2014, flight attendants have been required to check in a second time with the gate agent at specific lengths of time prior to the scheduled departure. Depending on the size and configuration of the departure airport, this additional check in requirement often necessitates an even earlier report time based upon the distance to the actual gate.

45.     Once on the plane and prior to closing the main cabin door, flight attendants are required to perform the following duties, most of which are mandated by the FAA and all of which are

specifically required by SkyWest:

- Conduct a preflight and pre-boarding safety check, including but not limited to verifying that all required safety, lighting, and emergency equipment is onboard, operable, and has no signs of tampering or vandalism;

- Participate in a pre-flight briefing with other crew members;

- Verify that commissary supply is sufficient, including but not limited to "extended delay food rations" for passengers as required by the FAA;

- Notifying pilots and gate agents that all preliminary safety duties have been completed, that the flight attendants are in their appointed positions, and that passenger boarding may begin;

- Assisting in the boarding and greeting of passengers while stationed in specific locations within the aircraft;

- Assessing potential threats to passengers, crew, and aircraft;

- Confirming that infants are seated on the correct side of aircraft, and that child safety seats are properly attached;

- Conducting unaccompanied minor individual briefings;

- Conducting flight introduction and required pre-taxi announcements as required by the FAA;

- Verifying passengers' seatbelts are fastened, that luggage is stowed in compliance with FAA, closing overhead bins, securing loose items for the safety of the passengers and crew, and instructing passengers if excessive carry-on luggage must be checked;

- Briefing exit row passengers about FAA exit row requirements, reseating exit row passengers if the Flight Attendant has concerns about the passenger's ability or willingness to understand and perform safety-related tasks;

- Providing first class passengers with drinks and hanging coats;

CLASS AND COLLECTIVE ACTION COMPLAINT

- Verifying that boarding passenger totals ("pin counts") match the passenger manifest by counting each adult, child, and infant passenger, then delivering the appropriate paperwork to the gate agent and pilots;

- Making passenger weight and balance adjustments for the stability of the aircraft;

- Reseating or removing passengers from the plane for safety issues including but not limited to the passenger's failure to abide by the flight attendant's requests, the passenger's demeanor or behavior toward other passengers, or the passenger's lack of sobriety;

- Visually verifying that ground crews have completed refueling prior to the closure of the main cabin door; and

- Requesting permission from pilots to close the main cabin door.

46.     The performance of the above list of duties is wholly uncompensated since *flight attendants are paid no wages until the main cabin door of the aircraft is closed.*

47.     Once even a single passenger has boarded, flight attendants are strictly prohibited from stepping off of the aircraft. Whether or not there is a delay, flight attendants are paid no wages until the main cabin door is closed.

48.     Unlike flight attendants employed by Delta and other airlines, SkyWest flight attendants do not receive additional pay for a duty day which lasts significantly longer than scheduled. For example, if a flight attendant is scheduled for a twelve-hour duty day with six hours of block pay, but weather delays cause the workday to stretch to sixteen hours, the flight attendant receives the same wages as originally scheduled—six hours of block pay. Unlike flight attendants employed by Delta and other airlines, SkyWest flight attendants receive no "holding pay" (i.e. additional pay when passengers are on-board but the plane is held at the gate). Unlike SkyWest flight attendants, Delta flight attendants are paid at least one block hour for every three and one-half hours they are away from their base (called "trip credit" by Delta but comparable to "TAFB") in addition to their travel expense reimbursement *per diem*. SkyWest flight attendants receive no such guaranteed TAFB compensation above the untaxed *per*

CLASS AND COLLECTIVE ACTION COMPLAINT

1  *diem* expense reimbursement.[4]

2  **Compensated Block Time Activities**

3  49.    Once the main cabin door is closed and the aircraft pulls away from the airport's jet

4  bridge, i.e., blocks out, SkyWest flight attendants hourly wages begin accruing.

5  50.    When the aircraft blocks in to the jet bridge at their destination, flight attendants' hourly

6  wage compensation is terminated. Their "release time" is automatically set at fifteen minutes after the

7  plane blocks in, *regardless of the length of time that is actually required to deplane passengers and*

8  *perform other post flight duties*.

9  **Uncompensated Integral and Indispensable Postliminary Activities**

10  51.    After the aircraft blocks in and as the passengers begin to depart the aircraft, flight

11  attendants must monitor deplaning activities from specific duty stations as required by the FAA.  Flight

12  attendants are strictly prohibited by the FAA from leaving the aircraft so long as any passengers are

13  still on board.

14  52.    If any passengers require wheelchair assistance (which occurs regularly) or if an

15  unaccompanied minor is onboard, the flight attendants are required to remain on the aircraft with the

16  passenger(s) who need(s) assistance until an airport agent has assisted the passenger(s) off the plane,

17  regardless of the length of time involved.

18  53.    After all passengers have deplaned, the flight attendants must perform the following

19  integral and indispensable activities prior to leaving the aircraft. All of these activities are required by

20  SkyWest and most are strictly regulated by the FAA:

21  •    Search the aircraft to verify that no one is remaining;

22  •    Check the aircraft for suspicious items which might have been left behind;

23  •    Check all emergency and safety equipment to verify that none have been

24       tampered with during the flight;

25

26  _____
    [4] A miniscule amount of the *per diem* expense reimbursement is taxable as income, possibly for *per*

27  *diem* paid for day trips (as compared to overnight trips). Reviewing available flight attendant wage
    statements, less than 4% of the $1.85/hour *per diem* paid to SkyWest flight attendants in 2015 was a

28  taxable expense reimbursement.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

- Remove all trash, straighten and cross seatbelts, fold blankets, and clean the cabin (except on the final flight of the day);

- Verify that all safety brochures are in the seatback pockets and visible for subsequent passengers; and

- Verify that the aircraft is stocked and ready for subsequent flights, including but not limited to beverages, extended delay provisions, paper goods, and emergency supplies.

54. After all passengers have been deplaned, flight attendants either prepare for the next flight on the same aircraft, or leave that aircraft after it is secured by a customer service agent or another crew.

55. Flight attendants continuing on the same aircraft must repeat the entire set of preliminary responsibilities, again without compensation, until block time pay restarts with the cabin door closing on the next flight. If the next departure time is within approximately forty-five minutes, the flight attendants are not permitted to leave the plane.

56. If the flight attendants must change aircraft, they must leave the plane after it is secured, change gates, and repeat the entire set of preliminary responsibilities on the new aircraft. Many pairings include scheduled or unscheduled changes of aircraft.

57. Fifteen minutes after the aircraft blocks in to the jet bridge for the last flight of their duty day, *SkyWest automatically ends the duty day* regardless of whether the flight attendants have finished their FAA and SkyWest required work responsibilities. In addition, the flight attendants are required to prepare and submit irregular operations reports after they leave the plane.

58. During any given duty day, a flight attendant generally works between one and seven (sometimes more) legs, so long as the *scheduled* duty day does not exceed fourteen hours in a twenty-four hour period. According to FAA regulations and SkyWest policies, a flight attendants' actual duty day can legally be as long as sixteen hours, so long as the additional two hours are the result of unscheduled delays.

**Compensation**

59. SkyWest compensates all of its flight attendants on an "hourly" rate, yet those hours are

only calculated from the time that the aircraft has blocked out to when the aircraft has blocked in. As a result, each flight attendant's wage compensation starts, stops, and restarts multiple times during each duty day. Furthermore, these block hours (compensated) are the only ones that appear on SkyWest flight attendants' wage statements. Duty hours (compensated and uncompensated) are not documented on SkyWest's wage statements, although they are recorded and available on SkedPlus+.

60.     Although training time is compensated, SkyWest pre-allocates a specific amount of time per training (in person or online), then pays that fictitious training time at a rate of one-half of the flight attendant's block wages. As a result, flight attendants often actually receive less than minimum wage for time spent in *mandatory* training. On their wage statements, flight attendants' training time is separately listed; however, the "hours" shown are actually only one-half of the allotted training time rather than the number of hours actually spent in training.

61.     SkyWest's practice of showing estimated training time paid at one-half of block wages obfuscates both the number of hours spent in training as well as the hourly wage rate paid for training. This practice specifically violates record-keeping requirements under both the FLSA, 29 U.S.C. § 211(c), and Cal. Labor Code § 226.

62.     That the Federal Aviation Administration ("FAA") requires certain flight attendant duties and training is (or should be) *de facto* and/or *prima facie* evidence that these activities are "integral and indispensable" to the flight attendants' work and thus compensable.

### SkyWest Airlines Intentionally Obfuscates Wage Compensation

63.     Upon information and belief, SkyWest does not verify minimum wage compliance for every flight attendant for every week based upon the flight attendant's duty day length. Importantly, their compensation plan does not "automatically" provide state or federal minimum wage compliance since a great number of flight attendants' working hours (duty hours plus unrecorded work hours prior to checking in and after the automatic release at the end of the duty day) are wholly uncompensated. Virtually every duty day for every flight attendant includes a significant amount of easily measurable uncompensated work time.

64.     All SkyWest flight attendants are compensated identically by receiving hourly wage compensation only for block hours rather than all duty hours or all working hours.

CLASS AND COLLECTIVE ACTION COMPLAINT

65.     Due to the inescapable unpredictability of daily work schedules and the pointless complexity of SkyWest's wage statements (which include intermingled taxable and non-taxable credits, imputed income, expense reimbursements, uniform allowances, half-time training hours and a multitude of deductions), flight attendants cannot reasonably calculate how they are being compensated in terms of determining how many hours they work and their rate of pay for: block, duty, and training hours.

66.     Although duty hours are measured to the minute and maintained as required by the FAA, SkyWest's wage statements do not display the duty time during a pay period. To calculate duty hours worked in a particular pay period, each flight attendant would be required to review their daily SkedPlus+ duty time records, collect each day's duty hours, and then add an entire pay period's duty hours together. (Fig. 1: C). Furthermore, although each SkedPlus+ pairing (a one to four day trip) includes a trip summary, the total duty time for the pairing is not summarized. *Id.*

67.     SkyWest compensates its flight attendants for training at a rate one-half of their ordinary block time wage per estimated training hour. On the wage statements, training time deceptively appears as if the pay is at full block time rate. Instead of showing the hourly pay rate adjusted for training, SkyWest divides the number of allocated (not actual) training hours in half. In effect, this practice means the flight attendants with the least seniority are compensated at less than the mandatory state and federal minimum wage rates per hour for time spent in training.

68.     Additionally, flight attendants are misled by SkyWest's trainers and management who explain that they are being paid for all of their "time away from base" (TAFB) as if the *per diem* expense reimbursement is wage pay. Other than this reimbursement for expenses, SkyWest flight attendants do not receive any compensation for TAFB.

69.     SkyWest fails to keep records of the time required for flight attendants' pre-check-in requirements and the actual (not automatic) release time for flight attendants each workday. Instead, SkyWest, as a matter of policy, automatically ends the flight attendants' duty day exactly fifteen minutes after the airplane's block in time although deplaning all passengers, performing required security checks, and writing irregular operations reports regularly requires more working hours.

### PLAINTIFF-SPECIFIC FACTS

#### Plaintiff Cheryl Tapp

70.    Plaintiff Cheryl Tapp has worked as a flight attendant for SkyWest for over five years, based in both San Francisco (SFO) and Los Angeles (LAX) during that time. In that time, she has frequently encountered weather or mechanical delays. According to Ms. Tapp, it is not unusual to spend an extra 4-5 hours at the airport waiting for a plane or clearer weather, knowing that as a flight attendant, the only "pay" she is receiving is $1.85 per hour of *per diem*. In comparison, ramp agents and customer service agents, also employed by SkyWest, are making no less than the California minimum wage rate even though all are in uniform and required to abide by FAA and SkyWest's rules and regulations.

71.    Seniority status affects how schedules are assigned. As she has become more senior, Ms. Tapp receives more favorable pairings based on her rank in the San Francisco (SFO) SkyWest base. Despite these more favorable pairings, SkyWest's method of calculating compensation does not compensate Ms. Tapp for many of the hours she is required to work each day.

72.    Although Ms. Tapp was notified that her training pay is half of her regular rate of block pay, her wage statement appears to show that she has only spent half as much time in training.  In reality, the actual hours spent on training were at least twice the hours shown on the wage statement so that her regular block pay appears to be the rate of pay.

73.    Based on her wage statement, Ms. Tapp cannot determine her working hours during the applicable pay period, her rate of pay for duty hours or working hours, or the actual number of hours she spent in training and the corresponding pay rates.

#### Plaintiff Renee Sitavich

74.    Plaintiff Renee Sitavich began working for SkyWest Airlines as a flight attendant on July 18, 2005. She was initially based in Chicago, Illinois (ORD). In September 2012, she transferred to San Francisco, California (SFO), where she stayed until she resigned in January 2014. Ms. Sitavich recalls that during initial training at SkyWest, the trainers falsely represented *per diem* pay as wage pay for their duty day and TAFB, probably to satisfy the question of why flight attendants are unpaid for much of their workday.

CLASS AND COLLECTIVE ACTION COMPLAINT

75.     One example of Ms. Sitavich's schedule is shown below as Figure 3. On September 9, 2013, her duty day was eleven hours and one minute long but she was paid for only seven block hours of that time. On September 10, 2013, she worked for two hours and thirty-two minutes but was paid for only one hour and five minutes. As shown in this pairing, only one turn ("OTH" = South West Oregon) was outside of the State of California. SkyWest's practice of automatically ending the **duty day** exactly fifteen minutes after the last block in time, whether or not Ms. Sitavich's working day was finished, can be calculated by comparing line 5 (22:55) to the release time on September 9 (23:10), and comparing line 7 (13:43) to the release time on September 10 (13:58).

## **Figure 3**

Total Block: 7:14    Total Credit: 8:05    TAFB: 25:49

AWD Q2129A
Monday 09-09-2013   Report: 12:09
1. 5394  EM2  N562SW  SFO  OTH  12:49  14:30  Block: 1:41  Credit: 1:49
2. 5394  EM2  N562SW  OTH  SFO  15:06  16:46  Block: 1:40  Credit: 1:57
3. 5444  EM2  N560SW  SFO  RDD  18:42  19:43  Block: 1:01  Credit: 1:05
4. 5444  EM2  N560SW  RDD  SFO  20:12  21:17  Block: 1:05  Credit: 1:14
5. 5333  EM2  N560SW  SFO  CIC  22:05  22:55  Block: 0:50  Credit: 0:55
          Day Block: 6:17   Day Credit: 7:00   Duty: 11:01
Release: 23:10/09  Hotel: Holiday Inn (530)345-2491  Layover: 12:16

Tuesday 09-10-2013   Report: 11:26
6. LCO     CIC  CIC  11:26  11:26  Block: 0:00  Credit: 0:00
7. 5307  EM2  N223SW  CIC  SFO  12:46  13:43  Block: 0:57  Credit: 1:05
          Day Block: 0:57   Day Credit: 1:05   Duty: 2:32
Release: 13:58/10

76.     On another date, during a turn in Newark when an electrical storm forced the jet bridge to be closed, Ms. Sitavich and the entire crew spent about an hour (after the fifteen minute release time) waiting to be able to deplane a para-Olympian who required wheelchair assistance. Neither she nor the other crew members were able to leave yet their working time was uncompensated.

77.     In 2013 when Ms. Sitavich was scheduled for recurrent training, the actual training session was scheduled for eight hours and forty-five minutes, but the total compensation she received was for four hours of block time. The training credit is based on time expected for the training day, not on actual time spent. Her wage statement, upon information and belief, shows only four hours of training at her full block time rate of pay.

CLASS AND COLLECTIVE ACTION COMPLAINT

78. Renee Sitavich quit her job as a Flight Attendant for SkyWest Airlines primarily because of the airline's scheduling and failure to pay its flight attendants for all hours they work.

Plaintiff Sarah Hudson

79. Plaintiff Sarah Hudson began working for SkyWest Airlines on March 14, 2013 and resigned from her position in February 2015. She was based at Fresno Yosemite International Airport (FAT) for all of her tenure working for SkyWest.

80. While she was a SkyWest flight attendant, she lived with her parents. At the time, she knew that although she and her co-workers were working very long hours, many of them qualified for food stamps. Without family help, she could not have paid her own bills.

81. On October 4, 2013, Ms. Hudson's duty day was four hours and thirty-seven minutes long, but she was only paid for two block hours of that time. On October 5, 2013, her duty day was eight hours and thirty-one minutes long but she was paid for only three hours and thirty-four minutes of that time. During this two day schedule, she neither left the State of California nor received California's minimum wage for every hour that she worked.

82. Upon information and belief, Ms. Hudson was at times paid less than the statutory state and federal minimum wage rates based on her actual working hours including duty time plus the working time required before check-in and after release time, and under-reported training time.

83. Ms. Hudson's initial rate of pay was $17.50 per block hour. During training, she received one-half of her block pay or less since training time is estimated by SkyWest rather than actual time spent. Upon information and belief, she earned less than minimum wage during mandatory training on at least one occasion.

84. Ms. Hudson quit working for SkyWest after she was injured on the job and was not cleared by her doctor to return. In addition, she was frustrated that she did not receive wage compensation for all of the hours that she worked.

CLASS AND COLLECTIVE ACTION COMPLAINT

<u>Plaintiff Brandon Colson</u>

85.     Plaintiff Brandon Colson began working for SkyWest Airlines on August 8, 2012 and resigned from his position on August 8, 2014. He was based at Phoenix Sky Harbor International Airport (PHX) for all of his tenure working for SkyWest.

86.     While he was a SkyWest on a regular basis, flights in and out of Phoenix were diverted or delayed due to excessively high temperatures. At least once during the summer of 2013, the flight he was working was diverted to Tucson, Arizona, pulled up to a jet bridge, and the main cabin door was opened (thus ending block pay). The flight attendants were required to address passenger needs, provide beverages on the exceptionally hot airplane, and wait for over two hours until they were able to resume their flight to Phoenix. Although the crew spent extra hours working directly with passengers, they were only compensated for a very short period of extra flight time, not the extended duty day.

87.     On a regular basis, Mr. Colson was required to spend his own time preparing irregular operations reports. He estimates that such reports had to be completed as often as once every week or two.

88.     While he was working for SkyWest, Mr. Colson was required to complete work (like waiting to deplane passengers, cleaning the aircraft, performing security requirements) after the automatically calculated fifteen minute post-block-in release time frequently, which illegally reduced FAA mandated rest times or reduced his time off from work.

89.     Mr. Colson quit working for SkyWest due to the company's failure to properly and fairly pay its flight attendants for all working hours.

<u>Plaintiff Brüno Lozano</u>

90.     Plaintiff Brüno Lozano is a resident of Ypsilanti Township, Michigan. He was formerly employed by SkyWest Airlines as a flight attendant. He was hired by SkyWest on May 22, 2007 and resigned from his position in March 1, 2014.

91.     While he was with SkyWest, he was based at several different SkyWest locations. Between November 2011 and March 1, 2014, he was based in: Los Angeles (LAX), San Francisco (SFO), and Seattle (SEA). During his last year with SkyWest, he was based at Seattle-Tacoma International Airport (SEA).

CLASS AND COLLECTIVE ACTION COMPLAINT

92.     While at SkyWest, Mr. Lozano's wages statements did not show his total working hours or duty hours.

93.     Mr. Lozano recalls that during initial training at SkyWest, the trainers represented to his training class that *per diem* was wage pay as well as an expense reimbursement for the flight attendants' uncompensated portions of their duty day and TAFB.

94.     While he was a flight attendant with SkyWest, Mr. Lozano worked extremely long duty days, worked before and after his actual duty day was being tracked, and frequently attended trainings which deceptively appeared on his paycheck as half or less of the actual time required by the airline. Many working hours of each day were wholly uncompensated. He left SkyWest, in part, because the airline did not compensate him for many of his working hours.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

95.     Plaintiffs bring this action as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), also commonly referred to as an "opt-in" class, on behalf of themselves and the following nationwide collective, as well as a nationwide class action seeking injunctive and declaratory relief pursuant to the Declaratory Relief Act, 28 U.S.C. § 2201:

**Nationwide Class**

*All current and former SkyWest flight attendants who, during the applicable statute of limitations period(s), were only paid block pay, instead of being of being compensated for all working hours.*

96.     California Plaintiffs Tapp, Sitavich, Hudson, and Lozano bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a group of persons defined as:

**California Class**

*All current and former SkyWest flight attendants based in California during the applicable statute of limitations period(s), who were only paid block pay, instead of being compensated for all working hours.*

These California Class claims are brought under the State of California Wage Order No. 9; Cal. Labor Code §§ 1182.12, 1194, and 1197; Cal. Labor Code §§ 21-204; Cal. Labor Code § 226 and Cal.

Labor Code § 511 (alternative workweek). In addition, the Plaintiffs bring this case pursuant to California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200, *et seq.*

97.     Plaintiffs Sitavich, Hudson, and Lozano bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a group of persons defined as:

**California Former Flight Attendants Subclass**

*All former SkyWest flight attendants based in California during the applicable statute of limitations period(s), who resigned or were terminated without being fully paid for all working hours.*

These California Former Flight Attendant Subclass claims are brought under Cal. Labor Code §§ 201-204.

98.     Plaintiffs Tapp, Sitavich, and Lozano bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 for claims under the San Francisco Minimum Wage Ordinance, San Francisco Admin. Code § 12R, on behalf of themselves and a group of persons defined as:

**San Francisco Subclass**

*All current and former SkyWest flight attendants based in San Francisco during the applicable statute of limitations period, who were only paid block pay, instead of being compensated for all working hours.*

99.     Plaintiff Tapp brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 for claims under the Los Angeles Living Wage Ordinance, Los Angeles Admin. Code § 10.37 *et seq.*, on behalf of herself and a group of persons defined as:

**Los Angeles Subclass**

*All current and former SkyWest flight attendants based in Los Angeles during the applicable statute of limitations period, who were only paid block, instead of being compensated for all working hours.*

100.     Arizona Plaintiff Colson brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and a group of persons defined as:

CLASS AND COLLECTIVE ACTION COMPLAINT

**Arizona Class**

*All current and former SkyWest flight attendants based in Arizona during the applicable statute of limitations period(s), who were only paid block pay, instead of being compensated for all working hours.*

These Arizona Class claims are brought under the Arizona Wage Act, A.R.S. § 23-350, *et seq.*, Arizona Minimum Wage Act, A.R.S. § 23-363, *et seq.*

101.    Washington Plaintiff Lozano brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a group of persons defined as:

**Washington Class**

*All current and former SkyWest flight attendants based in Washington during the applicable statute of limitations period(s), who were only paid block pay, instead of being compensated for all working hours.*

These Washington Class claims are brought under the Washington Wage Act, R.C.W. § 49.46, *et seq.*

102.    Excluded from the Class(es) are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, Defendants' employees other than SkyWest flight attendants, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of these persons; the Judge assigned to this action, any member of the Judge's immediate family; and counsel for the Plaintiffs. Additionally, union-represented flight attendants who are employed by ExpressJet Airlines (also owned by SkyWest, Inc.) are excluded from the Class(es).

103.    Certification of the Class(es) is appropriate pursuant to Fed. R. Civ. P. 23, in that: (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to each Class member; (c) the claims or defenses of each Class member is typical of the claims or defenses of all Class members; (d) the representative party will fairly and adequately protect the interests of the Class(es).

CLASS AND COLLECTIVE ACTION COMPLAINT

104. **Numerosity**. Plaintiffs are informed and believe, and on that basis allege, that the proposed Class(es) contains thousands of similarly situated persons who are either currently or formerly employed by SkyWest as flight attendants. The precise number of Class Members is currently unknown to Plaintiffs. The true number of Class Members is known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice. The members of the Class(es) are so numerous that joinder of all members would be impracticable.

105. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class(es) and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

     a.    Whether SkyWest failed to pay wage compensation for all working hours of the Class(es);

     b.    Whether SkyWest improperly calculated the hourly pay of flight attendants by paying wage compensation only for block time (block out to block in) although the flight attendants were required to perform work which was integral and indispensable to their primary duties both before and after the block times on every day that they worked;

     c.    Whether SkyWest must pay flight attendant wages for all duty hours, training time, and other uncompensated and unrecorded working hours at no less than applicable minimum wage for each and every hour of duty time in addition to their block time wages;

     d.    Whether SkyWest failed to timely pay former flight attendants unpaid and back duty day wages in violation of state wage laws;

     e.    Whether SkyWest failed to provide its flight attendants with wage statements that accurately show all working hours, rate of compensation per working hour, and all other information as required by state and federal wage laws;

     f.    Whether SkyWest engaged in the unlawful employment practices alleged herein;

     g.    Whether SkyWest is liable to Plaintiffs and members of the Class(es) for damages for conduct actionable under U.S. federal and state and local laws;

h.      Whether SkyWest's wage policies and practices are in violation of California, Arizona, and/or Washington's state wage and unfair competition laws;

i.      Whether SkyWest's wage policies and practices are in violation of San Francisco and Los Angeles local wage ordinances; and

j.      Whether Plaintiffs and members of the Class(es) have sustained damages as a result of SkyWest's conduct, and, if so, the appropriate measure of damages.

106.    **Typicality**. Plaintiffs' claims are typical of the claims of the Class Members in that Plaintiffs and each member of the Class(es) have been injured by the same wrongful conduct of SkyWest. Plaintiffs' claims arise from the same practices and course of conduct that gave rise to the Class Members' claims and are based on the same legal theories. Plaintiffs, like all Class Members, have not been fully compensated by SkyWest pursuant to state and federal labor laws, and thus Plaintiffs, like all Class Members, have been damaged by SkyWest's unlawful conduct. All SkyWest flight attendants, including Plaintiffs and Class Members, are compensated under an identical compensation scheme.

107.    **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class(es). Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no interests adverse or antagonistic to those of the Class(es).

108.    **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members of the Class(es) is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the members of the Class(es), on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if members of the Class(es) could afford such individualized litigation, the court system could not. Individualized claims brought by members of the Class(es) would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of

**CLASS AND COLLECTIVE ACTION COMPLAINT**

adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**COUNT I**

**FAIR LABOR STANDARDS ACT**

**Minimum Wages Required Under 29 U.S.C. § 206**

**(on behalf of all current and former SkyWest Flight Attendants)**

109.    Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

110.    SkyWest is in the business of providing regional commercial air service to cities across the United States, Canada, Mexico and the Caribbean, and employs flight attendants such as Plaintiffs and members of the Class to provide passengers with safe and comfortable travel accommodations according the requirements of the FAA and SkyWest.

111.    At all relevant times, as a provider of "transportation . . . among the several States or between any State and any place outside thereof," SkyWest has been engaged in "commerce" as defined by FLSA, 29 U.S.C. § 203(b).

112.    At all relevant times, SkyWest constituted an "employer" engaged in commerce as defined by Section 3(d) of the FLSA, 29 U.S.C. §§ 203(d).

113.    At all relevant times, Plaintiffs and the Class were considered "employees" under Section 3(e) of the FLSA, 29 U.S.C. § 203(e), as well as "employees engaged in commerce" under Section 6(a) of the FLSA, 29 U.S.C. § 206(a).

114.    Section 6 of the FLSA, 29 U.S.C. § 206, provides for a statutory minimum hourly wage for all employees "employed in an enterprise engaged in commerce."

115.    Although Section 13(b)(3) of the FSLA, 29 U.S.C. § 213(b)(3), specifically exempts employees of "carriers by air" from the "maximum hour" provisions of Section 7 of the FLSA, 29 U.S.C. § 207, Section 13(a) of the FSLA, 29 U.S.C. § 213(a), specifically does *not* provide a similar exemption for carriers of air from the comparable "minimum wage" provisions of Section 6 of the FLSA, 29 U.S.C. § 206, and does not provide an exemption from the accurate wage records provision of the FLSA, 29 U.S.C. § 211(c).

116.    Here, SkyWest violated Section 6 of the FLSA, 29 U.S.C. § 206, by failing to pay any wages at all to Plaintiffs and the Class during certain clearly defined and traceable portions of their duty day, including but not limited to performing preliminary and postliminary activities which are integral and indispensable to their principal activities as flight attendants, and which are required and controlled by both the Federal Aviation Administration ("FAA") and SkyWest.

117.    The clearly defined and traceable portions of the flight attendants' duty day which are uncompensated occur in virtually every workday of every SkyWest flight attendant and often include several hours of unpaid time per day. At no time is this mandatory unpaid preliminary and postliminary time *de minimus*.

118.    SkyWest's SkedPlus+ records and payroll records provide all necessary information required to calculate the uncompensated duty day wages.

119.    In addition to uncompensated portions of the duty day, SkyWest's policies of requiring work prior to check-in, of automatically ending the duty day exactly 15 minutes after the airplane blocks in artificially ends flight attendants' duty days before their working hours are complete, and requiring reports to be written after release time are in violation of the FLSA, 29 U.S.C. § 211(c) requirement to keep and maintain accurate wage records.

120.    The flight attendants' required preliminary and postliminary activities as described fully herein are integral and indispensable to their principal activities, required by both the FAA and SkyWest Airlines, and therefore not exempt from minimum hourly wage requirements pursuant to the Portal-to-Portal Act, 29 U.S.C. § 254(a)(2). The continuous workday rule mandates that these activities are compensable under the FLSA.

121.    Additionally, the Federal Aviation Administration's strict regulation of the maximum allowable number of hours in the flight attendants' duty day confirms that these duty hours are integral and indispensable to flight attendants' principal activities.

122.    Unlike other airlines, SkyWest's wage compensation plan does not sufficiently adapt to longer continuous workdays, weather delays, diversions, and other unexpected delays such that every hour of every flight attendants' workday is compensated at no less than the applicable minimum wage.

Therefore, the flight attendants are at risk of and do actually receive less than the Federal minimum wage on certain workdays.

123. Skywest's practice of estimating mandatory training times, compensating based upon the estimated times rather than on actual training time, and recording only half of the estimated training time on wage statements as if training is paid at full block pay is deceptive and violates the FLSA.

124. At all relevant times, SkyWest was aware that Plaintiffs and members of the Class were owed compensation for each working hour of their workday pursuant to the FLSA.

125. SkyWest's violations of 29 U.S.C. § 206 were repeated, willful and intentional.

126. As a result of Defendants' willful and wrongful conduct, Plaintiffs and the Class have been deprived of wages and have suffered damages.

127. Plaintiffs, on behalf of themselves and all SkyWest flight attendants who opt to join in this collective action, demand judgment against SkyWest for wages for each hour that they were uncompensated during their duty day, as well as for responsibilities and work time which occurred before and after the duty days, for the three years preceding the filing of this complaint, plus an equal amount as liquidated damages, as well as reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, and such other and further relief as may be just and proper.

## COUNT II

### INJUNCTIVE AND DECLARATORY RELIEF

**28 U.S.C. § 2201 *et seq.***

**(on behalf of all current and former SkyWest Flight Attendants nationwide)**

128. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

129. There is an actual controversy between SkyWest and Plaintiffs concerning the company's failure to pay wage compensation for all duty hours, and failure to provide accurate wage statements to Plaintiffs and Class Members.

130. Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

131.     Accordingly, Plaintiffs and Class members seek a declaration that SkyWest must clearly inform all current flight attendants (and flight attendants who have been employed by SkyWest in the past three years) that *per diem* is intended as a reimbursement of expenses and is not wage income.

132.     Plaintiffs seek an injunction against SkyWest from continuing to refer to *per diem* to flight attendants as "Per Diem Pay" or "Per Diem Wages" in training, on payroll stubs, or when asked about wage compensation, whether in writing or verbally.

133.     Additionally, Plaintiffs and Class members seek a declaration that SkyWest must provide to flight attendants an explanation of their wage statements including all work and duty hours, provided to Class members in ordinary language, prominently displayed in employee manuals and on the employee website. The explanation sought would clarify to flight attendants total working hours, duty hours, and block hours per pay period, hourly wages paid by pay type, and all other information necessary for flight attendants to quickly determine whether they are being paid no less than minimum wages pursuant to applicable state and federal wage laws.

134.     Plaintiffs and Class members seek a declaration that SkyWest must provide to all current flight attendants (and all flight attendants who have been employed by SkyWest in the past three years) a complete explanation of paycheck abbreviations including but not limited to a clear designation of which items on the paycheck are wages, which items are reimbursements, and which are imputed income for IRS purposes (but not wages for the purposes of adhering to weekly minimum wage requirements).

135.     Plaintiffs and Class members seek an order stating that SkyWest notify all current and former flight attendants that the airline will provide, upon request, any flight attendant with all SkedPlus+ records and payroll stubs for three years preceding the flight attendant's request.

136.     Plaintiffs and Class members seek a declaration that SkyWest must provide notice to all current flight attendants (and all flight attendants who have been employed by SkyWest Airlines in the past three years) through a 216(b) Opt-In Notice that this matter is currently pending before the Court; that this Court will decide the manner in which each and every working hour must be compensated; and that each flight attendant who has worked for SkyWest in the past three years has the right to opt-in to the pending collective action in this Court.

137.     Plaintiffs and Class members seek a declaration that current wage payment scheme of SkyWest Airlines does not automatically assure such compliance with state and federal wage laws and that SkyWest has taken no corrective action to assure compliance in the future.

138.     Plaintiffs and Class members have suffered actual damages and lost wages. SkyWest should be required to take corrective action to prevent further lost wages, including:  (a) providing its flight attendants with a compensation plan which guarantees hourly pay for each and every duty hour and working hour; (b) providing flight attendants with an accurate method for calculating release time based upon when working requirements are completed; (c) providing its flight attendants with a compensation plan which pays actual wages for time away from base (TAFB) in addition to *per diem* expense reimbursement; and (d) providing its flight attendants with a clear and unambiguous explanation of its wage statements and payroll practices.

## COUNT III

### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF CALIFORNIA LAW

### Cal. Wage Order No. 9; Cal. Labor Code §§ 1182.12, 1194, and 1194.2

### (on Behalf of Plaintiffs Tapp, Sitavich, Hudson, Lozano and the California Class)

139.     Plaintiffs Tapp, Sitavich, Hudson, Lozano and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

140.     At all times relevant to this action, Plaintiffs and California Class Members were employed by SkyWest within the meaning of the California Labor Code.

141.     From January 1, 2008 until June 30, 2014, the minimum wage in California was $8.00 an hour.

142.     Since July 1, 2014, the minimum wage in California has been $9.00 an hour.

143.     California Class Members employed by SkyWest were not exempt from the minimum wage requirements of California law.

144.     California law requires employers to pay at least the minimum wage for all hours worked. California law does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift. SkyWest's compensation scheme violates California's minimum wage requirements because they fail to pay Plaintiffs and

California Class Members for all hours worked, including pay for all duty hours, full training pay, and preliminary and postliminary duties required by the airline and the FAA. *See Gonzalez v. Downtown LA Motors*, LP, 215 Cal.App.4th 36, 51-53 (2013) (holding that employer's failure to pay auto mechanics for time between piece rate work violates California's minimum wage requirements).

145. Under SkyWest's block pay compensation policy, Plaintiffs and California Class Members are paid for hours worked between block-out and block-in, but not for any of the time worked prior to the main cabin door closing or after arrival at the destination airport. SkyWest has no pay policy that accounts for all duty hours worked, and fails to ensure that all required working hours are paid.

146. SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and Class members, in conscious disregard of Plaintiffs' and California Class Members' rights to be paid for their labor.

147. During the applicable statute of limitations, SkyWest has failed to pay Plaintiffs and California Class Members no less than the applicable minimum wage for all hours worked, in violation of Cal. Labor Code § 1182.12 and relevant wage orders, including Wage Order #9.

148. Pursuant to Cal. Labor Code § 1194, Plaintiffs and California Class Members are entitled to recover their unpaid wages in an amount to be established at trial, plus prejudgment interest, costs and reasonable attorneys' fees. Further, Plaintiffs and California Class Members are entitled to recover liquidated damages pursuant to Cal. Labor Code § 1194.2.

## COUNT IV

### WAITING TIME PENALTIES

### Cal. Labor Code §§ 201, 202, 203 and 204

### (on behalf of Plaintiffs Sitavich, Hudson, Lozano and the California Former Flight Attendant Sub-Class)

149. Plaintiffs Sitavich, Hudson, Lozano and California Former Flight Attendant Sub-Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

150. California Labor Code §§ 201 and 202 require that SkyWest pay employees who quit or were discharged all wages due within specified times. Labor Code § 204 requires employers to pay full

wages when due. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

151.    California Plaintiffs and Class Members are entitled to unpaid minimum wages, but to date have not received all such compensation. SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and California Class Members, in conscious disregard of Plaintiffs' and Class Members' rights.

152.    As a consequence of SkyWest's willful conduct in not paying proper compensation for all hours worked, Plaintiffs and Class Members who have left SkyWest's employ are entitled to up to thirty days' wages under Labor Code § 203, together with interest thereon, as well as attorneys' fees and costs.

**COUNT V**

**FAILURE TO PROVIDE ITEMIZED WAGE STATEMENTS**

**Cal. Labor Code § 226**

**(on behalf of Plaintiffs Tapp, Sitavich, Hudson, Lozano and the California Class)**

153.    California Plaintiffs Tapp, Sitavich, Hudson, Lozano and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

154.    Pursuant to California Labor Code § 226, employers including SkyWest must provide their employees an accurate, written, itemized wage statement with each paycheck. The wage statement must show all applicable pay rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee.

155.    By failing to itemize the number of duty hours California Plaintiffs and other Class Members work, the hourly wage rate(s) at which they were paid, an accurately itemized number of training hours and the correct rate of pay for training, and an accurate record of all working hours, SkyWest knowingly and intentionally failed to provide Plaintiffs and Class Members with the required accurate, written, itemized wage statements as required by the California Labor Code.

156.    Pursuant to California Labor Code § 226, Plaintiffs and Class Members have suffered injury as a result of SkyWest's failure to provide accurate, written, itemized wage statements.

157.    SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring California Plaintiffs and Class Members, in conscious disregard of Plaintiffs' and Class Members' rights.

158.    California Plaintiffs and Class Members are entitled to all actual and statutory damages and penalties available for these violations under Labor Code § 226(e).

## COUNT VI

## CALIFORNIA UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code §§ 17200 et seq.

**(On Behalf of Plaintiffs Tapp, Sitavich, Hudson, Lozano and the California Class)**

159.    Plaintiffs Tapp, Sitavich, Hudson, Lozano and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

160.    The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., which prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or practices.

161.    The acts and practices of SkyWest described herein constitute unfair and unlawful business practices as defined by the UCL. SkyWest has engaged in unlawful activities including but not limited to: (a) failing to compensate Class Members at a wage rate at least equal to the applicable minimum wage for each hour worked; (b) failing to provide accurate, written, itemized wage statements; and (c) failing to pay all wages when due.

162.    SkyWest's activities also constitute unfair competition in violation of the UCL because SkyWest's practices violate, inter alia, California Labor Code §§ 201; 202; 204; 226; 510; 1182.12; and 1194, as well as the San Francisco Minimum Wage Ordinance and the Los Angeles Living Wage Ordinance. Each of these violations constitutes an independent and separate violation of the UCL.

163.    SkyWest's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition. SkyWest's practices described above are

immoral, unethical, oppressive, unscrupulous, and injurious. SkyWest was unjustly enriched and achieved an unfair competitive advantage over legitimate business competitors at the expense of its employees and the public at large.

164. The harm to Plaintiffs and the California Class members in being denied their lawfully earned wages outweighs the utility, if any, of SkyWest's policies or practices and therefore, SkyWest's actions as described herein constitute an unfair business practice or act within the meaning of the UCL.

165. SkyWest's conduct as herein alleged has injured Plaintiffs and California Class members by wrongfully denying them all of their earned wages, and therefore was substantially injurious to Plaintiffs and Class Members. Plaintiffs and Class Members have standing to bring this claim for injunctive relief, restitution, disgorgement, and other appropriate equitable relief pursuant to Bus. & Prof. Code § 17204.

166. Pursuant to Business and Professions Code § 17200 et seq., Plaintiffs and Class Members are entitled to restitution of the minimum wages and other unpaid wages alleged herein that were withheld and retained by SkyWest within the four years prior to this action's filing date, a permanent injunction requiring SkyWest to pay required wages, an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and other applicable law, and costs.

## **COUNT VII**

### **FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF SAN FRANCISCO MINIMUM WAGE ORDINANCE**

#### **San Francisco Admin. Code § 12R**

**(On Behalf of Plaintiffs Tapp, Sitavich, Lozano and the San Francisco Subclass)**

167. Plaintiffs Cheryl Tapp, Renee Sitavich and Brüno Lozano ("SFO Plaintiffs") and San Francisco Subclass Members allege and incorporate by reference the allegations in the preceding paragraphs.

168. At all times relevant to this action, SFO Plaintiffs and San Francisco Subclass Members were employed by SkyWest within the meaning of San Francisco's Minimum Wage Ordinance, were covered by the provisions of San Francisco's Minimum Wage Ordinance, and were not exempt from the minimum wage requirements of that ordinance.

169.    The San Francisco minimum wage was $9.79 per hour in 2010, $9.92 per hour in 2011, $10.24 per hour in 2012, $10.55 per hour in 2013, and $10.74 per hour in 2014. Since January 1, 2015, San Francisco's minimum wage has been $11.05 per hour.

170.    San Francisco International Airport is part of the City and County of San Francisco, and is covered by San Francisco's Minimum Wage Ordinance.

171.    The San Francisco Minimum Wage Ordinance requires employers to pay at least the minimum wage for all hours worked. It does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift. SkyWest's compensation scheme violates San Francisco's minimum wage requirements because they fail to pay SFO Plaintiffs and San Francisco Subclass Members for all hours worked, fail to pay for all training time, and fail to accurately record the work hours of all flight attendants.

172.    For example, under SkyWest's block pay compensation plan, SFO Plaintiffs and San Francisco Subclass Members are paid for hours worked between block-out and block-in, but not for any of the time worked prior to departure or after arrival. SkyWest pays wages for less than all duty hours or working hours, and fails to ensure that all hours worked are paid. SkyWest does not compensate for all hours of integral and indispensable work performed by its flight attendants in violation of San Francisco's Minimum Wage Ordinance.

173.    SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and San Francisco Subclass Members, in conscious disregard of Plaintiffs' and Class Members' rights to be compensated for their labor.

174.    During the applicable statute of limitations, SkyWest has failed to pay SFO Plaintiffs and San Francisco Subclass Members the applicable minimum wage for all hours worked, in violation of San Francisco Admin. Code § 12R.

175.    Pursuant to San Francisco Admin. Code § 12R.7(c), SFO Plaintiffs and San Francisco Subclass Members are entitled to recover their unpaid wages in an amount to be established at trial, plus prejudgment interest, and costs and attorneys' fees. Further, Plaintiffs and San Francisco Subclass Members are entitled to recover liquidated damages in the amount of $50 per violation per day.

CLASS AND COLLECTIVE ACTION COMPLAINT

## COUNT VIII

### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF
### LOS ANGELES' LIVING WAGE ORDINANCE
#### Los Angeles Admin. Code § 10.37 *et seq.*
#### (on behalf of Plaintiff Tapp and the Los Angeles Subclass)

176.    Plaintiff Cheryl Tapp and Los Angeles Subclass Members allege and incorporate by reference the allegations in the preceding paragraphs.

177.    At all times relevant to this action, Plaintiffs and Los Angeles Subclass Members were employed by SkyWest within the meaning of Los Angeles' Living Wage Ordinance, were covered by the provisions of Los Angeles' Living Wage Ordinance, and were not exempt from the minimum wage requirements of that ordinance.

178.    The Los Angeles minimum cash wage for airport employees with health benefits was $10.30 per hour beginning July 1, 2010, $10.42 per hour beginning July 1, 2011, $10.70 per hour beginning July 1, 2012, $10.91 per hour beginning July 1, 2013, and $11.03 per hour beginning July 1, 2014. Since July 1, 2015, Los Angeles's minimum wage has been $11.17 per hour.

179.    Los Angeles International Airport is part of the City and County of Los Angeles, and is covered by Los Angeles's Living Wage Ordinance.

180.    The Los Angeles Living Wage Ordinance requires employers to pay at least the living wage for all hours worked. It does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift. SkyWest's compensation scheme violates Los Angeles's living wage requirements because they fail to pay Plaintiff Tapp and Los Angeles Subclass Members for all duty hours and all working hours, fail to pay for all training time, and fail to accurately record the work hours of all flight attendants.

181.    For example, under SkyWest's block pay compensation plan, Plaintiff Tapp and Los Angeles Subclass Members are paid for hours worked between block-out and block-in, but not for any of the rest of flight attendants' duty hours or their required working hours prior to check-in or after release. SkyWest does not compensate for all hours of integral and indispensable work performed by its flight attendants in violation of Los Angeles's Living Wage Ordinance.

182.     SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and Los Angeles Subclass Members, in conscious disregard of Plaintiffs' and Class Members' rights to be compensated for their labor.

183.     During the applicable statute of limitations, SkyWest has failed to pay Plaintiff Tapp and Los Angeles Subclass Members the applicable minimum wage for all hours worked, in violation of the city's Living Wage Ordinance, Los Angeles Admin. Code § 10.37 *et seq.*

184.     Pursuant to Los Angeles Admin. Code § 10.37 *et seq*., Plaintiff Tapp and Los Angeles Subclass Members are entitled to recover their unpaid wages plus triple damages for SkyWest's willful failure to pay wages as required, plus applicable fines, and costs and attorneys' fees.

## COUNT IX

## ARIZONA WAGE ACT

### A.R.S. § 23-350, *et seq.*

### (Plaintiff Colson on behalf of the Arizona Class)

185.     Plaintiff Colson repeats and realleges the allegations set forth above as if fully contained herein.

186.     SkyWest employs flight attendants who are based at Phoenix Sky Harbor International Airport (PHX), who fly into and out of Arizona on a regular basis, and/or who reside in Arizona.

187.     SkyWest employs flight attendants who are based in Arizona, including Plaintiff Colson and members of the Arizona Class, to provide passengers with safe and comfortable travel accommodations according the requirements of the FAA and SkyWest.

188.     At all relevant times, SkyWest was an "employer" as defined by A.R.S. § 23-350(3).

189.     At all relevant times, Plaintiff Colson and the Class were "employees" as defined by A.R.S. 23-350(3), and whose work was "performed wholly or partly within this state."

190.     The Arizona Wage Act, A.R.S. § 23-355(A), provides that if an employer "fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."

191.     SkyWest violated the Arizona Wage Act, A.R.S. § 23-350, et seq.by failing to pay any wages at all to Arizona Plaintiff Colson and the Arizona Class during certain clearly defined and traceable portions of their duty day, including but not limited to performing preliminary and postliminary activities that are integral and indispensable to their principal activities as flight attendants and are required by both the FAA and SkyWest. These portions of the duty day occur in each and every continuous workday and are not *de minimus*.

192.     Additionally, SkyWest violated the Arizona Wage Act, A.R.S. § 23-350, *et seq.*, by failing to accurately keep records and pay wages at all to Plaintiff Colson and the Arizona Class for required working hours that occurred prior to check-in and after their automatic, but not actual, release time.

193.     SkyWest's SkedPlus+ records and payroll records provide all necessary information required to calculate the uncompensated duty day wages, and other documents in the possession of SkyWest will affirm pre- and post-duty day working hours performed by flight attendants.

194.     SkyWest's violations of the Arizona Wage Act were repeated, willful, intentional, and with reckless disregard for the laws of the State of Arizona.

195.     As a result of SkyWest's wrongful conduct, Plaintiff Colson and the Class have been deprived of wages, and have suffered damages.

196.     Arizona Plaintiff Brandon Colson, on behalf of himself and all Arizona Class members, demands judgment against SkyWest for an amount of damages equal to treble unpaid wages, and such other and further relief as may be just and proper, pursuant to A.R.S. § 23-355.

### COUNT X

### ARIZONA MINIMUM WAGE ACT

### A.R.S. § 23-363, *et seq.*

### (Plaintiff Colson on behalf of the Arizona Class)

197.     Plaintiff Colson repeats and realleges the allegations set forth above as if fully contained herein.

198.     At all relevant times, SkyWest was an "employer" as defined by A.R.S. § 23-362(B).

199. At all relevant times, Plaintiff Colson and the Class were "employees" as defined by A.R.S. 23-362(A)."

200. The Arizona Minimum Wage Act, A.R.S. § 23-363, provides that "[e]mployers shall pay employees no less than the minimum wage."

201. Any employer who fails to pay the wages required under the Arizona Minimum Wage Act "shall be required to pay the employee the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages" pursuant to A.R.S. § 23-364.

202. SkyWest violated the Arizona Minimum Wage Law A.R.S. § 23-363, *et seq.* by failing to pay minimum wages for all hours worked to Plaintiff Colson and the Arizona Class during certain clearly defined and traceable portions of their duty day, including but not limited to performing preliminary and postliminary activities that are integral and indispensable to their principal activities as flight attendants and are required by both the FAA and SkyWest. These portions of the duty day occur in each and every continuous workday and are not *de minimus*.

203. Additionally, SkyWest violated the Arizona Wage Law, A.R.S. § 23-363, *et seq.*, by failing to accurately keep times for training, for failing to pay minimum wages for each hour of training.

204. SkyWest violated the Arizona Wage Law, A.R.S. § 23-364(f) for failing to keep accurate records and failing to pay hourly wages at all to Plaintiff Colson and the Arizona Class for required working hours that occurred prior to check-in and after their automatic, but not actual, release time.

205. SkyWest's violations of the Arizona Minimum Wage Law were repeated, willful, intentional, and with reckless disregard for the laws of the State of Arizona.

206. As a result of SkyWest's wrongful conduct, Plaintiff Colson and the Arizona Class have been deprived of wages, and have suffered damages.

207. SkyWest's failure to pay minimum wages has been a continuing course of conduct, and as such, all prior violations of the Arizona Minimum Wage Act should be considered violations regardless of their date.

208.    Arizona Plaintiff Brandon Colson, on behalf of himself and all Arizona Class members, demands judgment against SkyWest for an amount of damages equal to treble unpaid wages, per- and post-judgment interest, civil penalties, reasonable attorneys' fees and costs, and such other and further relief as may be just and proper, pursuant to A.R.S. § 23-364.

### COUNT XI

### WASHINGTON MINIMUM WAGE ACT

### R.W.C. Title 49, Ch. 49.46, *et seq.*

### (Plaintiff Lozano on behalf of the Washington Class)

209.    Plaintiff Lozano repeats and realleges the allegations set forth above as if fully contained herein.

210.    At all relevant times, SkyWest was an "employer" as defined by R.C.W. § 49.46.010(4).

211.    At all relevant times, Plaintiff Lozano and the Class were "employees" as defined by R.C.W. § 49.46.010(3).

212.    The Washington Minimum Wage Act, R.C.W. § 49.46.020, provides that "every employer shall pay to each of his or her employees . . . at a rate of not less than the amount established" as the state's minimum wage.

213.    Any employer who fails to pay the wages required under the Washington Minimum Wage Act "shall be liable to such employee affected for the full amount of such wage rate, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court" pursuant to R.C.W. § 49.46.09(1).

214.    R.C.W. § 49.46.09(1) further provides that "[a]ny agreement between such employee and the employer to work for less than such wage rate shall be no defense to such action."

215.    SkyWest violated the Washington Minimum Wage Law R.C.W. § 49.46, *et seq.* by failing to pay minimum wages for all hours worked to Plaintiff Lozano and the Washington Class during certain clearly defined and traceable portions of the duty day, including but not limited to while the flight attendants were performing preliminary and postliminary activities that are integral and indispensable to their principal activities and are required by both the FAA and SkyWest. These portions of the duty day occur in each and every continuous workday and are not *de minimus*.

216.     Additionally, SkyWest violated the Washington Wage Law, R.C.W. § 49.46, *et seq.*, by failing to accurately keep times for training, for failing to pay minimum wages for each hour of training.

217.     SkyWest violated the Washington Wage Law, R.C.W. § 49.46.070 for failing to keep accurate records and failing to pay hourly wages at all to Plaintiff Lozano and the Washington Class for required working hours that occurred prior to check-in and after their automatic, but not actual, release time.

218.     SkyWest's violations of the Washington Minimum Wage Law were repeated, willful, intentional, and with reckless disregard for the laws of the State of Washington.

219.     As a result of SkyWest's wrongful conduct, Plaintiff Lozano and the Washington Class have been deprived of wages, and have suffered damages.

220.     SkyWest's failure to pay minimum wages has been a continuing course of conduct, and as such, all prior violations of the Washington Minimum Wage Act should be considered violations regardless of their date.

221.     Washington Plaintiff Brüno Lozano, on behalf of himself and all Washington Class members, demands judgment against SkyWest for unpaid wages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and such other and further relief as may be just and proper, pursuant to R.C.W. § 49.46, *et seq*.

## COUNT XII

## WASHINGTON MINIMUM WAGE ACT, OVERTIME WAGES

### R.W.C. § 49.46.130

**(Plaintiff Lozano on behalf of the Washington Class)**

222.     Plaintiff Lozano repeats and realleges the allegations set forth above as if fully contained herein.

223.     The Washington Minimum Wage Act, R.C.W. § 49.46.130, provides that "no employer shall employ any of his or her employees for a work week longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he or she is employed." An exception

is found in R.W.C. § 49.46.130(2)(i), stating that when hours in excess of 40 in a week are worked voluntarily as a result of a shift trade, the overtime provision does not apply.

224.    Any employer who fails to pay wages as required under the Washington Minimum Wage Act, including the overtime wages in question, "shall be liable to such employee affected for the full amount of such wage rate, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court" pursuant to R.C.W. § 49.46.09(1).

225.    R.C.W. § 49.46.09(1) further provides that "[a]ny agreement between such employee and the employer to work for less than such wage rate shall be no defense to such action."

226.    SkyWest violated the overtime provision of the Washington Minimum Wage Law R.C.W. § 49.46.130 by failing to pay Plaintiff Lozano and the Washington Class time-and-a-half wages for hours per week over forty hours, including but not limited to all duty hours, all actual training hours, and all pre- and post-duty time working hours, except where the excess hours were worked voluntarily and after a shift trade.

227.    SkyWest's violations of the overtime provision of the Washington Minimum Wage Law were repeated, willful, intentional, and with reckless disregard for the laws of the State of Washington.

228.    As a result of SkyWest's wrongful conduct, Plaintiff Lozano and the Washington Class have been deprived of wages, and have suffered damages.

229.    SkyWest's failure to pay overtime wages has been a continuing course of conduct, and as such, all prior violations of the Washington Minimum Wage Act should be considered violations regardless of their date.

230.    Washington Plaintiff Brüno Lozano, on behalf of himself and all Washington Class members, demands judgment against SkyWest for unpaid overtime wages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and such other and further relief as may be just and proper, pursuant to R.C.W. § 49.46, *et seq*.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief against SkyWest as follows:

43

A. An order enjoining SkyWest from retaliatory actions against the Plaintiffs, against Class members who opt-in to the Fair Labor Standards Act collective action, or who are members of the nationwide and statewide Classes;

B. An order declaring that the action is a proper collective action pursuant to 29 U.S.C. § 216(b) as to the FLSA claims alleged herein; certifying an opt-in class; and directing SkyWest to provide a list of all persons it employs or has employed as flight attendants in the last four years prior to the filing of the complaint, including the last known address, email, and telephone numbers of current and former flight attendants;

C. An order certifying a National Class under Fed. R. Civ. P. 23 for injunctive and declaratory relief claims as alleged herein;

D. An order certifying the California Class under Fed. R. Civ. P. 23 as to the California Labor Code sections referenced herein, the California Wage Orders referenced herein and the California Unfair Competition;

E. An order certifying the San Francisco Sub-Class under Fed. R. Civ. P. 23 as to the San Francisco Minimum Wage Law sections referenced herein;

F. An order certifying the Los Angeles Sub-Class under Fed. R. Civ. P. 23 as to the Los Angeles Living Wage Ordinance sections referenced herein;

G. An order certifying the Arizona Class under Fed. R. Civ. P. 23 as to the Arizona statutory sections referenced herein;

H. An order certifying the Washington Class under Fed. R. Civ. P. 23 as to the Washington statutory sections referenced herein;

I. An order certifying Plaintiffs as class representatives; and appointing Plaintiffs' counsel, Greg Coleman Law PC, as counsel for the national and state classes pled herein;

J. An order determining that the conduct alleged herein is unlawful under the FLSA and the applicable state laws as alleged herein;

K. An order granting the declaratory and injunctive relief requested by the Plaintiffs and Classes;

CLASS AND COLLECTIVE ACTION COMPLAINT

L.      An award of monetary damages, liquidated damages, penalties, restitution, including pre-judgment and post-judgment interest to Plaintiffs and the Class in such amount as may be determined at trial;

M.      An order enjoining SkyWest from continuing the unlawful practices alleged herein;

N.      An award to Plaintiffs and the Class for reasonable attorneys' fees and costs, including but not limited to reimbursement of all costs related to the prosecution of this action; and

O.      An award to Plaintiffs and the Class of any such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: November 9, 2015              Respectfully submitted,

                                     **GIRARD GIBBS LLP**

                                     By:    */s/ Eric H. Gibbs*

                                     Eric H. Gibbs
                                     Dylan Hughes
                                     Steve Lopez
                                     One Kaiser Plaza, Suite 1125
                                     Oakland, California 94612
                                     Telephone: (510) 350-9700
                                     Facsimile:  (510) 350-9701
                                     ehg@classlawgroup.com
                                     dsh@classlawgroup.com
                                     sal@classlawgroup.com

                                     Gregory F. Coleman (*pro hac vice* to be submitted)
                                     Lisa A. White (*pro hac vice* to be submitted)
                                     **GREG COLEMAN LAW, PC**
                                     First Tennessee Plaza
                                     800 S. Gay Street, Suite 1100
                                     Knoxville, TN  37929
                                     Telephone:  (865) 247-0080
                                     Facsimile:  (865) 522-0049
                                     greg@gregcolemanlaw.com
                                     lisa@gregcolemanlaw.com

CLASS AND COLLECTIVE ACTION COMPLAINT

Edward A. Wallace (*pro hac vice* to be submitted)
Amy E. Keller (*pro hac vice* to be submitted)
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022
eaw@wexlerwallace.com
aek@wexlerwallace.com

*Attorneys for Plaintiffs*

CLASS AND COLLECTIVE ACTION COMPLAINT