## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **CHERYL TAPP, RENEE SITAVICH, SARAH HUDSON, BRANDON COLSON, and BRÜNO LOZANO, on behalf of themselves and all others similarly situated,**<br><br>     **Plaintiffs,**<br>**v.**<br><br>**SKYWEST, INC. and**<br>**SKYWEST AIRLINES, INC.,**<br><br>     **Defendants.** | **Case No.: 1:15−cv−11117**<br><br>**Honorable John J. Tharp Jr.**<br><br>**Jury Trial Demanded** |

## <u>AMENDED COMPLAINT</u>

Plaintiffs Cheryl Tapp, Renee Sitavich, Sarah Hudson, Brandon Colson, and Brüno Lozano, current and former flight attendants for SkyWest Airlines, Inc. (collectively "Plaintiffs") bring this action on behalf of themselves and all other similarly situated flight attendants ("Class") who are or were paid only "block time" wages by SkyWest, Inc. and SkyWest Airlines, Inc. (collectively "SkyWest") within the past three years. By calculating flight attendants' wage compensation only when the aircraft's main cabin door is closed, SkyWest inadequately compensates its Flight Attendants even as they perform integral and indispensable duties that are required by SkyWest and heavily regulated the Federal Aviation Administration ("FAA").

### INTRODUCTION

1.     This case is simple: SkyWest flight attendants have the right to be compensated fairly for all of their working hours. That right is guaranteed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., as well as under the wage laws of California, Washington, and

Arizona for work that is performed in the state of the flight attendants' base (also referred to as "domicile" by SkyWest) or when employees temporarily travel beyond the state lines of their base.

2.      For hourly employees like the Plaintiffs and the Class, the right to receive fair wages for each hour they work in a given workweek is not and cannot be bargained away, whether or not the employees work for an airline or work in any other industry. As employees, for each hour that SkyWest flight attendants perform duties that are integral and indispensable to their primary responsibilities, they are entitled to be compensated for their time at a rate that is no less than the minimum hourly wage averaged weekly as required by applicable federal laws, and averaged either weekly or hourly as required by applicable state wage laws.

3.      As further alleged and explained herein, SkyWest flight attendants are paid wages based upon "block time," yet SkyWest's pay structure does not include any mechanism to guarantee or verify weekly wage compliance based upon all hours of work that must be performed by its flight attendants.

4.      Although in 2015, SkyWest claims to have carried 30.1 million passengers to 202 different cities, managing the detailed logistics of scheduling and maintaining a fleet of 359 aircraft, and scheduling flight crews from 15 different "crew domiciles" (bases) while adhering to all FAA training and rest requirements,[1] SkyWest does not provide its employees with the "basic records that an employer must maintain" as listed by the U.S. Department of Labor, including but not limited to: a) the time and day of the week when the workweek begins, b) hours worked each day, c) total hours worked each week, d) regular hourly pay rate, e) total daily or weekly straight-time earnings, and f) total overtime earnings for the workweek. U.S. Department of Labor Fact

---

[1] http://skywest.com/about-skywest-airlines/facts/ (last checked Dec. 19, 2016).

Sheet #21 is attached as Exhibit 1. This type of information would allow flight attendants to independently confirm the company's compliance with state and federal wage laws.

5.     Plaintiffs Cheryl Tapp, Renee Sitavich, Sarah Hudson, Brandon Colson, and Brüno Lozano ("Plaintiffs"), current and former SkyWest flight attendants, bring this action on behalf of themselves and all other similarly situated flight attendants who are or were paid hourly based upon "block time" by SkyWest, Inc. and SkyWest Airlines, Inc. (collectively "SkyWest") during the applicable statute of limitations period (three years for FLSA and some state claims; four years for other state claims). By calculating wages based on when flight attendants are on an airplane in motion, SkyWest fails to assure compliance with, and in fact, violates applicable state and federal laws.

6.     According to SkyWest, Inc.'s 2015 Annual Report,[2] none of its 10,411 full-time equivalent employees (*e.g.*, FAs, pilots, customer service representatives, etc.) are currently represented by a union. Although SkyWest Airlines flight attendants are not represented by a union, they do have an association which negotiates certain aspects of their work responsibilities

---

[2]     http://inc.skywest.com/assets/Uploads/AnnualReports/SkyWestInc2015AnnualReport.pdf    ("As of December 31, 2015, SkyWest and SkyWest Airlines collectively employed 10,411 full-time equivalent employees, consisting of 3,676 pilots, 2,703 flight attendants, . . .. None of these employees are currently represented by a union. Collective bargaining group organization efforts among SkyWest Airlines' employees do, however, occur from time to time and we anticipate that such efforts will continue in the future. If unionization efforts are successful, we may be subjected to risks of work interruption or stoppage and/or incur additional expenses associated with increased union representation of our employees.) (last viewed on December 20, 2016).

and benefits with management, the SkyWest InFlight Association ("SIA"). The Flight Attendant Policy Manual ("Policy Manual") is attached as Exhibit 2.

7.     SkyWest regularly characterizes their Flight Attendant Policy Manual as a "Collective Bargaining Agreement"; however, this Policy Manual does not include any compulsory mediation requirements, an arbitration clause, or discussion of any "cooling off period" or "self-help" provisions or restrictions. Such provisions are included in most (if not all) airline collective bargaining agreements. Upon information and belief, the SIA and the Policy Manual are not and have not been certified by the National Mediation Board.

8.     Even though the Policy Manual is not a valid CBA, no interpretation of this document is required to determine the method and rates of flight attendant pay, that "block time" is used to calculate wages per trip ("Pairing"), how "duty hours" are calculated (from scheduled check-in to 15 minutes after cabin door is opened on last flight of day), or to determine compensable work activities. SkyWest's scheduling ("SkedPlus+") and pay records speak for themselves. Importantly, "duty time" as recorded by SkyWest fails to include all compensable work activities, as explained below.

## LEGAL BASES FOR COMPLAINT

9.     Plaintiffs Tapp, Sitavich, Hudson, Colson, and Lozano bring this action as a Collective Action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of themselves and a nationwide Class consisting of former and current flight attendants of SkyWest Airlines who are owed unpaid wages under the FLSA, 29 U.S.C. §201 et. seq. Plaintiffs bring this action to recover the compensation, liquidated damages, costs, and reasonable attorneys' fees that they and members of the nationwide Class are entitled to under the FLSA.

4

10.     California Plaintiffs Tapp, Sitavich, Hudson, and Lozano bring this action on behalf of themselves and the California Class pursuant to Federal Rule of Civil Procedure 23. These California Class claims are brought under the State of California Wage Order No. 9; Cal. Labor Code §§ 1182.12, 1194, and 1197; Cal. Labor Code §§ 21-204; Cal. Labor Code § 226; Cal. Labor Code § 511 (alternative workweek); and California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200, et seq.

11.     Plaintiff Tapp brings this action on behalf of herself and all similarly situated current flight attendants of SkyWest Airlines as a class action seeking injunctive and declaratory relief pursuant to the Declaratory Relief Act, 28 U.S.C. § 220.

12.     Plaintiffs Sitavich, Hudson, and Lozano bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all former flight attendants based in California under Cal. Labor Code §§ 201-204.

13.     Plaintiffs Tapp, Sitavich, and Lozano bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 for claims under the San Francisco Minimum Wage Ordinance, San Francisco Admin. Code § 12R, on behalf of themselves and all current and former SkyWest flight attendants who were based in San Francisco during the applicable statute of limitations period who were not compensated as required for their work.

14.     Plaintiff Tapp brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 for claims under the Los Angeles Living Wage Ordinance, Los Angeles Admin. Code § 10.37 et seq., on behalf of herself and all current and former SkyWest flight attendants based in Los Angeles during the applicable statute of limitations period who were not compensated as required for their work.

15.     Arizona Plaintiff Colson brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all current and former SkyWest flight attendants based in Arizona during the applicable statute of limitations period(s) who were not compensated as required for all of their work. These Arizona Class claims are brought under the Arizona Wage Act, A.R.S. § 23-350, et seq., Arizona Minimum Wage Act, A.R.S. § 23-363, et seq.

16.     Washington Plaintiff Lozano brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all current and former SkyWest flight attendants based in Washington during the applicable statute of limitations period(s), who were not compensated as required for their work. These Washington Class claims are brought under the Washington Wage Act, R.C.W. § 49.46, et seq.

17.     Plaintiffs bring this action to recover the compensation, liquidated damages, costs, and reasonable attorneys' fees that they and members of the State Classes are entitled to under the applicable laws of California, Arizona and Washington.

## JURISDICTION & VENUE

18.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, 29 U.S.C. § 201, et seq. This Court has supplemental jurisdiction and 28 U.S.C. § 1367, over the California, Arizona, and Washington statutory claims alleged herein.

19.     This Court has personal jurisdiction over SkyWest because it: (1) operates a business within this District; (2) committed acts in violation of the FLSA as alleged herein within this District; (3) maintained continuous and systematic contacts with this District over a period of years; and (4) purposefully availed itself of the benefits of doing business within this District.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because SkyWest conducts business within this District, has agents within this District, transacts its affairs in this District, and because a substantial part of the events or omissions giving rise to the national claims occurred in this District.

21.     Further, SkyWest sought to transfer this matter to this venue under Section 1404(a) as another district where "it might have been brought," meaning where the district would have had subject matter jurisdiction, where defendants would have been subject to personal jurisdiction, and where venue would have been proper.

## **THE PARTIES**

22.     Plaintiff Cheryl Tapp is a resident of San Mateo, San Mateo County, California. She is currently employed by SkyWest Airlines as a flight attendant, and is based or "domiciled"[3] in San Francisco, California at the San Francisco International Airport (SFO). She was hired as a flight attendant on January 5, 2010. She has been based in San Francisco for the majority of her tenure with SkyWest. For the period from June 1, 2015 to August 1, 2015, she was based in Los Angeles, California at Los Angeles International Airport (LAX).

---

[3] SkyWest's employee manuals use the terms "based" and "domiciled" interchangeably. See Exhibit 2, Definitions. In short, each crew [including both Flight Attendants and Pilots] is based at a specific airport. Every trip (or "pairing") for that crew starts and ends at their base, and often the crew returns to their base one or multiple times during the trip. Crew members for every pairing are all based together, with extremely rare exceptions.

23.     Plaintiff Renee Sitavich is a resident of Napa, Napa County, California. She was formerly employed by SkyWest Airlines as a flight attendant based in Chicago, Illinois (ORD) from July 2005 until August 2012. From September 2012 until she resigned from her position in January 2014, she was based in San Francisco, California (SFO). She was hired by SkyWest on July 18, 2005.

24.     Plaintiff Sarah Hudson is a resident of San Luis Obispo, San Luis Obispo County, California. She was formerly employed by SkyWest Airlines as a flight attendant. She was hired by SkyWest on March 14, 2013, and resigned from her position in February 2015. She was based at Fresno Yosemite International Airport (FAT) for all of her tenure working for SkyWest.

25.     Plaintiff Brandon Colson is a resident of Phoenix, Maricopa County, Arizona. He was formerly employed by SkyWest Airlines as a flight attendant. He was hired by SkyWest on August 8, 2012, and resigned from his position in August 8, 2014. He was based at Phoenix Sky Harbor International Airport (PHX) in Arizona for all of his tenure working for SkyWest.

26.     Plaintiff Brüno Lozano is a resident of Ypsilanti Township, Michigan. He was formerly employed by SkyWest Airlines as a flight attendant. He was hired by SkyWest on May 22, 2007 and resigned from his position in March 1, 2014. While he was with SkyWest, he was based in Milwaukee (MKE), Chicago (ORD), Los Angeles (LAX), San Francisco (SFO), and Seattle (SEA). He was based at Seattle-Tacoma International Airport (SEA) in Washington for approximately the last year of his tenure working for SkyWest. The exact dates that he was based at each location is in the possession and control of SkyWest but is no longer known or accessible to Mr. Lozano. Mr. Lozano resided in various places during his tenure at SkyWest, including but not limited to California.

27.     Plaintiffs and members of the Nationwide Class have been employed as flight attendants by SkyWest Airlines during the three years preceding the initial filing of this lawsuit.

28.     Plaintiffs and members of the State Classes have been employed as flight attendants by SkyWest Airlines during the applicable years preceding the initial filing of this lawsuit, based upon each state's statute of limitations.

29.     Defendant SkyWest, Inc. is a Utah corporation that is registered to do business in California, and whose principal office is located at 444 South River Road, St. George, Utah 84790.

30.     Defendant SkyWest Airlines, Inc. is a Utah corporation that is registered to do business in California, and whose principal office is located at 444 South River Road, St. George, Utah 84790. SkyWest Airlines is a wholly owned subsidiary of SkyWest, Inc.

31.     SkyWest, Inc. and SkyWest Airlines, Inc. are, for the purposes of the FLSA and the state statutory claims, a common or joint enterprise or partnership that is collectively, jointly and severally liable to Plaintiffs and members of the Class as described herein.

32.     SkyWest Airlines, Inc. currently employs approximately 2,663 flight attendants in the United States. According to its website, SkyWest flight attendants are based or "domiciled" in a total of 10 states: Arizona (2 cities), California (4 cities), Colorado (2 cities), Illinois, Michigan, Minnesota, Oregon, Texas, Washington and Utah.

## SUBSTANTIVE ALLEGATIONS
### Scheduling

33.     Relevant airline terms are explained below using an actual (but also typical) work trip of a typical flight attendant. The example schedules shown below are those of trips flown by former SkyWest Airlines flight attendant Andrea Hirst, a named plaintiff in related case, *Hirst et al. v. SkyWest Airlines Inc. et al.*, N.D. Ill. Case No. 1:15-cv-02036. This schedule information, format, and terminology is typical for every SkyWest flight attendant.

34.     The schedules of all SkyWest flight attendants are recorded in SkyWest's computerized scheduling and pay record system, SkedPlus+. About a week before the beginning of a month, the schedules for the upcoming month are "awarded." For every flight attendant, no flight that appears on that month's schedule as awarded is eligible for time-and-a-half overtime pay, unless a flight or flights fall on an overtime-eligible holiday. "Junior manned" pay, see Exhibit 2, Definitions, is only available on a limited basis when a flight attendant voluntarily agrees to add an unscheduled flight to his or her own monthly schedule upon the company's specific request. "Junior manned" pay is not related to the number of hours a SkyWest flight attendant works in any

given week.

35.     Figure 1 below, included for instructive purposes, is an excerpt of Ms. Hirst's schedule from that system during a period when she was based at Minneapolis St. Paul International Airport (MSP):

**Figure 1: Typical Pairing Details.**



### Pairing Details

AWD E1599 CRJ - 038405 Annie Hirst - ORD CR7 FA

**Tuesday 10-30-2012   Report: 14:20**

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | DL4466 | N460SW | CRJ | MSP | MOT | 15:38 | 16:57 | 49 | 1:19 | 1:30 | 449 | 3515 | 0:22 |
| 2. | DL4466 | N460SW | CRJ | MOT | MSP | 17:19 | 18:37 | 40 | 1:18 | 1:28 | 449 | 3033 | 0:55 |
| 3. | DL4724 | N460SW | CRJ | MSP | ATW | 19:32 | 20:29 | 37 | 0:57 | 1:01 | 236 | 2010 | |

Day Total: 3:34   3:59   Duty: **6:24**

Release: 20:44/30   Hotel: Holiday Inn Select (920)735-9955   Layover: 9:31
Shuttle: SHUTTLE OPERATED BY HOTEL

**Wednesday 10-31-2012   Report: 06:15**

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4. | DL4846 | N460SW | CRJ | ATW | MSP | 06:45 | 07:44 | 40 | 0:59 | 1:06 | 236 | 2290 | 1:25 |
| 5. | DL4560 | N659BR | CRJ | MSP | FAR | 09:09 | 10:11 | 30 | 1:02 | 1:02 | 223 | 2078 | 1:04 |
| 6. | DL4560 | N659BR | CRJ | FAR | MSP | 11:15 | 12:17 | 46 | 1:02 | 1:03 | 223 | 2005 | 0:47 |
| 7. | DL4655 | N659BR | CRJ | MSP | YWG | 13:04 | 14:34 | 40 | 1:30 | 1:30 | 243 | 3242 | |

Day Total: 4:33   4:41   Duty: **8:34**

Release: 14:49/31   Hotel: Radisson Hotel Downtown (204)956-0410   Layover: 15:41
Shuttle: TRANSPORTATION PROVIDED BY THIRD PARTY VENDOR – Hollywood (2

**Thursday 11-01-2012   Report: 06:30**

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8. | DL4736 | N915EV | CRJ | YWG | MSP | 07:23 | 08:46 | 47 | 1:23 | 1:29 | 394 | 2833 | 2:31 |
| 9. | DL4472 | N460SW | CRJ | MSP | LNK | 11:17 | 12:34 | 28 | 1:17 | 1:17 | 331 | 2497 | 0:24 |
| 10. | DL4472 | N460SW | CRJ | LNK | MSP | 12:58 | 14:15 | 47 | 1:17 | 1:19 | 331 | 2676 | 1:54 |
| 11. | DL4556 | N453SW | CRJ | MSP | BNA | 16:09 | 18:12 | 50 | 2:03 | 2:07 | 695 | 4509 | |

Day Total: 6:00   6:12   Duty: **11:57**

Release: 18:27/01   Hotel: Wingate Nashville Airport (615)884-9777   Layover: 11:03
Shuttle: SHUTTLE OPERATED BY HOTEL

**Friday 11-02-2012   Report: 05:30**

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12. | DL4811 | N453SW | CRJ | BNA | CVG | 06:13 | 08:18 | 30 | 1:05 | 1:06 | 230 | 2126 | 0:40 |
| 13. | DL4648 | N453SW | CRJ | CVG | BNA | 08:58 | 08:54 | 46 | 0:56 | 1:01 | 230 | 2069 | 0:59 |
| 14. | DL4791 | N453SW | CRJ | BNA | MSP | 09:53 | 12:04 | 50 | 2:11 | 2:11 | 695 | 5130 | |

Day Total: 4:12   4:18   Duty: 6:49

Release: 12:19/02

**Totals:** Report 14:20/30   Release **12:19/02**   Block **18:19**   Credit **19:10**   TAFB **69:59**
Key: Scheduled; Estimated; **Actual**; Overridden;

**Trip Summary**   Crewmembers for Each Flight   \* First Flight   ✓ Checked In

| Captain | First Officer | Flight Attendant |
|---|---|---|

36.     Each scheduled day shown above consists of a series of flights, which are together called a pairing, while each individual flight is called a leg. The schedule above is called a "Pairing Detail," and is electronically updated during and immediately following the completion of the trip and, as saved by SkyWest, reflects the minute-by-minute circumstances of the pairing as flown.

37.     Currently employed flight attendants are able to see their own past and upcoming Pairing Details, as stored on the SkedPlus+ system. However, immediately upon leaving SkyWest, a flight attendant no longer has access to any of his or her Sked+ records, and the airline does not as a matter of practice provide these records to a former employee upon request outside formal discovery.

**Reporting for Duty**

38.     Prior to reporting for duty, each flight attendant must have cleared airport security screening, met and certify that he or she has reviewed certain required emails from SkyWest (called: "Must Know Before You Go"). These emails include changes in FAA rules, training information, and manual updates, some of which are hundreds of pages long that must be printed and physically in their manual prior to their duty day. The time expended for these work activities, by design, occurs before every flight attendant's recorded duty day as they must affirm that they have completed them before they are allowed to "check in."  These required emails are common to every flight attendant who works for SkyWest.

39.     At the top left of each day's schedule (Fig. 1: A), the crew members' report time is shown. Report time is the time by which a crew member must arrive at the airport, in full uniform, with all necessary items for flight, be cleared through security, and "check in" through the company computer or a smart phone or tablet (Fig. 2; discussed further below). Thus, on October 30, 2012, Ms. Hirst reported for duty at her base airport, MSP, no later than 14:20 (or 2:20 p.m.).[4]

40.     When a flight attendant checks in before his or her mandatory report time, the actual report time does not appear on their pairing detail. Only the mandatory report time appears on his

---

[4] Time of day designations are shown in local 24-hour military time, and all elapsed time is shown as hours: minutes.

or her Sked+ Pairing Detail. Neither current nor former flight attendants have access to their own actual electronic check-in time, although the actual times would be electronically stored in SkyWest's scheduling because late check-in times are grounds for termination.

41. Once a flight attendant checks in, he or she is immediately under the control of the airline for rerouting purposes. SkyWest can, and often does, rearrange flight attendant schedules during their duty day to reduce overall flight delays. By replacing a delayed flight attendant with a flight attendant who has already checked in and is present at the airport, the airline reduces its late departure rate. Thus, from the point of actual check-in (even if an hour before the "report time"), the flight attendant is under the control of SkyWest's "crew support."

42. Each flight attendant is required to check in with the airline a minimum of 45 minutes prior to their first flight's scheduled departure time. To do so, the flight attendants must either check-in on a company computer, or alternatively, remotely check-in through the company's website using a smart phone or tablet, affirming that they are inside the airport terminal and have completed all security requirements. An image of this affirmation is below:

**Figure 2: Smart Phone Check-In Screenshot**



43. For international flights, flight attendants must report for duty sixty minutes prior to the scheduled departure time. These variations in report for duty time do not change the methodology for calculating a flight attendant's wages since "block time" calculations do not begin until the plane's main cabin door is closed.

44. Since January 2014, flight attendants have been required to check in a second time with the gate agent at specific lengths of time prior to the scheduled departure. Depending on the size and configuration of the departure airport, this additional check in requirement often necessitates an even earlier report ("check in") time based upon the walking distance to the actual gate.

**Block Time Compensation**

45. SkyWest compensates all of its flight attendants on an "hourly" rate, yet those hours (called "block hours" or "block time") are only calculated from the time that the aircraft has

blocked out (moved away from the gate) to when the aircraft has blocked in (pulled in to the gate). As a result, time which contributes to each flight attendant's wage compensation starts, stops, and restarts multiple times during every duty day.

46.     Importantly block hours are the only regular working hours that appear on SkyWest flight attendants' wage statements. Flight attendants' total duty hours (i.e., recorded working hours) do not appear anywhere on SkyWest's wage statements. Likewise, compensable work activities that occur before and after duty hours are not routinely tracked by SkyWest, although these activities generally create an electronic record. For example, each irregular operations report is started, written, and submitted online.

47.     Flight attendants' continuously varying hourly, daily, or weekly rates of pay do not appear on their wage statements.

48.     At each day's final destination, the release time (Fig. 1: B) is automatically calculated by adding exactly fifteen minutes to the time the main cabin door opens.

49.     The difference between report time (Fig. 1: A) and release time (Fig. 1: B) is considered a flight attendant's "duty day."  This constitutes each flight attendant's continuous workday as recorded by SkyWest, although other specific work requirements occur either before or after the duty day. Flight attendants are not allowed to be out of uniform and are at all times under the direction of the company during their duty day.

50.     If deplaning and other work activities require more than 15 minutes at the end of a workday, the time expenditures fall outside of SkyWest's "duty day" records and are not considered by SkyWest for the purpose of compliance with applicable wage laws. These post-"15 minute release time" compensable work duties occur regularly (if not daily) and should be determinable for every flight attendant based upon records that are in SkyWest's complete control.

51.     After the aircraft blocks in and as the passengers begin to depart the aircraft, flight attendants must monitor deplaning activities from specific duty stations as required by the FAA. Flight attendants are strictly prohibited by the FAA from leaving the aircraft so long as any passengers are still on board.If any passengers require wheelchair assistance (which occurs regularly) or if an unaccompanied minor is onboard, the flight attendants are required to remain on the aircraft with the passengers who need assistance until an airport agent has assisted the passengers off the plane, regardless of the length of time involved. At certain larger airports, post-duty time delays occur daily.

52.     Unlike flight attendants employed by Delta and other airlines, SkyWest flight attendants do not receive additional pay for a duty day that lasts significantly longer than scheduled. For example, if a flight attendant is scheduled for a twelve-hour duty day with six hours of block pay, but weather delays cause the workday to stretch to sixteen hours, the flight attendant receives the same wages as originally scheduled—six hours of block pay—regardless of duty day length. SkyWest flight attendants receive no "holding pay" (*i.e.* additional pay when passengers are on-board but the plane is held at the gate). In contrast, Delta flight attendants are paid at least one block hour for every three and one-half hours they are away from their base (called "trip credit" by Delta but comparable to "TAFB") in addition to their travel expense reimbursement per diem. SkyWest flight attendants receive no such guaranteed TAFB compensation above the untaxed per diem expense reimbursement.

### **Pairing Example**

53.     Returning to the pairing example in Figure 1, notations D, E, F, and G are highlighted to explain the travel details for a single day, October 31, 2012. The first flight of this day originated at ATW (Outagamie County Regional Airport in Wisconsin) at 6:45 a.m. and arrived at MSP (Minneapolis St. Paul) at 7:44 a.m. (Fig. 1: D, line 4). The "block time" (sometimes

16

called "flight time" with minor distinctions) for this trip is 59 minutes (Fig. 1: E). Block time indicates the actual length of time that it took to fly between these two airports on this specific day, from "block out" (closing the main cabin door and moving away from the jet bridge) to "block in" (arriving at the destination jet bridge and opening the main cabin door). Wages are calculated based upon "block time."

54.     Further to the right on line 4, the "turn time" (or time between flights) is indicated in elapsed hours and minutes. As shown in Fig 1: F, line 4, the turn time between the flight on line 4 and the flight on line 5 was one hour and twenty-five minutes. Generally, if the turn time is less than forty-five minutes, flight attendants *cannot* leave the airplane due to responsibilities required by FAA and SkyWest. Regardless of the scheduled length of the turn time in a given duty day, flight attendants are required to remain in the airport and in full uniform. Flight attendants do not receive any "block time" during their turn times; thus, longer turn times reduce the flight attendant's hourly wages whether calculated on a daily or weekly basis.

55.     At each day's final destination, the release time (Fig. 1: B) is automatically calculated by adding exactly fifteen minutes to the time the main cabin door opens. In Figure 1, Ms. Hirst's release time was 20:44/30 (Fig. 1: B), which means the main cabin door opened at 8:29 p.m. on October 30, 2012, and the entire crew was theoretically "released from duty" at 8:44 p.m. Whether or not all passengers have actually deplaned and whether or not all flight attendant

17

duties are complete, the recorded duty day ends. On October 30, 2012, Ms. Hirst's duty day lasted for six hours and twenty-four minutes (Fig. 1: C).

56.     Many Federal Aviation Administration ("FAA") flight safety regulations are tied to the length of the duty day.

57.     The flight crew (including pilots and flight attendants) that work together for each pairing are based at the same airport (in this example, MSP), have the same report times, release times, and duty day hours. If a crew member does not live near his or her own base, that crew member must travel to the base (or "domicile") prior to every pairing. Likewise, each pairing ends at the crew's base airport (see Fig. 1, lines 1 and 14).

58.     As shown in the example in Figure 1, crews frequently land and have "turns" at their base airport (Fig. 1, lines 2, 4, 6, 8, 10). The amount of duty time each flight attendant spends on the ground at their base airport during the "duty day" may be calculated from SkyWest's Sked+ system. In Figure 1, Ms. Hirst was on the ground in Minneapolis for 8 hours and 50 minutes of duty time during this particular 4 day pairing, not including her compensable worktime before and after her "duty days," some of which occurs in her base airport.

59.     SkyWest records the actual turn time between each flight, as shown in Fig. 1: F. A pairing with four legs, as compared to one leg, means that the flight attendant will work a longer duty day but have fewer hours of "block time" compensation. Because a multi-flight day includes more turn time, as well as more associated preliminary and postliminary duties for each flight, the flight attendant's hourly wages are at their lowest on their longest and most difficult days.

60.     Figure 1: G shows the layover or rest time. This number is calculated from the release time of day 1 to the report time of day 2, and so on. In Figure 1, beginning on October 31, 2012, Ms. Hirst's duty time was not accumulating from 2:49 p.m. on October 31, 2012 and ending

at 6:30 a.m. on November 1, 2012, an overnight layover lasting fifteen hours and forty-one minutes.

61.     When on a trip, flight attendants are only permitted to leave the airport and to be out of uniform during overnight layovers, but they receive neither wage compensation nor credit toward duty time. Layover times are strictly regulated by the FAA, including *inter alia* the number of hours required for rest, the use of alcohol during a layover, and the required rest time relative to the length of the flight attendant's duty days both before and after the layover.

62.     Figure 1: H highlights the credit time (hours and minutes each specific flight is estimated to take) for the four flights scheduled for November 1, 2012 (1:29, 1:17, 1:19, and 2:07). When the actual block out to block in takes less time than the estimated credit time, flight attendants receive hourly pay based upon the estimated credit time. For example, comparing Figure 1: H, line 8 block time of 1:23 to line 8 credit time of 1:29. Ms. Hirst received pay for one hour and twenty-nine minutes for this flight.

63.     On a completed schedule, when the credit time appears in red as it does on Figure 1: H, line 9, the credit time has been "overridden" due to the flight requiring more actual block time than estimated. To receive the additional block time, SkyWest requires that all crew members on that flight submit a form for an increase in block time compensation, although SkyWest is aware that the crew flew for a longer time than credited. The forms for the extra compensation are typically completed by flight attendants outside of their "duty time." As illustrated in Fig. 1: H, Andrea Hirst was eligible to be paid hourly for a total of six hours and twelve minutes on November 1, 2012.

64.     The bottom row of Figure 1 ("Trip Summary") shows cumulative pairing information. The first report time and last release time of the entire pairing are shown (here,

14:30/30 and 12:19/02) along with the cumulative block and credit times. Cumulative duty time does not appear on the Trip Summary or on SkyWest payroll records.

## Compensable Work Not Included in Duty Time

65. Although flight attendants' required work activities occur before, during, and after the recorded "duty day," SkyWest does not include the time spent on certain compensable work in its duty day record. Specifically, duty day records do not include the following work activities:

a. time spent reviewing mandatory "Must Know Before You Go" notices prior to check-in;

b. time spent reviewing manual updates and printing/inserting manual updates prior to check-in;

c. time spent deboarding passengers beyond the automatic 15 minute end time (especially when assistance with a wheelchair or an unaccompanied minor are required), gate-checked baggage delays, international customs requirements, and certain mechanical issues that delay the entire crew's actual release time;

d. writing irregular operations reports after a flight or trip; and

e. complying with mandatory random drug screenings before or after flights.

66. The amount of time spent on unrecorded work activities ranges from minutes per working day up to several hours per working day, but virtually every workday for every flight attendant includes compensable work that is not included in the duty day as recorded by SkyWest. For the purposes of this complaint, the terms working hours and working day as inclusive of all

compensable work activities, whether included in the hours recorded by SkyWest as "duty time" or not.

67.     Any unanticipated non-flying delays (e.g., mechanical problems or weather delays) are comparable to "turn times" and never calculated as "block time" for flight attendants. These delays increase the duty day length but always reduce flight attendants' hourly wage rates.

## Calculating Hourly Wage Rates

68.     As shown in in the instructive schedule, Figure 1, Ms. Hirst was eligible to be paid her block-time rate indicated as "credit" (at the time it was $22.49 based upon her seniority[5]) for a total of nineteen hours and ten minutes between October 30, 2012 and November 2, 2012.  For the same period of time, she was actually "on duty" and working for a total of thirty-three hours and forty-four minutes (adding together her four continuous workdays, shown as the daily duty day times of 6:24, 8:34, 11:57, and 6:49); yet this calculation does not include compensable work that occurred before or after her recorded duty day. Thus, SkyWest stretches her hourly wage rate to the length of her workweek without any adjustment to guarantee compliance with FLSA or state wage laws.

69.     TAFB ("Time Away from Base") (here, Minneapolis) indicates that Ms. Hirst was working or on a layover for a total of sixty-nine hours and fifty-nine minutes. For those hours, she received an untaxed travel expense *per diem* of $1.80 per hour. Like a travel per diem in any

---

[5] Block time hourly pay rates are strictly based upon seniority for every SkyWest flight attendant. The applicable rates appear in the InFlight Manual, Exhibit 2, and are updated in the manual as the rates change. From at least 2001 to 2016, the starting block time hourly rate for a newly hired flight attendant was $17.50 per block hour. In 2016, that rate was change to $17.68 per block hour.

occupation, the purpose of the flight attendant's *per diem* is to offset the extra expenses associated with eating out while traveling, transportation while away from home, etc.

70.     Finally, flight attendants are required to regularly complete FAA and airline required training sessions, both in-person and online. SkyWest predetermines (and often underestimates) the time allotted for the training and pays flight attendants one-half of their block time wage rate for the allotted—not actual—training time. Their paychecks, however, improperly record that the training was half of the estimated time. For example, an estimated 8-hour training may actually take 8 hours and 15 minutes, yet the flight attendant's paycheck shows that the training lasted exactly 4 hours.

71.     Although training time is compensated, SkyWest pre-allocates a specific amount of time per training (in person or online), then compensates flight attendants based on the fictitious training time at a rate of one-half of the block wage rate. As a result, flight attendants often actually receive less than minimum wage for time spent in mandatory training. On their wage statements, flight attendants' training time is separately listed; however, the "hours" shown are actually only one-half of the allotted training time rather than the number of hours actually spent in training. A scheduled 8-hour training appears as if the training lasted only 4 hours on every flight attendant's paycheck stub.[6]

---

[6] Payroll records are stored for every flight attendant online, such that unless the flight attendant copied and downloaded each one, once the flight attendant leaves the company he or she has no access to his or her own records. The Plaintiffs in this case requested their own complete payroll and schedule records in writing through counsel on May 26, 2016, on June 7, 2016, and on June 27, 2016 but SkyWest refuses to provide access to any of the Plaintiffs' records sufficient to accurately complete calculations of weekly wage rates for Plaintiffs.

72. SkyWest's practice of showing estimated training time paid at one-half of block wages obfuscates both the number of hours spent in training as well as the hourly wage rate paid for training. This practice specifically violates record-keeping requirements under both the FLSA, 29 U.S.C. § 211(c), and Cal. Labor Code § 226.

73. That the Federal Aviation Administration ("FAA") requires certain flight attendant duties and training is (or should be) *de facto* and/or *prima facie* evidence that these activities are "integral and indispensable" to the flight attendants' work and thus compensable.

74. For a SkyWest flight attendant to accurately calculate her hourly wage rates on a weekly basis, she would have to:

   a. Record the time she spent on pre-check-in work (reading required materials, printing and inserting manual updates) for each day of work as well as tracking her actual check-in times, then adding that time to the cumulative duty time;

   b. Determine cumulative duty time for the week by adding daily duty times from Sked+;

   c. Keep accurate records of the actual "release" times from the last flight of each working day, adding time beyond 15-minutes after door-open to the cumulative duty time;

   d. Keep a record of the time required to complete work that occurs outside of the duty day (including for example, writing irregular operations reports, etc. as discussed

above), adding those hours to the cumulative duty time to determine actual compensable work time;

e. Divide her week's actual compensable work time by block time wages paid for the same seven day period of work.

### SkyWest Airlines Intentionally Obfuscates Wage Compensation

75.     SkyWest does not verify minimum wage compliance for every flight attendant for every week based upon the flight attendant's duty day length. Importantly, their compensation plan does not "automatically" adhere to state or federal minimum wage requirements since a great number of flight attendants' working hours (duty hours plus unrecorded compensable work hours prior to check-in and after the automatic release at the end of the duty day) do not contribute to the wages paid. Virtually every working day for every flight attendant includes a significant amount of easily measurable work time that *decreases* overall compensation rates rather than increasing compensation, whether measured on an hourly, daily, per trip, or weekly basis. [7]

76.     All SkyWest flight attendants are compensated identically by receiving compensation based on block hours, but that is not correlated to duty hours or all working hours.

---

[7] The InFlight Operations Manual defines **Junior Manned** as "An overtime pairing <u>voluntarily</u> accepted by a flight attendant. See also Junior Man (Overtime) Pay." Other than working on certain holidays, the *only* time that SkyWest Flight Attendants are "paid at a rate of 1 ½ times the flight attendant's hourly rate" is when they voluntarily accept an extra shift mid-month at SkyWest's request.  See Plaintiff facts for total times compensated at 1 ½ their hourly rate as compared to number of weeks worked over 40 hours. See Policy Manual, Exhibit 2.

77.     Due to the inescapable unpredictability of daily work schedules and the pointless complexity of SkyWest's wage statements (which include intermingled taxable and non-taxable credits, imputed income, expense reimbursements, uniform allowances, half-time training hours and a multitude of deductions), plus unrecorded time spent on compensable work, flight attendants cannot reasonably calculate their actual hourly rate of pay for any given workweek.

78.     Although duty hours are measured to the minute and maintained as required by the FAA, SkyWest's wage statements never include the duty time worked during a pay period. To calculate duty hours worked in a particular pay period, each flight attendant would be required to review their daily SkedPlus+ duty time records, collect each day's duty hours, and then add an entire pay period's duty hours together. (Fig. 1: C). Furthermore, although each SkedPlus+ pairing (a one to four day trip) includes a trip summary, the total duty time for the pairing is not summarized and must be added per day.

79.     Additionally, flight attendants are misled by SkyWest's trainers and management who explain that they are being paid for all of their "time away from base" (TAFB) as if the *per diem* expense reimbursement is wage pay. Other than this reimbursement for expenses, SkyWest flight attendants do not receive any compensation based upon TAFB.

## PLAINTIFF-SPECIFIC FACTS

### Plaintiff Cheryl Tapp

80.     Plaintiff Cheryl Tapp has worked as a flight attendant for SkyWest for over five years, based in both San Francisco (SFO) and Los Angeles (LAX) during that time. In that time, she has frequently encountered weather or mechanical delays. According to Ms. Tapp, it is not unusual to spend an extra 4-5 hours at the airport waiting for a plane or clearer weather, knowing that as a flight attendant, the only "pay" she is receiving is $1.85 per hour of *per diem*. In

comparison, ramp agents and customer service agents, also employed by SkyWest, are making no less than the California minimum wage rate even though all of these employees are in uniform and required to abide by FAA and SkyWest's rules and regulations.

81.     Seniority status affects how schedules are assigned. As she has become more senior, Ms. Tapp receives more favorable pairings based on her rank in the San Francisco (SFO) SkyWest base. Despite these more favorable pairings, SkyWest's method of calculating compensation does not compensate Ms. Tapp for many of the hours she is required to work each day if calculated on an hourly basis as required under the California Labor Code.

82.     Reviewing the partial records made available to Ms. Tapp by SkyWest, and assuming a "work week" begins at 12:00 a.m. each Monday,[8] since March 2012 Ms. Tapp has worked more than 40 hours per week during no less than 50 different weeks, although only 11 of her paychecks from 2012 to 2016 included any "junior man" pay (the only type of "time and a half" pay given by SkyWest to its flight attendants). Junior Man pay is only given when a flight attendant <u>voluntarily</u> accepts a pairing not originally shown on his or her schedule (as set the month before). For example:

  a.  For the one week period between January 7, 2013 and January 13, 2013, Ms. Tapp worked a total of 62.65 duty hours.  She did not receive Junior Man or time and a half pay for any of these hours, but may have received $3.00 per hour "over 87 block hours in the month." From the limited records provided by SkyWest, her "duty time" wages (based on a bi-monthly period including this week) were $15.47 per hour, which includes the hours with a $3.00 increase. The records available to

---

[8] To-date, SkyWest has refused to tell Plaintiffs the date and time that marks the beginning of a workweek for the purposes of compliance with wage laws.

26

plaintiffs do not include any on Ms. Tapp's pre- or post-duty compensable work hours (during this time, her block time rate of pay was $22.49 per hour). She does not have (and cannot access) records about whether she was required to update her manual, read "Know Before you Go" materials, or write irregular operations reports during this week.

    b.   For the one week period between April 9, 2013 and April 14, 2013, Ms. Tapp worked a total of 51.13 duty hours. She did not receive Junior Man or time and a half pay for any of these hours, but may have received $3.00 per hour "over 87 block hours in the month." From the limited records provided by SkyWest, her hourly "duty time" wages (based on a bi-monthly period including this week) were $13.49/hour including the hours with a $3.00 increase. The records available to plaintiffs do not include any of Ms. Tapp's required pre- or post-duty work hours. During this time, her block time rate of pay was $23.58 per hour.

83.    Although Ms. Tapp was notified that her training pay is half of her regular rate of block pay, her wage statement appears to show that she has only spent half as much time in training. Her actual hours spent on training were at least twice the hours shown on the wage statement so that her regular block pay appears to be the rate of pay. For example, according to the limited records available to Plaintiffs, between January 16, 2013 and January 31, 2013, Ms. Tapp spent at least 10.22 hours in training but her wage statement reflected that she spent 5.11 hours in training during that period.

84.    Based on her wage statements alone, Ms. Tapp cannot accurately determine her working hours during the applicable pay period, her hourly rate(s) of pay for her weekly working hours, or the actual number of hours she spent in training and her corresponding pay rates.

27

<u>Plaintiff Renee Sitavich</u>

85.     Plaintiff Renee Sitavich began working for SkyWest Airlines as a flight attendant on July 18, 2005. She was initially based in Chicago, Illinois (ORD). In September 2012, she transferred to San Francisco, California (SFO), where she stayed until she resigned in January 2014. Ms. Sitavich recalls that during initial training at SkyWest, the trainers falsely represented *per diem* pay as wage pay for their duty day and TAFB, probably to satisfy the question of why flight attendants are unpaid for much of their workday.

86.     One example of Ms. Sitavich's schedule[9] is shown below as Figure 3. On September 9, 2013, her duty day was eleven hours and one minute long but she was paid for only seven block hours of that time. On September 10, 2013, she worked for two hours and thirty-two minutes but was paid for only one hour and five minutes of block time. As shown in this pairing, only one turn ("OTH" = South West Oregon) was outside of the State of California. SkyWest's practice of automatically ending the duty day exactly fifteen minutes after the last block in time, whether or not Ms. Sitavich's working day was finished, can be calculated by comparing line 5 (22:55) to the release time on September 9 (23:10), and comparing line 7 (13:43) to the release time on September 10 (13:58).

### **Figure 3**

Total Block: 7:14     Total Credit: 8:05     TAFB: 25:49

AWD Q2129A
Monday 09-09-2013   Report: 12:09
1. 5394  EM2  N562SW  SFO  OTH  12:49  14:30  Block: 1:41  Credit: 1:49
2. 5394  EM2  N562SW  OTH  SFO  15:06  16:46  Block: 1:40  Credit: 1:57
3. 5444  EM2  N560SW  SFO  RDD  18:42  19:43  Block: 1:01  Credit: 1:05
4. 5444  EM2  N560SW  RDD  SFO  20:12  21:17  Block: 1:05  Credit: 1:14

---

[9] She discovered this pairing saved on her computer. SkyWest has repeated refused to provide specific pairings to the Plaintiffs in this matter.

5. 5333  EM2  N560SW  SFO  CIC  22:05  22:55  Block: 0:50  Credit: 0:55
      Day Block: 6:17  Day Credit: 7:00  Duty: 11:01
Release: 23:10/09  Hotel: Holiday Inn (530)345-2491  Layover: 12:16

Tuesday 09-10-2013  Report: 11:26
6. LCO    CIC  CIC  11:26  11:26  Block: 0:00  Credit: 0:00
7. 5307  EM2  N223SW  CIC  SFO  12:46  13:43  Block: 0:57  Credit: 1:05
      Day Block: 0:57  Day Credit: 1:05  Duty: 2:32
Release: 13:58/10

87.    Reviewing the partial records made available to Ms. Sitavich by SkyWest, and assuming a "work week" begins at 12:00 a.m. each Monday, from March 2012 to the date she left SkyWest, Ms. Sitavich worked more than 40 hours per week no less than 20 different weeks, although only one of her paychecks from 2012 to 2014 included and "junior man" pay.

88.    For example: for the one week period between April 8, 2013 and April 14, 2013, Ms. Sitavich worked a total of 54.32 duty hours.  She did not receive Junior Man or time and a half pay for any of these hours, nor did she receive any $3.00 per hour increase "over 87 block hours in the month." From the limited records provided by SkyWest, her hourly duty time only wages (based on a bi-monthly period including this week) were $20.45/hour. The records available to plaintiffs do not include any of her pre- or post-duty work hours, which may be discernable through discovery. She does not have records that show whether she was required to update her manual, complete "Know Before You Go" readings, work past the 15-minute allotment for deplaning, or write irregular operations reports during this week. Based on her seniority, her block time rate of pay was $28.59 per hour.

89.    Not including any unrecorded working hours of each week, Ms. Sitavich worked over 40 duty hours per week in the following weeks, as well as others. She received no time and a half pay, nor did she receive any $3.00 increase for any of these work weeks:

        a.   January 14, 2013 (43.75 hours)

    b.   January 21, 2013 (42.42 hours)

    c.   March 11, 2013 (43.68 hours)

    d.   April 22, 2013 (42 hours)

    e.   April 29, 2013 (45.55 hours)

90.    Although Ms. Sitavich's wage statements show that she spent 8.72 hours in training between March 16, 2013 and March 31, 2013, this amount only shows half of her training hours, which SkyWest estimated would take 17.44 hours to complete. According to the limited records available, she was paid $249.30 for the 17.44 hours ($14.29 per hour) although her rate of pay appears on her paycheck to be $28.59 per hour. SkyWest paid her for training time based on its own estimate rather than actual time spent.

91.    On one of Ms. Sitavich's pairings, during a turn in Newark when an electrical storm forced the jet bridge to be closed, Ms. Sitavich and the entire crew spent about an hour (after the fifteen minute release time) waiting to be able to deplane a para-Olympian who required wheelchair assistance. Neither she nor the other crew members were able to leave the plane yet their working time was uncompensated and was not included in their duty day calculations. Additional discovery may reveal the date of this incident and exactly what time the plane was secured so Ms. Sitavich and the rest of the crew could leave for the night.

92.    In 2013 when Ms. Sitavich was scheduled for recurrent training, the actual training session was scheduled for eight hours and forty-five minutes, but the total compensation she received was for four hours of block time. The training credit is based on time expected for the training day, not on actual time spent. Her wage statement shows only four hours of training at her full block time rate of pay.

93.     On a regular basis, Ms. Sitavich was required to spend her "non-duty time" preparing irregular operations reports, reading "Know Before You Go" materials, and almost every workday, she checked-in at the airport after clearly security early due to the unpredictability of the time necessary to travel to the airport and clear security. None of this time is included in duty time or wage calculations, and should be considered "working off the clock."

94.     Renee Sitavich quit her job as a Flight Attendant for SkyWest Airlines primarily because of the airline's scheduling and failure to pay its flight attendants fairly for all hours of work.

<u>Plaintiff Sarah Hudson</u>

95.     Plaintiff Sarah Hudson began working for SkyWest Airlines on March 14, 2013 and resigned from her position in February 2015. She was based at Fresno Yosemite International Airport (FAT) for all of her tenure working for SkyWest.

96.     While she was a SkyWest flight attendant, she lived with her parents. At the time, she knew that although she and her co-workers were working very long hours, many of them qualified for food stamps. Without family help, she could not have paid her own bills.

97.     On October 4, 2013, Ms. Hudson's duty day was four hours and thirty-seven minutes long (not including any pre- and post-duty compensable work), but she was only paid based on two block hours of that time. On October 5, 2013, her duty day was eight hours and thirty-one minutes long but she was paid for only three hours and thirty-four minutes of that time.[10]

---

[10] These times were derived from a schedule that Ms. Hudson had inadvertently saved on her telephone; however, the extremely limited records provided by SkyWest do not appear to reflect identical times. Without formal discovery, Plaintiffs cannot determine why a discrepancy exists between the two sets of information.

During this two day schedule, she neither left the State of California nor received California's minimum wage for every hour that she worked.

98.     Ms. Hudson was at times paid less than the statutory state and federal minimum wage rates based on her actual working hours including duty time plus the working time required before check-in and after release time, and underreported training time. Although SkyWest provided partial records to Plaintiffs, Ms. Hudson's hourly rate of pay for a given workweek cannot be accurately determined, nor are the records necessary to determine this information accessible to her from any source.

99.     Between March 2013 and February 2015, Ms. Hudson worked over 40 hours per week during at least 7 different weeks, but only one of her paychecks reflects that she ever received time and a half pay for being junior manned. She received 5 hours and 6 minutes of time and one half pay between May 16, 2013 and May 30, 2013; however, she did not work over 40 hours that particular week according to the limited records available to plaintiffs.

100.     Ms. Hudson worked over 40 duty hours in each of the following weeks (and possibly others), all without time and a half pay for any of her *recorded* work hours:

      a.  May 27, 2013 (45.47 hours)

      b.  June 24, 2013 (51.97 hours)

      c.  July 1, 2013 (58.22 hours)

      d.  December 30, 2013 (47.90 hours)

      e.  January 20, 2014 (50.60 hours)

      f.  January 27, 2014 (41.95 hours).

      g.  February 4, 2014 (44.27 hours)

101.    Although the records available to Plaintiffs are extremely limited, according to the partial records, during the 15 day period between January 31, 2014 and February 15, 2014 (when Ms. Hudson worked at least one week over 40 hours) she was paid $514.89 for a total of 65.73 duty hours. Her hourly rate of wage pay for "duty time" this bi-monthly check was $7.83 per hour, which does not include any time for mandatory pre-check-in or post-release work. Lacking access to her actual Sked+ records and other discovery, it is impossible to: 1) accurately calculate her weekly pay rate, 2) determine the number of hours she worked while on the ground in the State of California, 3) determine the number of compensable hours that were omitted from her "duty time" used to estimate her hourly wages, including but not limited to writing irregular operations reports, reading "Know Before you Go" materials, updating her manual as required before check-in, and deplaning that took more than 15 minutes at the end of a duty day. She received no overtime pay during this period.

102.    Ms. Hudson's initial rate of block pay was $17.50 per block hour in March 2013. During training, she received one-half of her block pay or less since training time is estimated by SkyWest rather than actual time spent. On her March 22, 2013 wage statement, SkyWest reported that she had participated in 4.26 hours of training, for which she was paid $74.55; however, her actual training took over 8.5 hours of work time.

103.    Ms. Hudson quit working for SkyWest after she was injured on the job and was not cleared by her doctor to return. In addition, she was frustrated that she did not receive minimum wage compensation for all of the hours that she worked.

<u>Plaintiff Brandon Colson</u>

104.     Plaintiff Brandon Colson began working for SkyWest Airlines on August 8, 2012 and resigned from his position on August 8, 2014. He was based at Phoenix Sky Harbor International Airport (PHX) for all of his tenure working for SkyWest.

105.     While he was a SkyWest on a regular basis, flights in and out of Phoenix were diverted or delayed due to excessively high temperatures. At least once during the summer of 2013, the flight he was working was diverted to Tucson, Arizona, pulled up to a jet bridge, and the main cabin door was opened (thus ending block pay). The flight attendants were required to address passenger needs, provide beverages on the exceptionally hot airplane, and wait for over two hours until they were able to resume their flight to Phoenix. Although the crew spent extra hours working directly with passengers, they were only compensated for a very short period of extra flight time, but not for their extended duty day or pre- and post-duty day work. He does not have a record of how long his irregular operations report for this trip took to write.

106.     Between August 2012 and August 2014, Mr. Colson worked over 40 hours per week during 10 different weeks, but only one of his paychecks reflects that he received time and a half pay for being junior manned. He received 1 hour and 6 minutes of time and one half pay ($33.87 total) between November 1, 2013 and November 15, 2013. It is unlikely but not certain whether he worked over 40 hours that week according to the limited records available to plaintiffs.

107.     Mr. Colson worked over 40 "duty hours" in each of the following weeks, as well as other weeks, without receiving time and a half pay for any hours; however, without his full Sked+ records, it is impossible to determine the number of these hours he was working on the ground in his home state of Arizona, whether he was required to write irregular operations reports, and the sum of his unrecorded but compensable work during these weeks:

a.     May 13, 2013 (49.38 hours)

34

b.     July 23, 2013 (43.88 hours)

c.     November 11, 2013 (47.87 hours)

d.     December 30, 2013 (44.28 hours)

e.     February 10, 2014 (48.82 hours)

108.   On a regular basis, Mr. Colson was required to spend his non-working time preparing irregular operations reports (IOR). He estimates that such reports had to be completed as often as once every week or two. This compensable worktime is not included in his recorded "duty days."

109.   While he was working for SkyWest, Mr. Colson was required to complete work (like waiting to deplane passengers, cleaning the aircraft, performing security requirements) after the automatically calculated fifteen minute post-block-in release time frequently, which illegally reduced FAA mandated rest times or reduced his time off from work. None of this time ever appears on the scheduling records of SkyWest for Mr. Colson or any other flight attendant. SkyWest is clearly aware that flight attendants including Mr. Colson are required to work off the clock (without duty time being recorded) since the flight crew is required to secure the airplane at the end of the day.

110.   Mr. Colson quit working for SkyWest due to the company's failure to properly and fairly pay him for his working hours.

<u>Plaintiff Brüno Lozano</u>

111.   Plaintiff Brüno Lozano is a resident of Ypsilanti Township, Michigan. He was formerly employed by SkyWest Airlines as a flight attendant. He was hired by SkyWest on May 22, 2007 and resigned from his position in March 1, 2014.

112.    While he was with SkyWest, he was based at several different SkyWest locations. Between November 2011 and March 1, 2014, he was based in: Los Angeles (LAX), San Francisco (SFO), and Seattle (SEA). During his last year with SkyWest, he was based at Seattle-Tacoma International Airport (SEA). The exact dates that he was domiciled in each location are within the control of SkyWest, who has refused to provide that information to Plaintiffs.

113.    While working as a flight attendant for SkyWest, Mr. Lozano's wages statements did not show his total working hours or duty hours due to check-in times being recorded as "scheduled time" rather than actual check-in time, the release times being automatically stopped 15 minutes after the airplane door is opened, and due to work duties required pre- and post-duty hours, including such work as preparing irregular operations reports, reading "Know Before You Go" materials, and updating his manual before checking in.

114.    Between March 2012 and March 2014, Mr. Lozano worked more than 40 "duty hours" during at least 19 different weeks, not including compensable worktime not included in duty time. During those weeks, he never received time and one half pay for any of his working hours. Those weeks include, but are not limited to:

      a.  January 14, 2013 (48.63 hours)

      b.  January 28, 2013 (44.53 hours)

      c.  March 20, 2013 (49.57 hours)

      d.  April 1, 2013 (52.33 hours)

      e.  June 10, 2013 (51.82 hours)

115.    Without Mr. Lozano's full Sked+ records, it is impossible to determine the number of these hours he was working on the ground in the state or states where he was based.

116.     Mr. Lozano recalls that during initial training at SkyWest, the trainers represented to his training class that *per diem* was wage pay as well as an expense reimbursement for the flight attendants' uncompensated portions of their duty day and TAFB.

117.     While he was a flight attendant with SkyWest, Mr. Lozano worked extremely long duty days, worked before and after his actual duty day was recorded, and frequently attended trainings which deceptively appeared on his paycheck as half or less of the actual time required by the airline. Many working hours of each work day were wholly uncompensated. He left SkyWest, in part, because the airline did not compensate him for many of his working hours.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

118.     Plaintiffs bring this action as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), also commonly referred to as an "opt-in" class, on behalf of themselves and the following nationwide collective, as well as a nationwide class action seeking injunctive and declaratory relief pursuant to the Declaratory Relief Act, 28 U.S.C. § 2201:

**Nationwide Class**

*All current and former SkyWest flight attendants who, during the applicable statute of limitations period(s), were not fully compensated for all working hours (averaged weekly) as required under the Fair Labor Standards Act.*

119.     California Plaintiffs Tapp, Sitavich, Hudson, and Lozano bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a group of persons defined as:

**California Class**

*All current and former SkyWest flight attendants based in California during the applicable statute of limitations period(s), who were only compensated for block time, instead of being compensated for all working hours.*

These California Class claims are brought under the State of California Wage Order No. 9; Cal. Labor Code §§ 1182.12, 1194, and 1197; Cal. Labor Code §§ 21-204; Cal. Labor Code § 226 and Cal. Labor Code § 511 (alternative workweek). In addition, the Plaintiffs bring this case pursuant to California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200, *et seq.*

120. Plaintiffs Sitavich, Hudson, and Lozano bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a group of persons defined as:

**California Former Flight Attendants Subclass**

*All former SkyWest flight attendants based in California during the applicable statute of limitations period(s), who resigned or were terminated without being fully paid for all working hours.*

These California Former Flight Attendant Subclass claims are brought under Cal. Labor Code §§ 201-204.

121. Plaintiffs Tapp, Sitavich, and Lozano bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 for claims under the San Francisco Minimum Wage Ordinance, San Francisco Admin. Code § 12R, on behalf of themselves and a group of persons defined as:

**San Francisco Subclass**

*All current and former SkyWest flight attendants based in San Francisco during the applicable statute of limitations period, who were only paid block pay, instead of being compensated for all working hours.*

38

122.     Plaintiff Tapp brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 for claims under the Los Angeles Living Wage Ordinance, Los Angeles Admin. Code § 10.37 *et seq.*, on behalf of herself and a group of persons defined as:

**Los Angeles Subclass**

*All current and former SkyWest flight attendants based in Los Angeles during the applicable statute of limitations period, who were only paid block, instead of being compensated for all working hours.*

123.     Arizona Plaintiff Colson brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and a group of persons defined as:

**Arizona Class**

*All current and former SkyWest flight attendants based in Arizona during the applicable statute of limitations period(s), who were only paid based on block time, instead of being compensated for all working hours.*

These Arizona Class claims are brought under the Arizona Wage Act, A.R.S. § 23-350, *et seq.*, Arizona Minimum Wage Act, A.R.S. § 23-363, *et seq.*

124.     Washington Plaintiff Lozano brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a group of persons defined as:

**Washington Class**

*All current and former SkyWest flight attendants based in Washington during the applicable statute of limitations period(s), who were only paid block pay, instead of being compensated for all working hours.*

These Washington Class claims are brought under the Washington Wage Act, R.C.W. § 49.46, *et seq.*

125. Excluded from the Class(es) are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, Defendants' employees other than SkyWest flight attendants, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of these persons; the Judge assigned to this action, any member of the Judge's immediate family; and counsel for the Plaintiffs. Additionally, union-represented flight attendants who are employed by ExpressJet Airlines (also owned by SkyWest, Inc.) are excluded from the Class(es).

126. Certification of the Class(es) is appropriate pursuant to Fed. R. Civ. P. 23, in that: (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to each Class member; (c) the claims or defenses of each Class member is typical of the claims or defenses of all Class members; (d) the representative party will fairly and adequately protect the interests of the Class(es).

127. **Numerosity**. Plaintiffs are informed and believe, and on that basis allege, that the proposed Class(es) contains thousands of similarly situated persons who are either currently or formerly employed by SkyWest as flight attendants. The precise number of Class Members is currently unknown to Plaintiffs. The true number of Class Members is known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice. The members of the Class(es) are so numerous that joinder of all members would be impracticable.

128. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class(es) and predominate over any

40

questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a.      Whether SkyWest failed to pay wage compensation for all compensable working hours of the Class(es);

b.      Whether SkyWest improperly calculated the hourly pay of flight attendants by paying wage compensation only for block time (block out to block in) although the flight attendants were required to perform work which was integral and indispensable to their primary duties both before and after the block times on every day that they worked;

c.      Whether SkyWest must pay flight attendant wages for all duty hours, training time, and other uncompensated and unrecorded working hours at no less than applicable federal and state minimum wage rates either averaged weekly (federal) or for each and every hour of duty time (in certain states) in addition to their block time wages;

d.      Whether SkyWest failed to timely pay former flight attendants unpaid and back duty day wages in violation of state wage laws;

e.      Whether SkyWest failed to provide its flight attendants with wage statements that accurately show all working hours, rate of compensation per working hour, and all other information as required by state and federal wage laws;

f.      Whether SkyWest engaged in the unlawful employment practices alleged herein;

g.      Whether SkyWest is liable to Plaintiffs and members of the Class(es) for damages for conduct actionable under U.S. federal, state and local laws;

h.      Whether SkyWest's wage policies and practices are in violation of California, Arizona, and/or Washington's state wage and unfair competition laws;

41

           i.        Whether SkyWest's wage policies and practices are in violation of San Francisco and Los Angeles local wage ordinances; and

           j.        Whether Plaintiffs and members of the Class(es) have sustained damages as a result of SkyWest's conduct, and, if so, the appropriate measure of damages.

129.   **Typicality**. Plaintiffs' claims are typical of the claims of the Class Members in that Plaintiffs and each member of the Class(es) have been injured by the same wrongful conduct of SkyWest. Plaintiffs' claims arise from the same practices and course of conduct that gave rise to the Class Members' claims and are based on the same legal theories. Plaintiffs, like all Class Members, have not been fully compensated by SkyWest pursuant to state and federal labor laws, and thus Plaintiffs, like all Class Members, have been damaged by SkyWest's unlawful conduct. All SkyWest flight attendants, including Plaintiffs and Class Members, are compensated under an identical compensation scheme.

130.   **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class(es). Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no interests adverse or antagonistic to those of the Class(es).

131.   **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members of the Class(es) is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the members of the Class(es), on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if members of the Class(es) could afford such individualized litigation, the court system could not. Individualized claims brought by

members of the Class(es) would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

### COUNT I
### FAIR LABOR STANDARDS ACT
**Minimum Wages Required Under 29 U.S.C. § 206**
**(Plaintiff Hudson on behalf of all current and former SkyWest Flight Attendants)**

132.    Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

133.    SkyWest is in the business of providing regional commercial air service and employs flight attendants such as Plaintiffs and members of the Class to provide passengers with safe and comfortable travel accommodations according the requirements of the FAA and SkyWest.

134.    At all relevant times, as a provider of "transportation . . . among the several States or between any State and any place outside thereof," SkyWest has been engaged in "commerce" as defined by FLSA, 29 U.S.C. § 203(b).

135.    At all relevant times, SkyWest constituted an "employer" engaged in commerce as defined by Section 3(d) of the FLSA, 29 U.S.C. §§ 203(d).

136.    At all relevant times, Plaintiffs and the Class were considered "employees" under Section 3(e) of the FLSA, 29 U.S.C. § 203(e), as well as "employees engaged in commerce" under Section 6(a) of the FLSA, 29 U.S.C. § 206(a).

137.    Section 6 of the FLSA, 29 U.S.C. § 206, provides for a statutory minimum hourly wage for all employees "employed in an enterprise engaged in commerce."

138.    Although Section 13(b)(3) of the FSLA, 29 U.S.C. § 213(b)(3), specifically exempts employees of "carriers by air" from the "maximum hour" provisions of Section 7 of the FLSA, 29 U.S.C. § 207, Section 13(a) of the FSLA, 29 U.S.C. § 213(a), does not provide a similar exemption for carriers of air from the comparable "minimum wage" provisions of Section 6 of the FLSA, 29 U.S.C. § 206, and does not provide an exemption from the accurate wage records provision of the FLSA, 29 U.S.C. § 211(c).

139.    SkyWest violated Section 6 of the FLSA, 29 U.S.C. § 206, by failing to calculate weekly wages based upon all compensable time worked by Plaintiffs and the Class to include certain clearly defined and traceable portions just before and just after their duty day, as well as requiring Plaintiffs to work off the clock preparing irregular operations reports, work required after the 15 minute automatic release time, including but not limited to assisting passengers before the crew can secure the airplane, as well as other integral and indispensable to their principal activities as flight attendants, and which are required and controlled by both the Federal Aviation Administration ("FAA") and SkyWest.

140.    The clearly defined and traceable portions of the flight attendants' work which is not included in the duty day and which are uncompensated occur in virtually every workday of every SkyWest flight attendant and often include several hours of unpaid time per workweek. At no time is this mandatory work *de minimus*.

141.    SkyWest's electronically stored information includes actual report times, and SkedPlus+ records and payroll records provide some of the necessary information required to calculate some of the flight attendants' uncompensated worktime. Electronically stored records including but not limited to mandatory "Know Before You Go" updates, online training records,

and irregular operations reports are maintained and provide data for work performed but that is not included in SkyWest's duty day calculations.

142. In addition, SkyWest's policy of requiring work prior to check-in, of automatically ending the duty day exactly 15 minutes after the airplane blocks in a manner that artificially ends flight attendants' duty day before their working hours are complete, and requiring reports to be written after release time are in violation of the FLSA, 29 U.S.C. § 211(c) requirement to keep and maintain accurate records for the calculation of wages to assure compliance with FLSA.

143. The flight attendants' required preliminary and postliminary activities as described fully herein are integral and indispensable to their principal activities, required by both the FAA and SkyWest Airlines, and therefore not exempt from minimum hourly wage requirements pursuant to the Portal-to-Portal Act, 29 U.S.C. § 254(a)(2). The continuous workday rule mandates that all duty day and required pre- and post-duty work activities are compensable under the FLSA, or are fact inquiries appropriate for a jury's determination.

144. Unlike other airlines, SkyWest's wage compensation plan does not sufficiently adapt to longer continuous workdays, weather delays, diversions, and other unexpected delays such that the average hourly wage rate(s) for every flight attendants' workweek are no less than the applicable minimum wage. Therefore, the flight attendants are at risk of and do actually receive less than the Federal minimum wage on certain workdays.

145. SkyWest's practice of estimating mandatory training times, compensating based upon its estimated times rather than on actual training time, and recording only half of the estimated training time on wage statements as if training is paid at full block pay is deceptive and violates the FLSA.

146.    At all relevant times, SkyWest was aware that Plaintiffs and members of the Class were owed compensation for each working hour of their workday pursuant to the FLSA, not limited to the automated "duty times" as calculated by SkyWest.

147.    SkyWest's violations of 29 U.S.C. § 206 were repeated, willful and intentional.

148.    As a result of Defendants' willful and wrongful conduct, Plaintiffs and the Class have been deprived of wages and have suffered damages.

149.    Plaintiffs, on behalf of themselves and all SkyWest flight attendants who opt to join in this collective action, demand judgment against SkyWest for wages for each hour that they work which occurred before and after the duty days as well as duty time which is undercompensated, for the three years preceding the filing of this complaint, plus an equal amount as liquidated damages, as well as reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, and such other and further relief as may be just and proper.

**COUNT II**
**INJUNCTIVE AND DECLARATORY RELIEF**
**28 U.S.C. § 2201 *et seq*.**
**(Cheryl Tapp on behalf of all current SkyWest Flight Attendants nationwide)**

150.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

151.    There is an actual controversy between SkyWest and Plaintiffs concerning the company's failure to pay wage compensation for all compensable working hours, and failure to provide clear and accurate wage statements to Plaintiffs and Class Members.

152.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

153. Accordingly, Plaintiffs and Class members seek a declaration that SkyWest must clearly inform all current flight attendants that *per diem* is intended as a reimbursement of expenses and is not wage income.

154. Plaintiffs seek an injunction against SkyWest from continuing to refer to *per diem* to flight attendants as "Per Diem Pay" or "Per Diem Wages" in training, on payroll stubs, or when asked about wage compensation, whether in writing or verbally.

155. Additionally, Plaintiffs and Class members seek a declaration that SkyWest must provide to flight attendants full explanations of their wage statements including an explanation of all compensable work time and duty hours, provided to Class members in ordinary language, prominently displayed in employee manuals and on the employee website. The explanation sought would clarify to flight attendants total working hours, duty hours, and block hours per pay period, hourly wages paid by pay type, and all other information necessary for flight attendants to easily and accurately determine when they are being paid less than minimum wages pursuant to applicable state and federal wage laws.

156. Plaintiffs and Class members seek a declaration that SkyWest must provide to all current flight attendants an easily accessible and plain language explanation of paycheck abbreviations including but not limited to a clear designation of which items on the paycheck are wages, which items are reimbursements, and which are imputed income for IRS purposes (but not wages for the purposes of adhering to weekly minimum wage requirements).

157. Plaintiffs and Class members seek an order stating that SkyWest notify all current and former flight attendants that the airline will provide, upon request, any flight attendant with all SkedPlus+ records and payroll stubs for three years preceding the flight attendant's request,

which include the flight attendant's hourly wages averaged over the workweek based upon duty time as well as pre- and post-duty work requirements to the degree that the time can be ascertained.

158.    Plaintiffs and Class members seek a declaration that SkyWest must provide notice to all current flight attendants (and all flight attendants who have been employed by SkyWest Airlines in the past three years) through a 216(b) Opt-In Notice that this matter is currently pending before the Court; that this Court will decide the manner in which each and every working hour must be compensated; and that each flight attendant who has worked for SkyWest in the past three years has the right to opt-in to the pending collective action in this Court.

159.    Plaintiffs and Class members seek a declaration that current wage payment scheme of SkyWest Airlines does not automatically assure such compliance with state and federal wage laws and that SkyWest has taken no corrective action to assure compliance in the future.

160.    Plaintiffs and Class members have suffered actual damages and lost wages. SkyWest should be required to take corrective action to prevent further lost wages, including:  (a) providing its flight attendants with a compensation plan which guarantees hourly pay for each and every duty hour and working hour; (b) providing flight attendants with an accurate method for calculating release time based upon when working requirements are completed; (c) providing its flight attendants with a compensation plan which pays actual wages for time away from base (TAFB) in addition to *per diem* expense reimbursement; and (d) providing its flight attendants with a clear and unambiguous explanation of its wage statements and payroll practices.

### COUNT III
**FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF CALIFORNIA LAW**
**Cal. Wage Order No. 9; Cal. Labor Code §§ 1182.12, 1194, and 1194.2**
**(on Behalf of Plaintiffs Tapp, Sitavich, Hudson, Lozano and the California Class)**

161.    Plaintiffs Tapp, Sitavich, Hudson, Lozano and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

48

162.     At all times relevant to this action, Plaintiffs and California Class Members were employed by SkyWest within the meaning of the California Labor Code.

163.     From January 1, 2008 until June 30, 2014, the minimum wage in California was $8.00 an hour. Since July 1, 2014, the minimum wage in California has been $9.00 an hour.

164.     California Class Members employed by SkyWest were not exempt from the minimum wage requirements of California law, and are entitled to the protections of California Labor Code sections 1182.12, 1194, and 1194.2, and California Wage Order 9-2001.

165.     California law requires employers to pay at least the minimum wage for all hours worked. California law does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift. SkyWest's compensation scheme violates California's minimum wage requirements because they fail to pay Plaintiffs and California Class Members for all hours worked, including pay for all duty hours, full training pay, and preliminary and postliminary duties required by the airline and the FAA.

166.     Under SkyWest's block pay compensation policy, Plaintiffs and California Class Members are paid for hours worked between block-out and block-in, but not for any of the time worked prior to the main cabin door closing or after arrival at the destination airport. SkyWest has no pay policy that accounts for all duty hours worked, and fails to ensure that all required working hours are paid.

167.     SkyWest flight attendants who are based in California, reside in California, and whose work begins and ends in California each and every week, but who travel temporarily outside of the state during the course of their normal work duties are wage earners protected by the California Labor Code.

168.     Further, SkyWest flight attendants who are based in California spend certain hours of every pairing, every work week doing compensable work performed on the ground in the State of California, which are not compensated hourly at no less than California's minimum wage rate as required under the California Labor Code.

169.     SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and Class members, in conscious disregard of Plaintiffs' and California Class Members' rights to be paid for their labor.

170.     During the applicable statute of limitations, SkyWest has failed to pay Plaintiffs and California Class Members no less than the applicable minimum wage for all hours worked, in violation of Cal. Labor Code § 1182.12 and relevant wage orders, including Wage Order #9.

171.     Pursuant to Cal. Labor Code § 1194, Plaintiffs and California Class Members are entitled to recover their unpaid wages in an amount to be established at trial, plus prejudgment interest, costs and reasonable attorneys' fees. Further, Plaintiffs and California Class Members are entitled to recover liquidated damages pursuant to Cal. Labor Code § 1194.2.

**COUNT IV**
**WAITING TIME PENALTIES**
**Cal. Labor Code §§ 201, 202, 203 and 204**
**(on behalf of Plaintiffs Sitavich, Hudson, Lozano**
**and the California Former Flight Attendant Sub-Class)**

172.     Plaintiffs Sitavich, Hudson, Lozano and California Former Flight Attendant Sub-Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

173.     California Labor Code §§ 201 and 202 require that SkyWest pay employees who quit or were discharged all wages due within specified times. Labor Code § 204 requires employers to pay full wages when due. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages

until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

174.     California Plaintiffs and Class Members are entitled to unpaid minimum wages, but to date have not received all such compensation. SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and California Class Members, in conscious disregard of Plaintiffs' and Class Members' rights.

175.     As a consequence of SkyWest's willful conduct in not paying proper compensation for all hours worked, Plaintiffs and Class Members who have left SkyWest's employ are entitled to up to thirty days' wages under Labor Code § 203, together with interest thereon, as well as attorneys' fees and costs.

**COUNT V**
**FAILURE TO PROVIDE ITEMIZED WAGE STATEMENTS**
**Cal. Labor Code § 226**
**(on behalf of Plaintiffs Tapp, Sitavich, Hudson, Lozano and the California Class)**

176.     California Plaintiffs Tapp, Sitavich, Hudson, Lozano and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

177.     Pursuant to California Labor Code § 226, employers including SkyWest must provide their California based employees an accurate, written, itemized wage statement with each paycheck. The wage statement must show all applicable pay rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee.

178.     By failing to itemize the number of compensable work hours California Plaintiffs and other Class Members work, the hourly wage rate(s) at which they were paid, an accurately itemized number of training hours and the correct rate of pay for training, and an accurate record of all working hours, SkyWest knowingly and intentionally failed to provide Plaintiffs and Class

51

Members with the required accurate, written, itemized wage statements as required by the California Labor Code.

179.    Pursuant to California Labor Code § 226, Plaintiffs and Class Members have suffered injury as a result of SkyWest's failure to provide accurate, written, itemized wage statements.

180.    SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring California Plaintiffs and Class Members, in conscious disregard of Plaintiffs' and Class Members' rights.

181.    California Plaintiffs and Class Members are entitled to all actual and statutory damages and penalties available for these violations under Labor Code § 226(e).

**COUNT VI**
**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200 et seq.**
**(On Behalf of Plaintiffs Tapp, Sitavich, Hudson, Lozano and the California Class)**

182.    Plaintiffs Tapp, Sitavich, Hudson, Lozano and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

183.    The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., which prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or practices.

184.    The acts and practices of SkyWest described herein constitute unfair and unlawful business practices as defined by the UCL. SkyWest has engaged in unlawful activities including but not limited to: (a) failing to compensate Class Members at a wage rate at least equal to the applicable minimum wage for each hour worked; (b) failing to provide accurate, written, itemized wage statements; and (c) failing to pay all wages when due.

185.    SkyWest's activities also constitute unfair competition in violation of the UCL because SkyWest's practices violate, inter alia, California Labor Code §§ 201; 202; 204; 226; 510; 1182.12; and 1194, as well as the San Francisco Minimum Wage Ordinance and the Los Angeles Living Wage Ordinance. Each of these violations constitutes an independent and separate violation of the UCL.

186.    SkyWest's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition. SkyWest's practices described above are immoral, unethical, oppressive, unscrupulous, and injurious. SkyWest was unjustly enriched and achieved an unfair competitive advantage over legitimate business competitors at the expense of its employees and the public at large.

187.    The harm to Plaintiffs and the California Class members in being denied their lawfully earned wages outweighs the utility, if any, of SkyWest's policies or practices and therefore, SkyWest's actions as described herein constitute an unfair business practice or act within the meaning of the UCL.

188.    SkyWest's conduct as herein alleged has injured Plaintiffs and California Class members by wrongfully denying them all of their earned wages, and therefore was substantially injurious to Plaintiffs and Class Members. Plaintiffs and Class Members have standing to bring this claim for injunctive relief, restitution, disgorgement, and other appropriate equitable relief pursuant to Bus. & Prof. Code § 17204.

189.    Pursuant to Business and Professions Code § 17200 et seq., Plaintiffs and Class Members are entitled to restitution of the minimum wages and other unpaid wages alleged herein that were withheld and retained by SkyWest within the four years prior to this action's filing date,

a permanent injunction requiring SkyWest to pay required wages, an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and other applicable law, and costs.

**COUNT VII**
**FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF SAN FRANCISCO MINIMUM WAGE ORDINANCE**
**San Francisco Admin. Code § 12R**
**(On Behalf of Plaintiffs Tapp, Sitavich, Lozano and the San Francisco Subclass)**

190.     Plaintiffs Cheryl Tapp, Renee Sitavich and Brüno Lozano ("SFO Plaintiffs") and San Francisco Subclass Members allege and incorporate by reference the allegations in the preceding paragraphs.

191.     At all times relevant to this action, SFO Plaintiffs and San Francisco Subclass Members were employed by SkyWest within the meaning of San Francisco's Minimum Wage Ordinance, were covered by the provisions of San Francisco's Minimum Wage Ordinance, and were not exempt from the minimum wage requirements of that ordinance.

192.     The San Francisco minimum wage was $9.79 per hour in 2010, $9.92 per hour in 2011, $10.24 per hour in 2012, $10.55 per hour in 2013, and $10.74 per hour in 2014. Since January 1, 2015, San Francisco's minimum wage has been $11.05 per hour.

193.     San Francisco International Airport is part of the City and County of San Francisco, and is covered by San Francisco's Minimum Wage Ordinance.

194.     The San Francisco Minimum Wage Ordinance requires employers to pay at least the minimum wage for all hours worked. It does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift. SkyWest's compensation scheme violates San Francisco's minimum wage requirements because they fail to pay SFO Plaintiffs and San Francisco Subclass Members for all hours worked, fail to pay for all training time, and fail to accurately record the work hours of all flight attendants.

195.    For example, under SkyWest's block pay compensation plan, SFO Plaintiffs and San Francisco Subclass Members are paid for hours worked between block-out and block-in, but not for any of the time worked prior to departure or after arrival. SkyWest pays wages for less than all duty hours or working hours, and fails to ensure that all hours worked are paid. SkyWest does not compensate for all hours of integral and indispensable work performed by its flight attendants in violation of San Francisco's Minimum Wage Ordinance.

196.    SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and San Francisco Subclass Members, in conscious disregard of Plaintiffs' and Class Members' rights to be compensated for their labor.

197.    During the applicable statute of limitations, SkyWest has failed to pay SFO Plaintiffs and San Francisco Subclass Members the applicable minimum wage for all hours worked, in violation of San Francisco Admin. Code § 12R.

198.    Pursuant to San Francisco Admin. Code § 12R.7(c), SFO Plaintiffs and San Francisco Subclass Members are entitled to recover their unpaid wages in an amount to be established at trial, plus prejudgment interest, and costs and attorneys' fees. Further, Plaintiffs and San Francisco Subclass Members are entitled to recover liquidated damages in the amount of $50 per violation per day.

## COUNT VIII
## FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF
## LOS ANGELES' LIVING WAGE ORDINANCE
### Los Angeles Admin. Code § 10.37 *et seq.*
### (on behalf of Plaintiff Tapp and the Los Angeles Subclass)

199.    Plaintiff Cheryl Tapp and Los Angeles Subclass Members allege and incorporate by reference the allegations in the preceding paragraphs.

200. At all times relevant to this action, Plaintiffs and Los Angeles Subclass Members were employed by SkyWest within the meaning of Los Angeles' Living Wage Ordinance, were covered by the provisions of Los Angeles' Living Wage Ordinance, and were not exempt from the minimum wage requirements of that ordinance.

201. The Los Angeles minimum cash wage for airport employees with health benefits was $10.30 per hour beginning July 1, 2010, $10.42 per hour beginning July 1, 2011, $10.70 per hour beginning July 1, 2012, $10.91 per hour beginning July 1, 2013, and $11.03 per hour beginning July 1, 2014. Since July 1, 2015, Los Angeles's minimum wage has been $11.17 per hour.

202. Los Angeles International Airport is part of the City and County of Los Angeles, and is covered by Los Angeles's Living Wage Ordinance.

203. The Los Angeles Living Wage Ordinance requires employers to pay at least the living wage for all hours worked. It does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift. SkyWest's compensation scheme violates Los Angeles's living wage requirements because they fail to pay Plaintiff Tapp and Los Angeles Subclass Members for all duty hours and all working hours, fail to pay for all training time, and fail to accurately record the work hours of all flight attendants.

204. For example, under SkyWest's block pay compensation plan, Plaintiff Tapp and Los Angeles Subclass Members are paid for hours worked between block-out and block-in, but not for any of the rest of flight attendants' duty hours or their required working hours prior to check-in or after release. SkyWest does not compensate for all hours of integral and indispensable work performed by its flight attendants in violation of Los Angeles's Living Wage Ordinance.

205.    SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and Los Angeles Subclass Members, in conscious disregard of Plaintiffs' and Class Members' rights to be compensated for their labor.

206.    During the applicable statute of limitations, SkyWest has failed to pay Plaintiff Tapp and Los Angeles Subclass Members the applicable minimum wage for all hours worked, in violation of the city's Living Wage Ordinance, Los Angeles Admin. Code § 10.37 et seq.

207.    Pursuant to Los Angeles Admin. Code § 10.37 et seq., Plaintiff Tapp and Los Angeles Subclass Members are entitled to recover their unpaid wages plus triple damages for SkyWest's willful failure to pay wages as required, plus applicable fines, and costs and attorneys' fees.

### COUNT IX
### ARIZONA WAGE ACT
### A.R.S. § 23-350, *et seq.*
### (Plaintiff Colson on behalf of the Arizona Class)

208.    Plaintiff Colson repeats and realleges the allegations set forth above as if fully contained herein.

209.    SkyWest employs flight attendants who are based at Phoenix Sky Harbor International Airport (PHX), who fly into and out of Arizona on a regular basis, and/or who reside in Arizona.

210.    SkyWest employs flight attendants who are based in Arizona, including Plaintiff Colson and members of the Arizona Class, to provide passengers with safe and comfortable travel accommodations according the requirements of the FAA and SkyWest.

211.    At all relevant times, SkyWest was an "employer" as defined by A.R.S. § 23-350(3).

212. At all relevant times, Plaintiff Colson and the Class were "employees" as defined by A.R.S. 23-350(3), and whose work was "performed wholly or partly within this state."

213. The Arizona Wage Act, A.R.S. § 23-355(A), provides that if an employer "fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."

214. SkyWest violated the Arizona Wage Act, A.R.S. § 23-350, et seq. by failing to pay any wages at all to Arizona Plaintiff Colson and the Arizona Class during certain clearly defined and traceable portions of their work day, including but not limited to failing to accurately keep records and pay wages at all to Plaintiff Colson and the Arizona Class for required working hours that occurred prior to check-in and after their automatic, but not actual, release time.

215. SkyWest's SkedPlus+ records and payroll records provide most of the necessary information required to calculate the uncompensated workday hours, and other documents in the possession of SkyWest will affirm pre- and post-duty day working hours performed by flight attendants.

216. SkyWest's violations of the Arizona Wage Act were repeated, willful, intentional, and with reckless disregard for the laws of the State of Arizona.

217. As a result of SkyWest's wrongful conduct, Plaintiff Colson and the Class have been deprived of wages, and have suffered damages.

218. Arizona Plaintiff Brandon Colson, on behalf of himself and all Arizona Class members, demands judgment against SkyWest for an amount of damages equal to treble unpaid wages, and such other and further relief as may be just and proper, pursuant to A.R.S. § 23-355.

## COUNT X
## ARIZONA MINIMUM WAGE ACT
### A.R.S. § 23-363, *et seq.*
### (Plaintiff Colson on behalf of the Arizona Class)

219.     Plaintiff Colson repeats and realleges the allegations set forth above as if fully contained herein.

220.     At all relevant times, SkyWest was an "employer" as defined by A.R.S. § 23-362(B).

221.     At all relevant times, Plaintiff Colson and the Class were "employees" as defined by A.R.S. 23-362(A)."

222.     The Arizona Minimum Wage Act, A.R.S. § 23-363, provides that "[e]mployers shall pay employees no less than the minimum wage."

223.     Any employer who fails to pay the wages required under the Arizona Minimum Wage Act "shall be required to pay the employee the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages" pursuant to A.R.S. § 23-364.

224.     SkyWest violated the Arizona Minimum Wage Law A.R.S. § 23-363, et seq. by failing to pay minimum wages for all hours worked to Plaintiff Colson and the Arizona Class during certain clearly defined and traceable portions of their working day, including but not limited to performing preliminary and postliminary activities not recorded as duty time, and that are integral and indispensable to their principal activities as flight attendants and are required by both the FAA and SkyWest (irregular operations reports, assisting handicapped passengers, and so on). These portions of the work day occur almost every workday and are not de minimus.

225.    Additionally, SkyWest violated the Arizona Wage Law, A.R.S. § 23-363, et seq., by failing to accurately keep times for training, for failing to pay minimum wages for each hour of training.

226.    SkyWest violated the Arizona Wage Law, A.R.S. § 23-364(f) for failing to keep accurate records and failing to pay hourly wages at all to Plaintiff Colson and the Arizona Class for required working hours that occurred prior to check-in and after their automatic, but not actual, release time.

227.    SkyWest's violations of the Arizona Minimum Wage Law were repeated, willful, intentional, and with reckless disregard for the laws of the State of Arizona.

228.    As a result of SkyWest's wrongful conduct, Plaintiff Colson and the Arizona Class have been deprived of wages, and have suffered damages.

229.    SkyWest's failure to pay minimum wages has been a continuing course of conduct, and as such, all prior violations of the Arizona Minimum Wage Act should be considered violations regardless of their date.

230.    Arizona Plaintiff Brandon Colson, on behalf of himself and all Arizona Class members, demands judgment against SkyWest for an amount of damages equal to treble unpaid wages, per- and post-judgment interest, civil penalties, reasonable attorneys' fees and costs, and such other and further relief as may be just and proper, pursuant to A.R.S. § 23-364.

**COUNT XI**
**WASHINGTON MINIMUM WAGE ACT**
**R.W.C. Title 49, Ch. 49.46, *et seq.***
**(Plaintiff Lozano on behalf of the Washington Class)**

231.    Plaintiff Lozano repeats and realleges the allegations set forth above as if fully contained herein.

232.    At all relevant times, SkyWest was an "employer" as defined by R.C.W. § 49.46.010(4).

233.    At all relevant times, Plaintiff Lozano and the Class were "employees" as defined by R.C.W. § 49.46.010(3).

234.    The Washington Minimum Wage Act, R.C.W. § 49.46.020, provides that "every employer shall pay to each of his or her employees . . . at a rate of not less than the amount established" as the state's minimum wage.

235.    Any employer who fails to pay the wages required under the Washington Minimum Wage Act "shall be liable to such employee affected for the full amount of such wage rate, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court" pursuant to R.C.W. § 49.46.09(1).

236.    R.C.W. § 49.46.09(1) further provides that "[a]ny agreement between such employee and the employer to work for less than such wage rate shall be no defense to such action."

237.    SkyWest violated the Washington Minimum Wage Law R.C.W. § 49.46, et seq. by failing to pay minimum wages for all hours worked to Plaintiff Lozano and the Washington Class during certain clearly defined and traceable portions of the work day, including but not limited to while the flight attendants were performing preliminary and postliminary activities that are integral and indispensable to their principal activities and are required by both the FAA and SkyWest (irregular operations reports, assisting handicapped passengers, and so on).. These portions of the working day occur almost every workday and are not de minimus.

238.    Additionally, SkyWest violated the Washington Wage Law, R.C.W. § 49.46, et seq., by failing to accurately keep times for training, for failing to pay minimum wages for each hour of training.

239.    SkyWest violated the Washington Wage Law, R.C.W. § 49.46.070 for failing to keep accurate records and failing to pay hourly wages at all to Plaintiff Lozano and the Washington Class for required working hours that occurred prior to check-in and after their automatic, but not actual, release time.

240.    SkyWest's violations of the Washington Minimum Wage Law were repeated, willful, intentional, and with reckless disregard for the laws of the State of Washington.

241.    As a result of SkyWest's wrongful conduct, Plaintiff Lozano and the Washington Class have been deprived of wages, and have suffered damages.

242.    SkyWest's failure to pay minimum wages has been a continuing course of conduct, and as such, all prior violations of the Washington Minimum Wage Act should be considered violations regardless of their date.

243.    Washington Plaintiff Brüno Lozano, on behalf of himself and all Washington Class members, demands judgment against SkyWest for unpaid wages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and such other and further relief as may be just and proper, pursuant to R.C.W. § 49.46, *et seq.*

## COUNT XII
## WASHINGTON MINIMUM WAGE ACT, OVERTIME WAGES
### R.W.C. § 49.46.130
### (Plaintiff Lozano on behalf of the Washington Class)

244.    Plaintiff Lozano repeats and realleges the allegations set forth above as if fully contained herein.

245.    The Washington Minimum Wage Act, R.C.W. § 49.46.130, provides that "no employer shall employ any of his or her employees for a work week longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he or she is employed."  An exception is found in R.W.C. § 49.46.130(2)(i), stating that when hours in excess of 40 in a week are worked voluntarily as a result of a shift trade, the overtime provision does not apply.

246.    Any employer who fails to pay wages as required under the Washington Minimum Wage Act, including the overtime wages in question, "shall be liable to such employee affected for the full amount of such wage rate, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court" pursuant to R.C.W. § 49.46.09(1).

247.    R.C.W. § 49.46.09(1) further provides that "[a]ny agreement between such employee and the employer to work for less than such wage rate shall be no defense to such action."

248.    SkyWest violated the overtime provision of the Washington Minimum Wage Law R.C.W. § 49.46.130 by failing to pay Plaintiff Lozano and the Washington Class time-and-a-half wages for hours per week over forty hours, including but not limited to all duty hours, all actual training hours, and all pre- and post-duty time working hours, except where the excess hours were worked voluntarily and after a shift trade.

249.    SkyWest's violations of the overtime provision of the Washington Minimum Wage Law were repeated, willful, intentional, and with reckless disregard for the laws of the State of Washington.

250.     As a result of SkyWest's wrongful conduct, Plaintiff Lozano and the Washington Class have been deprived of wages, and have suffered damages.

251.     SkyWest's failure to pay overtime wages has been a continuing course of conduct, and as such, all prior violations of the Washington Minimum Wage Act should be considered violations regardless of their date.

252.     Washington Plaintiff Brüno Lozano, on behalf of himself and all Washington Class members, demands judgment against SkyWest for unpaid overtime wages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and such other and further relief as may be just and proper, pursuant to R.C.W. § 49.46, *et seq.*

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief against SkyWest as follows:

A.     An order enjoining SkyWest from retaliatory actions against the Plaintiffs, against Class members who opt-in to the Fair Labor Standards Act collective action, or who are members of the nationwide and statewide Classes;

B.     An order declaring that the action is a proper collective action pursuant to 29 U.S.C. § 216(b) as to the FLSA claims alleged herein; certifying an opt-in class; and directing SkyWest to provide a list of all persons it employs or has employed as flight attendants in the last four years prior to the filing of the complaint, including the last known address, email, and telephone numbers of current and former flight attendants;

C.     An order certifying a National Class of current employees under Fed. R. Civ. P. 23 for injunctive and declaratory relief claims as alleged herein;

D. An order certifying the California Class under Fed. R. Civ. P. 23 as to the California Labor Code sections referenced herein, the California Wage Orders referenced herein and the California Unfair Competition;

E. An order certifying the San Francisco Sub-Class under Fed. R. Civ. P. 23 as to the San Francisco Minimum Wage Law sections referenced herein;

F. An order certifying the Los Angeles Sub-Class under Fed. R. Civ. P. 23 as to the Los Angeles Living Wage Ordinance sections referenced herein;

G. An order certifying the Arizona Class under Fed. R. Civ. P. 23 as to the Arizona statutory sections referenced herein;

H. An order certifying the Washington Class under Fed. R. Civ. P. 23 as to the Washington statutory sections referenced herein;

I. An order certifying Plaintiffs as class representatives; and appointing Plaintiffs' counsel, Greg Coleman Law PC, as counsel for the national and state classes pled herein;

J. An order determining that the conduct alleged herein is unlawful under the FLSA and the applicable state laws as alleged herein;

K. An order granting the declaratory and injunctive relief requested by the Plaintiffs and Classes;

L. An award of monetary damages, liquidated damages, penalties, restitution, including pre-judgment and post-judgment interest to Plaintiffs and the Class in such amount as may be determined at trial;

M. An order enjoining SkyWest from continuing the unlawful practices alleged herein;

N.      An award to Plaintiffs and the Class for reasonable attorneys' fees and costs, including but not limited to reimbursement of all costs related to the prosecution of this action; and

O.      An award to Plaintiffs and the Class of any such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury.


DATED: December 20, 2016.

Respectfully submitted,

**GREG COLEMAN LAW, P.C.**

By: */s/ Lisa A. White*            
Lisa A. White

Gregory F. Coleman
Lisa A. White (*pro hac vice*)
**GREG COLEMAN LAW, PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN  37929
Telephone:  (865) 247-0080
Facsimile:   (865) 522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Edward A. Wallace
Amy E. Keller
Tyler J. Story
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone:  (312) 346-2222
Facsimile:   (312) 346-0022
eaw@wexlerwallace.com
aek@wexlerwallace.com
tjs@wexlerwallace.com

Eric H. Gibbs (*pro hac vice*)
Dylan Hughes (*pro hac vice*)
Steve Lopez (*pro hac vice*)
**GIBBS LAW GROUP**
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile:  (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
sal@classlawgroup.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2016, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/Lisa A. White*
Lisa A. White
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

***Attorneys for Plaintiffs and the Class***