**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREA HIRST, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 15 C 02036 |
| | ) | |
| SKYWEST, INC., et al. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| CHERYL TAPP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 15 C 11117 |
| | ) | |
| SKYWEST, INC., et al. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The plaintiffs in these two lawsuits filed their initial complaints in 2015.[1] The plaintiffs all

work or worked for Defendant SkyWest Airlines as flight attendants. In both cases, the plaintiffs

challenge SkyWest Airline's "block-time" compensation structure for flight attendants. They

contend that SkyWest's compensation scheme denied them minimum and overtime wages. After

this Court dismissed the plaintiffs' claims under the Fair Labor Standards Act, the plaintiffs rely

on state law. SkyWest argues that the wage and hour laws of the states in which the plaintiffs were

based do not support the plaintiffs' claims. Because the Court agrees that the plaintiffs in *Hirst* do

not plausibly state a claim for relief under Illinois law, SkyWest's motion to dismiss in *Hirst* is

---

[1] The *Tapp* case was originally filed in the Northern District of California on November 9,
2015, and was transferred to this district on December 10, 2015. No. 15 C 11117, ECF No. 23.

granted. In *Tapp*, the Court grants in part and denies in part SkyWest's motion to dismiss because some of the relevant states' law support some of the plaintiffs' claims and not others.

## BACKGROUND

Andrew Hirst, Molly Stover, and Emily Stroble Sze, the plaintiffs in *Hirst*, all worked as flight attendants out of O'Hare International Airport and were Illinois-based. The plaintiffs in *Tapp* worked for SkyWest in Arizona, Washington, and California: Cheryl Tapp was based in San Francisco, California at the San Francisco International Airport ("SFO") and Los Angeles, California at Los Angeles International Airport ("LAX"); Renee Sitavich was based at O'Hare and SFO; Sarah Hudson was based at Fresno Yosemite International Airport in California; Brandon Colson was based at Phoenix Sky Harbor International Airport in Arizona; and Brüno Lozano was based in Milwaukee, Wisconsin, O'Hare, LAX, and SFO and Seattle, Washington at Seattle-Tacoma International Airport ("SEA").

Initially, both complaints challenged SkyWest's block-time compensation structure under the Fair Labor Standards Act ("FLSA") and applicable states' laws. SkyWest pays its flight attendants based on the block time they worked—the time spent on the airplane with the cabin door closed—rather than for the total hours worked. In *Hirst*, this Court initially dismissed the FLSA claims without prejudice and the claims under the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 *et seq.*, with prejudice. *Hirst v. SkyWest,* 2016 WL 2986978 (N.D. Ill. May 24, 2016). This Court granted the plaintiffs' motion for reconsideration in part, converting the dismissal of the IMWL claims to a dismissal without prejudice. The Court granted leave to amend in both cases, SkyWest moved to dismiss the new complaints, and this Court dismissed all of the claims in both lawsuits. *Hirst v. SkyWest, Inc.,* 283 F. Supp. 3d 684 (N.D. Ill. 2017).

2

The plaintiffs appealed to the Seventh Circuit. ECF No. 107.[2] The Seventh Circuit affirmed the dismissal of the plaintiffs' FLSA claims but reinstated the plaintiffs' state law claims. *Hirst v. SkyWest, Inc.*, 910 F.3d 961 (7th Cir. 2018). The parties filed petitions for writs of certiorari to the Supreme Court of the United States, and this Court stayed the proceedings until the Supreme Court denied the petitions, which it did on June 24, 2019. *SkyWest, Inc. v. Hirst,* 139 S. Ct. 2745 (2019); *Hirst v. SkyWest, Inc.*, 139 S. Ct. 2759 (2019). This Court then directed the parties to complete supplemental briefing on the defendants' motion to dismiss the state law claims. The parties re-briefed the motion to dismiss those claims; the plaintiffs also filed motions to amend both complaints.[3] The Court considers the plaintiffs' motions to amend in conjunction with SkyWest's motions to dismiss.[4]

---

[2] This Statement cites to the *Hirst* docket unless otherwise specified.

[3] In the meantime, a third law suit alleging violations of California state law arising from SkyWest's compensation structure was filed in a California state court and was removed by SkyWest to the United States District Court for the Northern District of California. *Wilson v. SkyWest Airlines,, Inc.,* 19 CV 01491-VC (N.D. Cal.). SkyWest sought, unsuccessfully, to have the three cases consolidated as a multidistrict litigation proceeding in this district and the *Hirst* and *Tapp* plaintiffs sought, unsuccessfully, to have their cases transferred to the Northern District of California. *Hirst v. SkyWest, Inc.,* 405 F. Supp. 3d 771 (N.D. Ill. 2019).

[4] Before this Court dismissed the FLSA claims, the plaintiffs in both cases asserted subject-matter jurisdiction based on federal question jurisdiction and supplemental jurisdiction. Notwithstanding the dismissal of the federal FLSA claims, the Court retains supplemental jurisdiction over the plaintiffs' claims. In the proposed amended complaints, however, the plaintiffs assert only diversity jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). The proposed amended complaint, however, alleges the named plaintiffs' residences, not their citizenships. Allegations of residence do not establish diversity jurisdiction; the plaintiffs must allege domicile. *RTP LLC v. ORIX Real Est. Cap., Inc.*, 827 F.3d 689, 692 (7th Cir. 2016). Plaintiffs also allege that "some members of the class are citizens of different states." *Hirst* Proposed Amend. Compl. ¶ 12, ECF No. 137-1. That, too, is insufficient. Citizenship must be alleged specifically and affirmatively, and the plaintiffs cannot allege minimal diversity under CAFA by asserting generically that the plaintiff is of diverse citizenship with **someone** in the putative class. *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) ("That the hurdle of minimal diversity for the CAFA is lower than the complete diversity required in most cases does not provide a basis to alter [the rule that parties' citizenships must be alleged]."). The Court can, however, continue to exercise supplemental jurisdiction after dismissal of the FLSA claims. 28

## DISCUSSION

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough factual content to 'state a claim to relief that is plausible on its face.'" *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1128 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim to relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, the Court views the complaint in the light most favorable to the plaintiffs and draws all reasonable inferences in their favor. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).[5]

## I. *Hirst* Plaintiffs' Illinois Claims

The Illinois-based plaintiffs in *Hirst* allege that SkyWest failed to pay them the state's minimum wage and failed to pay them overtime according to Illinois law. SkyWest contends that the plaintiffs fell far short of plausibly alleging either claim. This Court agrees.

SkyWest contends that the plaintiffs do not allege that SkyWest violated their rights to a minimum wage under Illinois law. This Court previously held that minimum wage claims under

---

U.S.C. § 1367(c). The Court "should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quotations marks omitted). This Court (and the Seventh Circuit) have already expended significant judicial resources in both of these matters. The federal forum can also provide an efficient resolution of these similar claims across the two cases and the laws of four states. The Court recognizes that some of the law, particularly in California, may be unsettled. Even so, the Court concludes that the principles of judicial economy and fairness to the parties who have litigated in this forum weigh heavily in favor of retaining jurisdiction. Accordingly, the Court concludes that it is appropriate to exercise supplemental jurisdiction over this matter.

[5] In their supplemental response to the motion to dismiss, the plaintiffs object to SkyWest's reliance on evidence outside of the complaint. They ask the Court to strike portions of SkyWest's motion to dismiss and memorandum of law but do not clearly indicate which portions should be stricken. The Court does not consider extrinsic evidence and, as a result, declines to strike portions of the motion to dismiss and memorandum.

4

the Illinois Minimum Wage Law ("IMWL") are (like wage claims based on the FLSA) measured on a workweek basis rather than on an hourly basis. *Hirst v. SkyWest, Inc.*, No. 15 C 02036, 2016 WL 2986978, at *6 (N.D. Ill. May 24, 2016). For this claim to survive the motion to dismiss, the Illinois plaintiffs must have alleged facts indicating that SkyWest paid them less than the minimum wage on average in any workweek.

As SkyWest notes, however, the *Hirst* plaintiffs fail to cite a week in which SkyWest paid a single plaintiff less than the minimum wage in Illinois. The plaintiffs point to a 15-day period over three workweeks in which SkyWest paid Plaintiff Stover less than the minimum wage in Illinois, but they do not allege a single workweek when a named plaintiff received an average of less than minimum wage. Plaintiffs, therefore, failed to plausibly allege that SkyWest paid them less than the minimum wage in Illinois in violation of the IMWL. The plaintiffs also fail to allege any specific workweek in their proposed amended complaint, and the amendment is therefore futile as to this claim.

To state an IMWL overtime claim, the plaintiffs need to allege that they worked more than 40 hours a week *in Illinois* and were not compensated at a time-and-a-half rate. *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, No. 1:20-CV-00314, 2021 WL 1212796, at *4 (N.D. Ill. Mar. 31, 2021) ("[B]ecause this claim is based on Illinois state law, the overtime claims must be based on work performed in Illinois."); *Hirst*, 2016 WL 2986978, at *8; *Wooley v. Bridgeview Bank Mortg. Co.*, LLC, No. 14 C 5757, 2015 WL 327357, at *2-3 (N.D. Ill. Jan. 23, 2015); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85, 835 N.E.2d 801, 852 (2005) ("[W]e note the long-standing rule of construction in Illinois which holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'") (quoting *Dur-Ite Co. v. Indus. Comm'n*, 394 Ill. 338, 350, 68 N.E.2d 717, 722 (1946)).

The plaintiffs never allege a workweek in which a named plaintiff worked more than 40 hours in Illinois and were not compensated at a time-and-a-half rate; their proposed amendments do not correct this deficiency.

In sum, the plaintiffs fail to plausibly allege any facts to state a claim for relief under Illinois law. Their proposed amendments do not correct the deficiencies in the operative complaint.

## II.    *Tapp* **Plaintiffs' Arizona Claims**

Plaintiff Brandon Colson fails to state overtime and minimum wage claims under Arizona law. The Court addresses each claim in turn.

"Arizona does not have an overtime law; consequently, the only overtime protections for Arizonan employees come from the FLSA." *Reyes v. LaFarga*, No. CV-11-1998-PHX-SMM, 2013 WL 12098794, at *1 (D. Ariz. Nov. 20, 2013). While Arizona law does not independently provide for overtime pay, it does require that employers timely pay wages. *Vega v. All My Sons Bus. Dev. LLC*, No. CV-20-00284-TUC-RCC, 2022 WL 1166406, at *1 n.1 (D. Ariz. Apr. 20, 2022) (citing A.R.S. § 23-351; *Wood v. TriVita*, No. CV-08-0765-PHX-SRB, 2008 WL 6566637, at *3 (D. Ariz. Sept. 18, 2008)). Mr. Colson relies on the Arizona Wage Act, A.R.S. § 23-350, *et seq.*, as his legal theory for his overtime claim. That theory, however, presupposes that Mr. Colson can allege that SkyWest **actually owes** him overtime under FLSA. The plaintiffs cannot allege that SkyWest owed Mr. Colson overtime wages under FLSA because FLSA exempts airlines from paying overtime wages. 29 U.S.C. §§ 207(a)(1) and 213(b)(3).

Even if Mr. Colson could allege SkyWest failed to pay him overtime, his claim is barred by the statute of limitations.[6] The Arizona Wage Act has a one-year statute of limitations. A.R.S.

---

[6] Although SkyWest did not argue for dismissal based on the statute of limitations in its initial motion, the Seventh Circuit has held "that a statute-of-limitations defense is not waived if

§ 12-541(5); *Eichenberger v. Falcon Air Express Inc.*, No. CV–14–00168–PHX–DGC, 2014 WL 3819355, at *6 (D. Ariz. Aug. 4, 2014); *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 183 P.3d 544, 550 (Ariz. Ct. App. 2008). The plaintiffs do not respond to SkyWest's argument that this claim is time barred. Mr. Colson alleges that his last day working for SkyWest was August 8, 2014; the *Tapp* plaintiffs filed their complaint in the Northern District of California more than a year later, on November 9, 2015. Mr. Colson's claim for overtime is therefore time barred by the one-year statute of limitations. His minimum wage claim, however, is timely; as to that claim, the two-year statute of limitations for minimum wage claims under the Arizona Minimum Wage Act applies. A.R.S. § 23-364(H).

Minimum wage claims under Arizona law are also measured on a workweek basis rather than an hourly basis. Ariz. Admin. Code § R20-5-1206(C) (2017); *Alonzo v. Akal Sec., Inc.*, No. CV-17-00836-PHX-JJT, 2017 WL 5158576, at *3 (D. Ariz. Nov. 7, 2017). To survive the motion to dismiss, Mr. Colson must plausibly allege that SkyWest failed to pay him minimum wage in at least one workweek. He does not. Mr. Colson does not allege a single week in which his average pay was less than the minimum wage in Arizona. Thus, Mr. Colson has not stated a claim that SkyWest failed to pay him the minimum wage in Arizona.

None of the plaintiffs' proposed amendments address either problem. Of course, the plaintiffs' proposed amendments can do nothing about the statute of limitations bar. The plaintiffs do not provide any proposed amendments that allege that SkyWest paid Mr. Colson less than Arizona's minimum wage in any particular workweek. As a result, Mr. Colson fails to plausibly

---

raised for the first time in a successive motion to dismiss." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

allege that he was paid less than the state minimum wage in violation of Arizona law. The motion to dismiss, therefore, must be granted as to the Arizona claims.

## III.   *Tapp* Plaintiffs' Washington Claims

In its motion to dismiss, SkyWest contends that Plaintiff Brüno Lozano cannot rely on Washington law to support his minimum wage and overtime claims. It also argues that the overtime claims should be dismissed because Mr. Lozano did not allege that he worked over 40 hours per week in the state of Washington and based on the state law exemption for hours worked as a result of a shift trade.

SkyWest argues that Mr. Lozano cannot rely on the Washington Minimum Wage Act because the complaint alleges that Mr. Lozano is a Michigan resident. The Supreme Court of Washington has held that the Washington Minimum Wage Act "regulates only employers who are doing business in Washington and who have hired Washington-based employees." *Bostain v. Food Express, Inc.*, 153 P.3d 846, 855 (Wash. 2007).

In *Bostain,* the Supreme Court of Washington held that whether an employee is a "Washington-based employee will depend on factors that courts routinely use for deciding choice of law issues." *Id.* at 852 n.5. Courts ask whether Washington law applies to the employment contract under Washington's choice of law principles. "To settle choice of law questions, Washington uses the most significant relationship test." *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 331 P.3d 29, 36 (Wash. 2014). In *Bostain*, where: the employer had a physical base of operations in Washington and owned property in the state; and the employee worked out of his employer's terminal in Washington over the entire course of his employment, received orders at the terminal, and began and ended every route at the terminal, the Court had no difficulty concluding that the plaintiff "was a Washington employee." *Bostain*, 153 P.3d at 852;

*compare Sanders v. W. Express, Inc.*, No. 1:20-CV-03137-SAB, 2022 WL 1800778, at *7-8 (E.D. Wash. June 1, 2022) (concluding that plaintiff trucker was not a Washington employee where employer was incorporated and headquartered in Tennessee and plaintiff's only connection to the state was residency, the occasional receipt of work assignments while in the state, and periodic submission of payroll information while in the state).

The Washington Department of Labor and Industries has also issued an administrative policy to provide guidance on determining whether an employee is Washington-based. Wash. Dep't of Lab. & Indus., Minimum Wage Act–Washington-Based Employee, Admin. Policy ES.A.13 (May 22, 2019), https://www.lni.wa.gov/workers-rights/_docs/esa13.pdf. The Department frames the analysis as a two-step process, first asking if a conflict exists between the Washington Minimum Wage Act and another state's law and then asking which state has the most significant relationship. *Id.* at 2. The Department lists the following factors to consider when determining the most significant relationship:

> (1) Where was the employment agreement made? (2) Does the employee live in Washington? (3) Does the employer have its base of operations in Washington? (4) Does the employee have his or her base of operations in Washington? (5) Does the employer maintain a work site in Washington? (6) If the employee leaves Washington as part of the employee's work, where does the trip begin and end? (7) Does the employee receive work assignments from a location in Washington? (8) Is the employee's work supervised by individuals operating from the employer's location in Washington? (9) How much of the work is performed in Washington? [and] (10) How long is the contract to do work in Washington?

*Sanders*, 2022 WL 1800778, at *9 (quoting *id.* at 2). The administrative policy is not binding, but under Washington law, "courts give some deference to the agency's interpretation, if the law being interpreted is within the agency's expertise." *Budget Rent A Car Corp. v. Wash. Dep't of Licensing*, 31 P.3d 1174, 1180 (Wash. 2001); *Sanders*, 2022 WL 1800778, at *9 ("The DOL guidance is not binding, but it is entitled to substantial deference."). This Court agrees that this guidance deserves deference and that the factors are in line with the most significant relationship inquiry.

9

In the instant case, the complaint alleges that Mr. Lozano was a Washington-based employee, and the allegation is consistent with Washington law. Under the ten-factor test, Mr. Lozano was a Washington employee for the period that he worked out of SEA. It is unclear where the employment contract was made, but SkyWest does not argue that it was made in Michigan or any state other than Washington. The plaintiffs report that they inadvertently omitted Mr. Lozano's residency while working for SkyWest from the operative complaint—and it is reasonable to assume that he resided in Washington while he worked out of SEA. In their proposed amended complaint, the plaintiffs allege that Mr. Lozano resided in Washington during his tenure as a flight attendant for SkyWest. *Tapp* Proposed Amend. Compl. ¶ 26, No. 15 C 11117, ECF No. 125-1. While SkyWest is not a Washington company, it has a base of operations in Washington. Mr. Lozano alleges that he worked for SkyWest out of SEA for approximately one year. During that period, Mr. Lozano started and ended each trip at SEA, and the plaintiffs allege that flight crews often return to their base during their trips. FAC ¶ 22 n.3, No. 15 C 11117, ECF No. 73. It is not clear where he received work assignments, but it is reasonable to infer from the complaint that Mr. Lozano received them in Washington. He does not allege whether he was supervised by individuals operating from the location at SEA, but again this could be inferred from his work placement. He alleges that a substantial portion of the work took place in Washington. He did not allege that his employment contract had a limited tenure but that he quit his job with SkyWest after about a year of working out of SEA. Thus, the plaintiffs have plausibly alleged that Mr. Lozano was a Washington-based employee protected by the Washington Minimum Wage Act.

SkyWest also contends that Mr. Lozano's overtime claim fails because he did not allege any week when he worked over 40 hours in Washington. Unlike Illinois law, however, which claims no extraterritorial reach, Washington's overtime law does not except overtime hours

worked outside Washington State from "employment within the state of Washington." *Miller v. Farmer Bros. Co.*, 150 P.3d 598, 606 (Wash. Ct. App. 2007) (quotation marks omitted). For his overtime claim to survive this motion to dismiss, Mr. Lozano needs to allege that he worked in excess of 40 hours in a given week as a Washington-based employee, and he did so.

Finally, SkyWest argues that Mr. Lozano's claims fail because "Plaintiffs do not plead that Lozano in particular worked in excess of 40 hours while based at SeaTac [SEA] where such hours were not the result of a shift trade." Defs.' Supp. Mem. in Supp. of Mot. to Dismiss 10, ECF No. 135. The Washington Minimum Wage Act exempts overtime hours that were voluntarily worked as a part of a shift trading practice. Wash. Rev. Code § 49.46.130(i). Demanding that plaintiffs anticipate this affirmative defense with specific facts asks too much at the motion to dismiss stage. Further, SkyWest recognizes that the plaintiffs acknowledge the exception and allege that they were denied overtime wages for hours over 40 hours per week "except where the excess hours were worked voluntarily after a shift trade." *Id.* (quoting *Tapp* FAC ¶ 248). Although that allegation seems general, it is a factual allegation regarding when SkyWest failed to pay overtime. At the motion to dismiss stage the Court must accept that fact as true, and the plaintiffs' allegations suffice. In short, SkyWest's motion is denied as to Mr. Lozano.

## IV. *Tapp* Plaintiffs' California Claims

Before addressing the claims of the California-based plaintiffs, it is helpful to recall the distinction between claims and counts. "[A] claim is 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Florek v. Vill. of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011) (quoting *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943)). A count is the articulation of a legal theory that may provide support for the plaintiffs' claim. Multiple legal theories may support a single claim, but "[o]ne claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012). Rule 12(b)(6)

gives district courts the authority to dismiss only claims for relief, not legal theories offered in support of claims. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims[.]") (emphasis in original). In short, the Court may not dismiss challenged legal theories, only challenged claims. *Id.*; *Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016) ("[T]he challenged *theory* can't be dismissed, either, because dismissal of theories (as opposed to claims) is inappropriate at the motion to dismiss stage.") (emphasis in original).

In the operative complaint, the California-based plaintiffs assert three claims: (1) that SkyWest underpaid them based on California's minimum wage law and local ordinances, (2) that SkyWest failed to pay overtime as required by California law,[7] and (3) that SkyWest failed to provide them with itemized wage statements as required by state law. In support of these claims, the plaintiffs also assert that they are entitled to waiting time penalties as a result of unpaid minimum wages and overtime and that SkyWest's alleged failure to comply with California labor law violates the California Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code §§ 17200 *et seq.*[8]

---

[7] In their proposed amended complaint, the *Tapp* plaintiffs add a count for the overtime claim under California law, but they had already asserted the claim in the operative complaint by alleging that SkyWest failed to pay all of the plaintiffs who were California-based overtime or proper time-and-a-half pay. *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.").

[8] The Court notes that SkyWest did not directly address the plaintiff's theory that SkyWest's alleged failure to comply with state labor law violates the UCL. The plaintiffs' articulation of their legal theory depends on the same operative facts that make up their claim that SkyWest underpaid them, failed to provide itemized wage statements, and failed to timely pay all wages. As noted above, the plaintiff only needs one legal theory that plausibly supports a claim to survive a motion to dismiss that claim. In this case, however, the Court finds that the plaintiffs base their unfair competition claim on their asserted entitlement to protections under California labor law. The unfair competition is, therefore, derivative of the other legal theories asserted by

## A. State Law

SkyWest presents three arguments in favor of dismissing the *Tapp* plaintiffs' claims based on California state law; the first applies to all of the California-based plaintiffs' state law claims, and the two remaining arguments address two specific legal theories. First, SkyWest contends that California's wage and hour laws do not apply to the California-based plaintiffs' claims because they did not allege that they primarily worked in California. Second, the SkyWest argues that there is no private cause of action under the provision requiring semimonthly payments of wages, California Labor Code § 204. And third, SkyWest contends that the plaintiffs failed to plausibly allege that they are entitled to waiting time penalties for failure to timely pay wages upon termination pursuant to California Labor Code § 203. The Court addresses each argument in turn.

### 1. Extraterritorial application of California labor law

To determine whether a California employment law applies, "each law must be considered on its own terms." *Ward v. United Airlines, Inc.*, 466 P.3d 309, 319 (Cal. 2020). As a general matter, California employment law permits some level of extraterritoriality. *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1138 (9th Cir. 2021) (holding that California overtime laws apply to a resident of California's "work outside of California for a California employer"); *Oman v. Delta Air Lines, Inc.*, 466 P.3d 325, 330 (Cal. 2020) ("The state's power to protect employees within its borders is not limited by whether the worker might be a nonresident or might be employed by a nonresident entity."). On the other hand, the Supreme Court of California has made it clear that not all employment laws apply to the same groups and that there are limits on extraterritorial applications. *See, e.g.*, *Id.* at 332 ("A non-California-based employee who works in California

the plaintiffs. The Court finds that this legal theory may be viable if at least one of the labor law theories is viable but cannot solely support the plaintiffs' claim that they were underpaid.

'only episodically and for less than a day at a time' is not entitled to a wage statement prepared according to the requirements of California law.") (citation omitted). California law recognizes that "it is not sufficient to ask whether the relevant law was intended to operate extraterritorially or instead only intraterritorially, because many employment relationships and transactions will have elements of both. The better question is what kinds of California connections will suffice to trigger the relevant provisions of California law." *Ward*, 466 P.3d at 318-19.

California law applies to the plaintiffs' overtime claims, wage statement claims, and waiting time penalty theory. In *Bernstein v. Virgin America, Inc.*, 3 F.4th 1127, 1137-38 (9th Cir. 2021), the Ninth Circuit held that California's overtime provision applies to California-based flight attendants' out-of-state work for a California employer. Although SkyWest is not a California employer (it is incorporated and headquartered in Utah), the California-based plaintiffs worked out of SkyWest's bases of operations at airports in California. Given California's "important public policy goals, such as protecting the health and safety of workers and the general public, protecting employees in a relatively weak bargaining position from the evils associated with overwork," *Sullivan v. Oracle Corp.*, 254 P.3d 237, 241 (Cal. 2011), the Court concludes that California's overtime provision applies to the California-based flight attendants. The Supreme Court of California has also held that the provision requiring itemized wage statements, California Labor Code § 226, applies to "interstate transportation workers whose work is not primarily performed in any single state, if the worker has his or her base of work operations in California." *Ward*, 466 P.3d at 325. Drawing on an analogy to section 226, the Supreme Court of California held that the provision requiring semimonthly payment of wages, section 204, has the same geographic scope as section 226, and the Ninth Circuit held that waiting time penalties under sections 201, 202, and 203 apply to California-based flight attendants. *Oman*, 466 P.3d at 332 ("[T]here is no reason to

14

interpret section 204 's geographic coverage differently from that of section 226."); *Bernstein*, 3 F.4th at 1143-44.

While the Supreme Court of California has not held that California's minimum wage provision, California Labor Code § 1182.12, applies to California-based flight attendants, the Court holds that the principles articulated by the state's Supreme Court warrant its application. "California applies its Labor Code equally to work performed in California, whether that work is performed by California residents or by out-of-state residents." *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011). For example, California's minimum wage provision applies to work performed in California by California-based truck drivers. *Ridgeway v. Walmart Inc*, 946 F.3d 1066, 1077 (9th Cir. 2020) (holding that California minimum wage law applies to California-based long-haul truckers). The Court finds that California-based flight attendants are analogous to California-based truck drivers. The plaintiffs allege significant connections to California: they are residents, work out of California locations, and begin and end all trips at their airports in California.

The closer question is whether California's minimum wage provision applies to hours worked outside of California by California-based workers. The California Supreme Court has held that courts should first interpret the statute and then determine whether there is a conflict with another state's law. *Sullivan*, 254 P.3d at 240-41. When interpreting the statute, there are two principles of California law at work: First, California courts "construe wage orders, like wage and hour laws, so as to promote employee protection." *Frlekin v. Apple Inc.*, 457 P.3d 526, 530 (Cal. 2020). The minimum wage provision "must be liberally construed in a manner that serves its remedial purposes of protecting and benefitting employees." *Id.* at 531 (quotation mark omitted). Second, and conversely, California courts "ordinarily presume the Legislature drafts laws with domestic conditions in mind." *Oman*, 466 P.3d at 330. Turning to the language of section 1182.12,

15

it provides for the state's minimum wage and defines an employer broadly as "any person who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." Cal. Lab. Code § 1182.12(b)(3). Nothing in the text addresses the geographical scope of the minimum wage provision.

The minimum wage provision is analogous to the overtime provision in its application to California residents. Both provisions dictate pay for work and also both are intended to protect employees in a weak bargaining position and to promote the wellbeing of workers. Although California's interest in workers' wellbeing may be stronger with regards to overtime, the state maintains a significant interest in insuring adequate wages for California residents. Given the purpose of the minimum wage provision and the plaintiffs significant connections to California— residency, presumably paid and taxed in California, and beginning and ending every trip in California—the Court concludes that California's minimum wage provision can be interpreted to apply to hours the California-based plaintiffs worked, whether inside or outside of California.

All this is to say only that the Court finds that the minimum wage provision *could* be construed to apply to California-based plaintiffs' work out of state, but does not address whether the application of California law to certain workers would conflict with the laws of other states that may also claim an interest in the welfare of those workers.[9] *Cf. Sullivan*, 254 P.3d at 244 ("to

---

[9] Generally, a district court exercising diversity jurisdiction "applies the choice-of-law rules of the state in which it sits." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Since *Tapp* was transferred to this Court from the Northern District of California, however, a different rule applies. "When a district court with proper venue transfers a civil case to another district court, the transferee court will apply the choice-of-law rules of the state where the transferor court sits." *Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021). California follows the governmental interest analysis approach. *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1091 (9th Cir. 2021). That approach typically involves three steps: (1) the court determines whether the laws differ, (2) the court asks what interest the different jurisdictions have in applying their laws to the dispute, and (3) the court

the extent other states have legitimate interests in applying their own wage laws to their own residents for work performed in California, the applicable conflict-of-laws analysis takes those interests into account"). SkyWest does not treat this as a conflicts issue, however, and does not suggest that another state's interests should be considered, much less that its law would apply in lieu of California's. In the absence of an identified conflict, the Court concludes that principles of California law support applying California employment law to the California-based plaintiffs regardless of whether they primarily worked in California. *Cf. Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 931 (9th Cir. 2019) ("*Sullivan* strongly indicates that California's interest in applying its laws to work performed within its borders for days or weeks at a time would reign supreme regardless of whether another state expressed an interest in applying its own wage laws instead of California's."). This holding, of course, does not preclude SkyWest from arguing that another state's law should apply to hours worked outside of California at the summary judgment stage or at trial.

All of the California-based plaintiffs have alleged that they worked some below-minimum-wage hours, with some uncompensated hours in California. California law "prohibits borrowing compensation contractually owed for one set of hours or tasks to rectify compensation below the minimum wage for a second set of hours or tasks, regardless of whether the average of paid and unpaid (or underpaid) time exceeds the minimum wage." *Oman*, 466 P.3d at 336. The Supreme Court of California also held that the anti-borrowing rule does not prohibit "compensation schemes that promise to compensate all hours worked at a level at or above the minimum wage, even if particular components of those schemes fail to attribute to each and every compensable hour a

---

identifies which jurisdiction's interest would be more impaired if the court did not apply its law and applies the law of that state. *Id.*

specific amount equal to or greater than the minimum wage." *Id.* at 341. SkyWest has not argued that its compensation scheme qualifies as such a permissible scheme. Instead, SkyWest moved to dismiss on the basis that California law does not apply to the plaintiffs' claims at all. At this stage, the Court offers no opinion as to whether SkyWest's scheme violates California law.

### 2.    Section 204

SkyWest also contends that section 204 (requiring at least twice-monthly payment of wages) does not create a private right of action. SkyWest cites no authority for that proposition, but the plaintiffs also failed to respond to this argument. Left to fill the void, the Court finds the water murky. The only case the Court has found that squarely addressed this issue found that section 204 does not create a private right of action. *Wood v. N. Am. Van Lines, Inc.*, No. 8:20-cv-02092-JLS-ADS, 2021 WL 3134203, at *6 (C.D. Cal. July 23, 2021) ("Section 204, however, does not grant employees a private right of action.") (internal quotation marks omitted). Section 210, however, provides a penalty for violations of section 204 but specifies that the employee may recover the penalty through an administrative hearing. Cal. Lab. Code § 210(b). The Ninth Circuit has held, however (albeit in an unpublished opinion), that section 210 "does not grant employees a private right of action against employers who violate section 204." *Young v. ABM Sec. Services*, 905 F.2d 1541, *5 (9th Cir. 1990). Yet in *Oman*, the California Supreme Court addressed the plaintiff's "section 204 claim" without questioning whether that provision contains a private right of action. 466 P.3d at 332.

Even if SkyWest is right and there is no private right of action under section 204, no dismissal would be warranted at this juncture because this Court cannot dismiss legal theories under Rule 12(b)(6). *BBL, Inc*, 809 F.3d at 325. The plaintiffs attempt to rely on section 204 as a legal theory to recover for SkyWest's failure to pay minimum and overtime wages. California law

may entitle the plaintiffs to distinct relief under the different provisions, but the plaintiffs' legal arguments rely on the same set of operative facts, the same claim. Given that the Court found that SkyWest's challenges to the minimum wage law theory fail—*i.e.*, that the wage and overtime claims of the California plaintiffs survive under at least one legal theory—Rule 12(b)(6) provides no basis to eliminate other theories that may not warrant relief on the claims. The time to parse out other theories offered in support of those claims is during discovery and summary judgment, not the pleading stage.

### 3. Section 203[10]

Finally, SkyWest argues that the plaintiffs failed to allege a factual basis for the section 203 claim that it willfully failed to pay wages of the terminated employees and that SkyWest's conduct was not willful and was made in good faith. Again, the plaintiffs assert this legal theory as support for its claims that SkyWest failed to pay the terminated plaintiffs' unpaid overtime and minimum wages. This time, however, the claim requires an additional factual allegations—that the plaintiffs quit or were terminated and that SkyWest failed to timely pay them their compensation after termination. In response to the plaintiffs' factual allegations, SkyWest argues that the plaintiffs failed to describe which wages were not timely paid after termination. The plaintiffs alleged that SkyWest owed them overtime and minimum wages and that their employment with SkyWest ended without timely compensation. SkyWest does not object to the underlying overtime and minimum wage claims on any basis other than its argument that California law did not apply to the plaintiffs. Thus, the Court finds that the plaintiffs plausibly alleged that they were owed overtime and minimum wage after their termination.

---

[10] This claim does not apply to Ms. Tapp, who, at the time that the plaintiffs filed their complaints, continued to work for SkyWest and had not quit or been terminated.

SkyWest contends that the plaintiffs did not plausibly allege that its alleged refusal to pay was willful because SkyWest argues that it has a good faith dispute as to whether the unpaid wages are owed. But the plaintiffs are not required to anticipate affirmative defenses and it would be improper to resolve the affirmative defense at this stage. *Johnson v. Sky Chefs, Inc.*, No. 11-CV-05619-LHK, 2012 WL 4483225, at *9 (N.D. Cal. Sept. 27, 2012) ("Whether Defendant ultimately prevails on its affirmative defense of a 'good faith dispute' has no bearing on whether Plaintiff has adequately stated a legally cognizable claim, which Plaintiff has."). The Court, therefore, declines to dismiss the plaintiffs' claim on the basis of SkyWest's affirmative defense of good faith.

**B.    Local Law**

SkyWest contends that the plaintiffs waived their arguments that local ordinances support their claims that SkyWest underpaid them. SkyWest argues in its supplemental briefing that the plaintiffs failed to allege sufficient facts to state a claim and that the plaintiffs failed to allege that they worked primarily in either Los Angeles or San Francisco. In their supplemental briefing, the plaintiffs fail to address SkyWest's arguments that the local ordinances in San Francisco and Los Angeles do not support their claims. In their initial response, the plaintiffs contend that SkyWest failed to support its argument that the California plaintiffs' local claims should be dismissed because they do not allege that they worked predominantly in Los Angeles or San Francisco. Plaintiffs also admit in a footnote to their initial response that the San Francisco Minimum Wage Ordinance does not apply. Pl. Resp. to Mot. to Dismiss 22 n.17, ECF No. 98. They ask to amend to cite the correct ordinance in that footnote. In their proposed amended complaint, the plaintiffs remove the claim based on the San Francisco ordinance instead. The plaintiffs do not provide any further support for an alternative theory under a San Francisco ordinance. or address the issue in later briefing.

Although the plaintiffs did fail to address these arguments about their local law theories in their supplemental response to SkyWest's motion, dismissal of those theories is not authorized by Rule 12(b)(6). The California plaintiffs' claim that SkyWest underpaid them; the plaintiffs assert both state and local legal theories to support that claim. As long as the facts alleged plausibly entitle the plaintiffs to relief under one of the theories asserted, the Court cannot dismiss alternative legal theories at the motion to dismiss stage. *BBL, Inc*, 809 F.3d at 325. Thus, the Court denies SkyWest's motion to dismiss in *Tapp* to the extent that it seeks dismissal of legal theories under local law.

## V.    Motion to Amend

Plaintiffs in both cases seek to add new class allegations that plaintiffs who worked periodically in California—but were based elsewhere—were underpaid based on California's minimum wage provision. SkyWest contends that these amendments would be both prejudicial and futile. The Court agrees.

First, the plaintiffs in *Tapp* do not have standing to bring these claims because they all allege that they are or were based in California. To have standing, plaintiffs must show that they suffered an injury in fact that is traceable to the defendant and redressable by the courts. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiffs seek to add a nationwide class claim—without an identified class representative—of unnamed plaintiffs who ***are not*** California based. The *Tapp* plaintiffs did not experience these particular injuries and providing them with relief

would not redress the alleged injuries to flight attendants who are based outside of California and underpaid while working in California periodically.[11]

The *Hirst* plaintiffs, by contrast, would have standing because they allege examples of having worked in California. Permitting the proposed amendment, however, would expand the scope of their complaint after years of litigation when, presumably, the plaintiffs knew that they had worked in California and could have amended their complaint much earlier.[12] On the other hand, despite years of litigation, this case is only at the motion to dismiss stage. The Court, therefore, does not solely rely on prejudice to deny the proposed amendment given the early procedural stage of the case.

Instead, the Court also finds that the amendments are futile. The plaintiffs have not shown sufficient support under California law for the proposition that the California minimum wage law applies to non-resident flight attendants who are not based in California and work only sporadically in California. SkyWest contends that these amendments must fail because the plaintiffs cannot allege that the plaintiffs worked primarily in California. While the Court disagrees that the California-based plaintiffs have to allege that they worked ***primarily*** in California to benefit from California labor laws, California law considers both whether the statute could be construed to apply as a matter of statutory interpretation and whether there would be a conflict of laws. In *Oman*, the Supreme Court of California declined to address this question of whether California's minimum wage provision could apply to flight attendants who are not based in California, 466 P.3d at 334,

---

[11] The plaintiffs allege that Plaintiff Sitavich was based out of O'Hare before being California-based, but they do not allege when that was what or that she worked hours in California during that time. Nor do they allege that she was underpaid based on California law at the time.

[12] The parties dispute when the plaintiffs obtained relevant information, and SkyWest contends that the plaintiffs strategically delayed amending their complaints.

but that Court has held, as noted above, that California's overtime provision applies to foreign employees who worked in California for "full days and weeks" at a time. *Sullivan*, 254 P.3d at 243. In support of its conclusion, the Supreme Court noted that "California . . . has expressed a strong interest in governing overtime compensation for work performed in California." *Id.*

In *Hirst*, the longest period of time the plaintiffs allege working in California is when Ms. Stover worked for 10 hours and 54 minutes in San Francisco. *Hirst* Proposed Amend. Compl. ¶ 100(b). None of the allegations come close to "full days and weeks" at a time. While California does have a strong interest in its wage laws applying to work performed in California, the plaintiffs fail to allege any examples of time worked in California that even approach the California Supreme Court's contemplation that something more than brief and episodic work in California would be required to trigger application of the California wage laws. And even if the plaintiffs could allege that they worked for a sufficient amount of time in California, another state—namely Illinois— might well have a stronger interest in the wages paid to its residents. Under these circumstances, the Court declines to apply California's minimum wage provision to non-residents who only work in California for brief and episodic periods.

*  *  *

For the foregoing reasons, SkyWest's motion to dismiss [94] in *Hirst*, No. 15 C 02036, is granted, the plaintiffs' motion to amend [136] is denied, and the case is terminated. SkyWest's motion to dismiss [82] in *Tapp*, No. 15 C 11117, is granted in part and denied in part. The plaintiffs' Arizona claims are dismissed, but their Washington and California claims survive the motion to dismiss. The plaintiffs' motion to amend [124] is denied.

Dated: August 31, 2022

John J. Tharp, Jr.
United States District Judge