IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL TAPP, RENEE SITAVICH, SARAH HUDSON, BRANDON COLSON, and BRUNO LOZANO on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SKYWEST, INC. and SKYWEST AIRLINES, INC.,<br><br>    Defendants. | No. 1:15-cv-11117<br><br>Judge John J. Tharp, Jr. |

## ORDER

For the reasons set forth in the Statement below, the defendants' motions to exclude the reports and associated testimony of David Breshears [252] [253] are granted.

## STATEMENT

The plaintiffs in this case are current and former flight attendants for defendants SkyWest, Inc. and SkyWest Airlines, Inc. (collectively, "SkyWest"). On behalf of a putative class, the plaintiffs challenge SkyWest's compensation structure, which they claim does not compensate them for all hours they work. After two motions to dismiss, the surviving claims are those brought by the plaintiffs under California, Washington (state), Los Angeles, and San Francisco law.[1]

In support of their allegations, the plaintiffs offer the report and testimony of David Breshears. Breshears, a forensic accountant, examined reports from SkyWest's scheduling and crew management systems to calculate and compare what the plaintiffs characterize as their "hours paid" versus their actual "hours worked." Plaintiffs assert that Breshears's model can be used to calculate unpaid working hours across the putative class. Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), SkyWest moves to exclude

---

[1] The surviving claims are for alleged violations of California's minimum wage laws (Cal. Wage Order No. 9, Cal. Code Regs. tit. 8 § 11090; Cal. Labor Code §§ 1182.12, 1194, and 1194.2), waiting time penalty laws (*id.* §§ 201-204), failure to provide itemized wage statements (Cal. Labor Code § 226), and the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.); San Francisco's minimum wage ordinance (San Francisco Admin. Code § 12R); Los Angeles's living wage ordinance (Los Angeles Admin. Code § 10.37 *et seq.*); and Washington's Minimum Wage Act (Wash. Rev. Code Ann. § 49.46, *et seq.*) and overtime law (*id.* § 49.46.130).

Breshears's initial report, rebuttal report, and associated testimony. For the reasons that follow, SkyWest's motions are granted.

## I. Background

To make sense of Breshears's report and SkyWest's arguments to exclude it, an overview of SkyWest's scheduling and compensation policies is necessary.

### A. "Check-In" Time

A SkyWest flight attendant is considered on "duty" as of her "report time"—usually 45 minutes before her first scheduled flight.[2] Flight Attendant Policy Manual (hereinafter, "FAPM") SP-2316.1, Ex. C to Sommerfeld Decl., ECF No. 253-1. Her "duty day" ends 15 minutes after the completion of her last scheduled flight. FAPM SP-2316.1. The time from the point at which an aircraft closes its door and pulls away from its departure gate and the point at which it pulls up to its arrival gate is referred to as "block time," which is a portion of a duty day. Am. Compl. ¶ 45, ECF No. 73. The plaintiffs allege that prior to their report time, but after arriving at the airport and going through security, they are required to "check in" for duty via SkyWest's mobile app or a terminal at the airport. *Id*. ¶¶ 38-44. While flight attendants must have checked in by their report time, they are permitted to check in earlier. Czechowski Rebuttal. ¶ 17, Ex. H to Sommerfeld Decl., ECF No. 253-1.[3]

### B. SkyWest's Pay Structure

SkyWest's flight attendants are primarily compensated based on four "formulas" set forth in the FAPM. *See* FAPM SP-2308.6-9, 2317.10; Breshears Decl. ¶ 11, Ex. A to Sommerfeld Decl., ECF No. 253-1. These formulas determine the number of "credit hours" earned by the flight attendants in any given pay period. *Id*. SkyWest multiplies the number of credit hours earned by the flight attendant by their "credit rate" to determine the flight attendant's pay. *Id*. The four formulas are: (1) a minimum guaranteed number of credit hours for each working day and/or month, regardless of how much time the flight attendant spends on duty; (2) one credit hour for every two hours of "actual duty" (*i.e.*, from report time to release time), up to 12 hours, with a "premium" rate applied thereafter; (3) a "block-to-block" formula that awards one credit hour for every hour of block time; and (4) a "time away from base" formula that provides one credit hour for every four hours that a flight attendant is away from her assigned airport, regardless of the duty hours worked. *Id*.

For every month a flight attendant works, SkyWest determines which of the above formulas results in the highest number of credit hours for the flight attendant and uses that formula

---

[2] This opinion refers to flight attendants using feminine pronouns, consistent with the fact that a substantial majority (approximately 79%) of flight attendants in the United States are women. *See, e.g.*, Fed. Aviation Admin., 2024 U.S. Civil Airmen Statistics, https://www.faa.gov/data_research/aviation_data_statistics/civil_airmen_statistics.

[3] While a flight attendant's mandatory "report time" is 45 minutes before her first scheduled flight and she must be checked in by then, she must physically report to the aircraft only 35 minutes prior to departure. Czechowski Rebuttal ¶ 17.

to award credit hours. Breshears Decl. ¶ 11. In addition to payments based on these formulas, SkyWest makes separate payments to flight attendants for mandatory tasks such as computer-based training or for drug tests taken outside duty periods. FAPM SP-2308.8; Drug & Alcohol Testing Program Standard Practice SP-153.4, Ex. D to Sommerfeld Decl., ECF No. 253-1. Beginning in June 2023, SkyWest began paying flight attendants a flat dollar amount each time they board a flight. FAPM SP-2308.22 (Flight Attendant Boarding Pay). Flight attendants on "reserve," who are on call to report for duty within two hours if needed, also earn a certain number of minimum credits whether or not they are actually called to duty. *Id*. SP-2308.8.

The plaintiffs do not dispute the mechanics of the four payment formulas, and in fact Breshears acknowledges them in his declaration.[4] Breshears Decl. ¶ 11. What the plaintiffs allege in their Amended Complaint, however, is that SkyWest's pay structure does not compensate them for all time worked. Specifically, the plaintiffs allege that:

- Prior to checking in, flight attendants must review certain information from SkyWest, including changes to Federal Aviation Administration rules, training information, and flight attendant manual updates, which sometimes must be printed and physically incorporated into the flight attendant's manual prior to the start of duty. Am. Compl. ¶¶ 38, 65.

- As soon as SkyWest flight attendants check in, they are immediately under SkyWest's control for purposes of scheduling, even if their mandatory report time is later than when they check in. *Id*. ¶¶ 41-42; Pls.' Opp. to Mot. to Exclude 6, ECF No. 255. However, that time, before reporting but after checking in, is not considered part of their paid duty day, and flight attendants are not provided with records of it.[5] Am. Compl. ¶ 40.

- SkyWest counts 15 minutes after a plane's arrival to be part of a flight attendant's "duty day," but deplaning and other post-flight tasks regularly take longer than 15 minutes, and SkyWest does not compensate any of that extra time. *Id*. ¶¶ 48-51.

---

[4] The pay formulas are, however, different than what the plaintiffs describe in their Amended Complaint, which states that "SkyWest compensates all of its flight attendants on an 'hourly' rate, yet those hours (called 'block hours' or 'block time') are only calculated from the time that the aircraft has blocked out (moved away from the gate) to when the aircraft has blocked in (pulled in to the gate). As a result, time which contributes to each flight attendant's wage compensation starts, stops, and restarts multiple times during every duty day." Am. Compl. ¶ 45. As discussed above, "block time" is one of the formulas used to determine SkyWest flight attendants' pay, but other formulas take non-block duty time into account. It is apparent, however, that these formulas have changed over time, including after some of the named plaintiffs' dates of employment. Czechowski Decl. ¶ 20, Ex. I to Sommerfeld Decl., ECF No. 253-1.

[5] The plaintiffs allege that "variations in report for duty time do not change the methodology for calculating a flight attendant's wages since 'block time' calculations do not begin until the plane's main cabin door is closed." Am. Compl. ¶ 43. Again, that is at odds with the formulas the plaintiffs appear to have accepted for purposes of their expert's calculations, one of which does take into account actual duty time as opposed to block time.

3

- SkyWest compensates flight attendants for training, but only for half of the hours it actually takes to complete the training. *Id.* ¶¶ 70-71.

- SkyWest does not compensate flight attendants for time they spend writing "irregular operations reports" after a flight. *Id.* ¶ 65.

- SkyWest only provides flight attendants with a $1.80 *per diem* travel expense for time spent away from their base airport. *Id.* ¶¶ 69, 79.[6]

- SkyWest does not compensate flight attendants for complying with mandatory drug screenings before or after flights. *Id.*[7]

The plaintiffs further allege that SkyWest obfuscates their wage statements, and that "block" time, rather than "duty" time, is the only regular working time reflected on their wage statements. *Id.* ¶ 46. This, the plaintiffs say, makes it virtually impossible for flight attendants to "reasonably calculate their actual hourly rate of pay for any given workweek." *Id.* ¶ 77.

### C. Breshears's Methodology

In producing his initial report, Breshears analyzed plaintiff Tapp's flight schedule activity and wage statements from June 1, 2023 through June 15, 2023. Breshears Decl. ¶ 10. Breshears also looked to SkyWest records that reflect Tapp's check-in time as well as her scheduled, mandatory report times. *Id.* ¶ 13. To calculate what he calls Tapp's "hours worked" for the pay period, Breshears added together (1) the time between Tapp checking in and reporting for her first flight; (2) her report time to actual departure time; (3) actual block time; and (4) 15 minutes of deplaning after each flight lands. *Id.* ¶ 15. For consecutive flights in a duty day, he included 45 minutes of report time before each subsequent flight "even though the flight attendant is still considered 'on duty' for all time between flights." *Id.* Based on Tapp's records, Breshears estimated she had worked for 53 hours from June 1-15, 2023. *Id.* ¶ 17.

Then, Breshears looked to Tapp's wage statements, which for the same period showed "39.58 hours of Regular Pay at $41.87 per hour, and 10.50 hours of Boarding Pay at $20.94 per hour," totaling 50.08 hours. *Id.* ¶ 16. Breshears subtracted that number (what he describes as "hours paid") from the 53 "estimated hours worked" and determined that Tapp had not been paid for 2.92

---

[6] This policy appears to have changed, as Breshears notes in his declaration that "Tapp received one hour of pay for each of four hours of TAFB," Breshears Decl. ¶ 11, Ex. A to Sommerfeld Decl., ECF No. 253-1, and the FAPM dated June 2023 reflects a one credit hour for four actual hours policy. FAPM SP-2317.10.

[7] As noted above, SkyWest's Drug and Alcohol Testing Program Standard Practice, dated March 2018, indicates that flight attendants are paid $20 for random tests administered "before or after a trip or during an overnight trip[.]" Drug & Alcohol Testing Program Standard Practice SP-153.4. However, the only named plaintiff who still worked for SkyWest in 2018 was plaintiff Tapp. Czechowski Decl. ¶ 24.

hours of work during that pay period.[8] *Id*. ¶ 18. Based on her rate of $41.87 per hour, Breshears determined that Tapp's potential claim for unpaid wages during the two-week period was $122.26. *Id*. Breshears also noted that (1) Boarding Pay was not implemented until June 2023, leading to potentially higher claims for earlier pay periods, and (2) on one day during the pay period, Tapp worked more than 8 hours, potentially entitling her to premium overtime pay. *Id*. ¶¶ 17, 19. Breshears further opined that he could use this same methodology for the hours and wage data of all class members, applying the relevant state or locality's overtime provisions. *Id*. ¶ 20.[9]

SkyWest offered the declaration of its own expert, Emil Czechowski, a statistician. Czechowski opined that due to "the largely undocumented and individualized nature of the various tasks that Plaintiffs allege were not properly compensated," it was not reasonable for the plaintiffs to rely on "representative" data, particularly since they "only requested and received limited data for the four named Plaintiffs, and [] discovery is now closed." Czechowski Decl. ¶ 11, Ex. I to Sommerfeld Decl., ECF No. 253-1. Even for the named plaintiffs, Czechowski argued, no data was available to show whether the allegedly uncompensated tasks were performed off duty hours or not. *Id*. ¶ 30. For example, determining whether, when, and for how long members of the plaintiff class had reviewed printed manual updates would be a highly individualized inquiry for which no data exists. *Id*. ¶ 32. Further, Czechowski argued, there were too many variations among the plaintiffs—such as dates of employment, origins or destinations of flights, frequency of overnights, etc.—to reliably estimate how frequently they *might* have performed work tasks on or off duty. *Id*. ¶ 23. That is, the dates of a plaintiff's employment might impact the number of irregular operations reports and trainings she would have been required to complete, and the length of her flights and layovers would affect how much time she would have had to complete those tasks while still on duty. *Id*. ¶¶ 24, 26. Again, Czechowski asserted, such determinations are too individualized to be estimated and projected across even the small subset of named plaintiffs, let alone the entire putative class.

Czechowski also performed his own calculations to determine whether the named plaintiffs were paid less than minimum wage for all time worked. To do so, he utilized historical payroll, flight, and duty data for each of the named plaintiffs, going as far back as 2011. *Id*. ¶¶ 3-9. For data from before March 2020, which is all that is applicable to any named plaintiff except for Tapp, Czechowski divided the flight attendants' total pay by their "productive hours," defined as their duty hours. *Id*. ¶ 20. For data after March 2020, Czechowski applied the "most conservative pay formula" available, which was first introduced into the SkyWest compensation structure in March 2020 and provides flight attendants one credit hour for every two hours of actual duty. *Id*. Czechowski found that for each named plaintiff, across all available data, SkyWest "exceeded the

---

[8] On three specific days during that period, however, Breshears found that Tapp had been paid for *more* hours than she actually worked. Breshears Decl. ¶ 17.

[9] Breshears also asserted that he could determine what days flight attendants missed breaks or meals and how much in meal period premiums were owed to each. *Id*. ¶ 22. However, the plaintiffs have not, to date, argued that SkyWest failed to provide them with meal breaks.

minimum wage requirements" of both California and Washington during all the named plaintiffs' periods of employment. *Id.* ¶ 21.[10]

In a rebuttal report, Breshears applied the methodology set forth in his initial report to the historical data Czechowski attached to his report for each of the named plaintiffs—not just Tapp, and not just one two-week pay period. Breshears Rebuttal ¶ 24, Ex. B to Sommerfeld Decl., ECF No. 253-1. This time, however, Breshears calculated "hours paid" based not on the plaintiffs' wage statements (as he did in his initial report), but on hours data obtained from Czechowski's report. *Id.* ¶ 28. His methodology for determining "hours worked" was the same as he undertook in his initial report; that is, he assumed the plaintiffs were working beginning at check-in, and for 15 minutes of deplaning after each flight. *Id.* ¶ 32. Using this new data, Breshears concluded that, across their full employment history through March 1, 2023, the named plaintiffs had worked 2,103.18 hours for which they were not paid. *Id.* ¶ 24.

## II. Discussion

SkyWest moves to exclude Breshears's reports and testimony on the grounds that: (1) Breshears's methodology is unreliable because it incorrectly assumes flight attendants are working from the time they check in to the time they report for duty, and for a full 15 minutes after a flight arrives at its destination gate; (2) Breshears's methodology is unreliable because it uses credit hours as the basis for "hours paid" by SkyWest and compares them to "hours worked," when credit hours do not correspond to 60-minute increments of time; (3) his analysis assumes SkyWest must pay a specific dollar amount to its flight attendants for each hour they work, when alternative compensation structures have passed muster under California law; (4) he applies the wrong rate of pay to the plaintiffs' allegedly unpaid hours and overtime; and (5) Breshears is not qualified to offer expert testimony on the plaintiffs' damages.

The admission of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert*. Under those authorities, a district court "must engage in a three-step analysis" to determine whether expert testimony is admissible: "It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (quotation marks omitted).

### A. Reliability

"The court's gatekeeping function focuses on an examination of the expert's methodology" and ***not*** "[t]he soundness of the factual underpinnings of the expert's analysis [or] the correctness of the expert's conclusions," which are left to the trier of fact. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Indeed, "[t]he trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Id.* at 719. Flawed data inputs or factual assumptions relate to "the weight of

---

[10] One of the named plaintiffs, Sarah Hudson, was paid below minimum wage for her accrued duty hours during a pay period in February 2014 due to jury duty and injury leaves; however, an adjustment was made in the subsequent pay period that retroactively compensated her for unpaid time during that earlier period. Czechowski Decl. ¶ 22.

6

the evidence, not to its admissibility." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015). "The district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013).

However, where a methodology is untethered to "the facts of the case" or is "plagued by logical deficiencies," courts may find that methodology unreliable and therefore inadmissible under *Daubert*. *Summit 6*, 802 F.3d at 1296. Expert testimony should be excluded if it is based on assumptions that are "so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (quotation marks omitted). Where expert opinion is "connected to existing data only by the *ipse dixit* of the expert," a "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

SkyWest points to two shortcomings in Breshears's methodology which, it argues, render his report unreliable. The first relates to Breshears's assumptions about the plaintiffs' actual working hours. As discussed *supra*, Breshears assumed that flight attendants were working from the time they checked in—either at a terminal in the airport or via a mobile app—to their mandatory report time, the point at which SkyWest considers flight attendants on duty for pay formula purposes. That check-in-to-report-time interval was included in Breshears's estimated "actual hours worked" for Tapp and the other named plaintiffs. Breshears similarly included a 15-minute increment after each block ended to account for deplaning time.

SkyWest argues that including these intervals in Breshears's estimate of the flight attendants' working hours is contrary to the evidence gathered to date and artificially inflates the estimates. SkyWest points to the testimony of SkyWest flight attendants, including Tapp herself, in which they attest that even when they arrive early at the airport to check in, they are largely on their own time until it is time to report for duty. *See* Defs.' Mot. to Exclude 7, ECF No. 253. The flight attendants report that they may use the time to socialize with other flight attendants, grab a meal, or even watch a movie on their phones. *Id*. Breshears's model, therefore, relies on the "flawed assumption" that flight attendants are working from the time they check in to their mandatory report time. *Id*. at 7. For the Tapp pay period that Breshears analyzed in his initial report, this unstructured check-in-to-report-time accounted for 6.43 hours of allegedly unpaid work (though after accounting for all awarded credit hours, including those for boarding, Breshears ultimately calculated just 2.92 hours of uncompensated work for Tapp). *Id*. Excluding those 6.43 hours, SkyWest argues, would result in *overpayment* for that period, since Tapp would have been paid for 3.51 hours of nonworking time.[11] *Id*.

---

[11] SkyWest also argues that it would be similarly faulty to assume deplaning takes 15 minutes after each flight arrives at its destination gate because multiple flight attendants testified that deplaning typically takes about half that time. Defs.' Mot. to Exclude 8. The plaintiffs' Amended Complaint says, however, that SkyWest already includes 15 minutes of deplaning time in each reported duty day. Am. Compl. ¶ 50. Breshears's assumption that flight attendants should be compensated for that period therefore seems fair.

The plaintiffs argue that "requiring flight attendants to arrive early for check-in and remain until their 'report time' exerts control over the flight attendants which entitles them to fair compensation," and that in any event, disputes about the degree to which flight attendants are under SkyWest's control during that time are more appropriately left to the trier of fact because they go to the merits of the plaintiffs' claims rather than the reliability of Breshears's calculations. Pls.' Opp. 6.

The defendants have credibly countered the idea that flight attendants are under SkyWest's control as soon as they check in for duty, noting SkyWest has no policy prohibiting flight attendants from leaving the airport after they check in, and citing additional flight attendant testimony that they can and do leave the airport during that time.[12] Defs.' Reply in Support of Mot. to Exclude 10, ECF No. 257. In contrast, the plaintiffs point to no particular evidence indicating they are obligated to remain on site after arriving at the airport and checking in. However, the Court agrees with the plaintiffs that doubts about Breshears's decision to include this post-check-in, pre-report-time interval in his quantification of uncompensated working hours are doubts about the quality of the data Breshears is using rather than the methodology itself. "[A]rguments about how the selection of data inputs affect the merits of the conclusions produced by an accepted methodology should normally be left to the jury." *Manpower*, 732 F.3d at 808. That hours added to Breshears's model to calculate damages may not actually reflect working hours is an issue that relates to "the factual underpinnings of his calculation," and is therefore more appropriately addressed with a complete record at trial or summary judgment. *Id*. at 810. At that stage, SkyWest will have the opportunity to "cross-examine vigorously, to present contrary evidence, and to give careful instructions on the burden of proof." *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000).

SkyWest's second argument regarding the reliability of Breshears's model, however, speaks more directly to the structure of the methodology. SkyWest points out that Breshears compares "hours paid" to estimated "hours worked" to determine "unpaid hours worked." However, "hours paid" and the estimated "hours worked" are not based on the same metric. In his initial report, Breshears gleaned "hours paid" from Tapp's wage statements, which reflect the number of ***credit hours*** for which Tapp received pay in any given day. Czechowski Rebuttal ¶ 13. As discussed above, however, credit hours do not necessarily correspond to 60-minute intervals of time. Credit hours are determined by SkyWest's four pay formulas; they are influenced by the number of 60-minute intervals flight attendants are on duty, but do not mirror them. For example, under one formula, SkyWest pays flight attendants one credit hour for every two *actual* hours of duty time; each credit hour is paid at the flight attendant's credit rate. In this example, using credit hours as a proxy for "hours paid" would only account for half of the hours actually compensated by SkyWest. While Breshears acknowledges SkyWest's compensation formulas, Breshears Decl. ¶ 11, he does not take them into account for his calculations. Rather, Breshears accepts each credit hour as an actual hour that can be compared to, and subtracted from, his estimate of a flight attendant's time working that day. His calculation of unpaid hours, attached as an exhibit to his

---

[12] Further, there is only a ten-minute interval between required check-in (45 minutes before flight) and reporting to the gate (35 minutes before flight) and that interval is accounted for in the actual duty hour formula. Czechowski Rebuttal ¶ 17. There is, then, no basis to add check-in time to reporting time as another component of flight attendant compensation.

declaration, includes a column labeled "Basis of Pay" that appears to list the formula under which Tapp's credit hours were determined, but it does not seem to have any bearing on how he determined "hours paid."[13] Ex. B to Breshears Decl.

SkyWest argues that this "comparison is meaningless," and the Court agrees. Defs.' Mot. to Exclude 9. It does not help the plaintiffs that they do not once address this quantitative fallacy in their opposition to SkyWest's motion to exclude. They argue—responding to SkyWest's arguments regarding the legal standard under which its compensation structure should be examined—that SkyWest is prohibited, under California law, from "borrowing compensation contractually owed for one set of hours or tasks to rectify compensation below the minimum wage for a second set of hours or tasks." Pls.' Opp. 11 (quoting *Oman v. Delta Air Lines Inc.*, 466 P.3d 325, 336 (Cal. 2020)). But that does not explain or countenance Breshears's comparison of two distinct units of time—a credit hour as compared to an actual hour—as a reliable methodology for calculating unpaid working hours. That logical gap renders Breshears's analysis "fatally flawed because [he] compared two different *types* of data." *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, 980 F. Supp. 2d 1031, 1049 (N.D. Ind. 2013) (emphasis in original).

Breshears's report, then, constitutes the type of "apples and oranges" analysis that is inherently unreliable and cannot be admitted for purposes of calculating damages in this case.

### B. Legal Standard and Qualifications

Having found that Breshears's methodology is unreliable, and thus inadmissible, due to its reliance on "credit hours" rather than actual hours, the Court will only briefly address SkyWest's remaining arguments with respect to Breshears's report and qualifications.

#### 1. Legal Standard

"Expert opinions that are contrary to law are inadmissible." *Loeffel Steel Prods. v. Delta Brands*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005). Where an expert opinion speaks to a legal standard that is not at issue in the case, that opinion cannot be said to be "helpful to the trier of fact." *Id*. "Testimony based on an incorrect legal standard may confuse the jury, and may be proscribed by the Court pursuant to Rule 403 of the Federal Rules of Evidence." *Noskowiak v. Bobst SA*, No. 04-cv-0642, 2005 WL 2146073, at *5 (E.D. Wis. Sept. 2, 2005).

SkyWest argues that the California Supreme Court's decision in *Oman v. Delta Air Lines Inc.* governs whether or not its compensation structure violates California's minimum wage laws, and that Breshears's model does not take that standard into account. In *Oman*, the court held that Delta's flight attendant compensation scheme, which closely mirrors the scheme SkyWest uses today, did not violate California's minimum wage laws. 466 P.3d at 341. That scheme similarly

---

[13] It is also worth noting that Breshears adjusted his method for determining "hours paid" in his rebuttal report, looking to certain "EarnCodes" contained in Czechowski's earnings data that appeared to have "hours as the unit of measure." Breshears Rebuttal ¶ 28, Ex. B to Sommerfeld Decl., ECF No. 253-1. SkyWest still argues, and the plaintiffs do not dispute, that the rebuttal report's measure of "hours paid" *still* measures "credit hours earned." Defs.' Reply in Support of Mot. to Exclude 4-5, ECF No. 257.

based a flight attendant's pay on whichever of four formulas resulted in the highest pay over a pay period: the flight attendant's flight time (comparable to SkyWest's "block time"), a minimum duty period credit, a "1 for 2 duty period credit," or an "hours away from base" guarantee. *Id*. at 337-338. The court held that these formulas guaranteed that "flight attendants are always paid above the minimum wage for the hours worked during each rotation without borrowing from compensation promised for other rotations." *Id*. at 338. In doing so, the *Oman* court confirmed that Delta's compensation structure did not violate California's "no-borrowing" rule, which prohibits an employer from reducing a promised level of compensation in order to "cover" unpaid tasks or hours of work such that all work may be said to have been paid at minimum wage.[14] *Id*. at 337. *See also Armenta v. Osmose, Inc.*, 37 Cal. Rptr. 3d 460, 468 (Cal. Ct. App. 2005) (rejecting the "averaging method . . . to assess whether a minimum wage violation has occurred"). The court held that "the scheme, taken as a whole, does not promise any particular compensation for any particular hour of work [but rather] offers a guaranteed level of compensation for each duty period and each rotation." *Oman*, 466 P.3d at 339; *see also Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1137 (9th Cir. 2021) (applying *Oman*'s reasoning to similar formula-based flight attendant payment structure and reversing district court's summary judgment award to plaintiffs).

The plaintiffs argue that *Oman* does not give SkyWest *carte blanche* to require them to perform tasks outside their duty periods without compensation, and that the time between a flight attendant's check-in and report time "is exactly [the] type of borrowing of compensation that *Oman* did not condone because this time is not accounted for in the SkyWest employment contract." Pls.' Opp. 11. But the question under *Oman* is whether, under any compensation formula, "flight attendants are [] paid above the minimum wage for the hours worked during each rotation." *Oman*, 466 P.3d at 338. Breshears's model assumes that SkyWest promised its flight attendants a specific hourly wage (their credit rate) and failed to pay them that wage during the gap between check-in and report time. But this does not speak to the correct legal question, which is whether or not, under any of SkyWest's formulas, the flight attendants were paid minimum wage for all hours worked. Even accepting, for the sake of argument, Breshears's assumption that check-in-to-report-time is compensable working time, because SkyWest does not promise its flight attendants any particular hourly pay, the plaintiffs would need to divide the number of hours they allege they actually worked by the total compensation they were provided to determine if they were paid minimum wage or not. Czechowski does this to a degree in his report, though of course does not include the time after check-in and before reporting as part of his calculation for time actually worked.

The Court agrees with SkyWest, then, that Breshears's report does not speak to the correct legal standard and is therefore unlikely to help—and more likely to confuse—the trier of fact.

### 2. Qualifications

A witness is qualified if "the area in which [he or she] has superior knowledge, skill, experience, or education" matches "the subject matter of the [proposed] testimony." *Carroll v.*

---

[14] For example, if the California minimum wage is $16.00 per hour, and an employer contracts to pay $20 per hour for four hours of work for a total of $80, the employer cannot then require five of hours of work rather than four without violating California's minimum wage law because $80 averaged out over five hours still technically meets the minimum wage threshold.

*Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990); *see also* Fed. R. Evid. 702 (expert witness is one qualified "by knowledge, skill, experience, training, or education"). SkyWest argues briefly that Breshears is not qualified as an expert because he has no training in survey research and is not a statistician. His lack of qualification in the area, they argue, is evinced by his unreliable methodology. But SkyWest offers no particular reason why someone trained only in accounting, as opposed to survey research or statistics, could not produce a reliable damages methodology. His curriculum vitae indicates he has done so in several previous cases. *See* Breshears Decl. ¶¶ 4-5. The Court is not persuaded by the argument that Breshears is unqualified to provide expert testimony in this case.

        **C.**      **Rebuttal Report**

SkyWest finally argues, in its motion to exclude and in a separate motion to strike the rebuttal report [252], that Breshears's rebuttal report is improper for the same reasons his initial report was improper, and because his use of the data in Czechowski's report goes beyond the proper purpose of a rebuttal report and advances "new evidence" to bolster his initial report. Because the Court has found that Breshears's report is inadmissible both for its unreliability and irrelevance to the correct legal issues, it grants the separate motion to strike the rebuttal report [252] on that basis and declines to rule on whether or not Breshears's use of the additional data (which SkyWest argues the plaintiffs had access to before Czechowski's report) was improper.

**III.**     **Conclusion**

For the foregoing reasons, SkyWest's motions to exclude the reports and associated testimony of David Breshears [253] [252] are granted.

Date: March 28, 2025

John J. Tharp, Jr.
United States District Judge