IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL TAPP, RENEE SITAVICH, SARAH HUDSON, BRANDON COLSON, and BRUNO LOZANO on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SKYWEST, INC. and SKYWEST AIRLINES, INC.,<br><br>Defendants. | No. 15-cv-11117<br><br>Judge John J. Tharp, Jr. |

## ORDER

For the reasons set forth in the Statement below, the plaintiffs' motion for class certification [260] is denied.

## STATEMENT

The plaintiffs in this case are current and former flight attendants for defendants SkyWest, Inc. and SkyWest Airlines, Inc. (collectively, "SkyWest"). On behalf of a putative class, the plaintiffs challenge SkyWest's compensation structure, which they claim does not compensate them for all hours they work. After two motions to dismiss, the surviving claims are those brought by the plaintiffs under California, Washington (state), Los Angeles, and San Francisco law. The plaintiffs, pursuant to Federal Rule of Civil Procedure 23, now seek certification of a class of California-based plaintiffs, a class of Washington-based plaintiffs, and two subclasses of Los Angeles- and San Francisco-based plaintiffs.

### I. Background

A detailed overview of the plaintiffs' claims, and SkyWest's compensation structure, was set forth in the Court's ruling on SkyWest's motions to exclude the report and associated testimony of David Breshears, the plaintiffs' proffered expert witness [271]. It is not necessary to fully recount all those details here, except to establish that in their motion for class certification, the plaintiffs argue primarily that SkyWest failed to pay them for hours that they were working before their mandatory "report time"—the time at which, 45 minutes before their first scheduled flight, they are (or were) considered "on duty." The plaintiffs allege that "flight attendants do not begin to accumulate payable credit hours until after they have entered the airport, passed through security, 'checked-in' for duty, walked through the airport, accomplished any other necessary tasks

such as certifying that they have reviewed 'before you go' materials, [] completed required training, and reported at the gate." Pls.' Mot. for Class Cert. 3, ECF No. 260.

For purposes of calculating unpaid wages, the plaintiffs have specifically identified their "check in" as the point at which SkyWest exerts control over them and thus, they argue, should be paying them. *Id*. Flight attendants are required to "check in," either at a computer in the airport or through a mobile app, no later than their mandatory report time. Spagnolo Decl. ¶ 6, ECF No. 264-2; Wolford Decl. ¶ 9, ECF No. 264-3. Their "report time" is the beginning of a "duty day" for purposes of calculating payment under certain of SkyWest's payment formulas.[1] Flight Attendant Policy Manual (hereinafter, "FAPM") SP-2316.1, Ex. N to Sommerfeld Decl., ECF No. 264-1. However, they can check in up to three hours earlier, after they have passed through security. Spagnolo Decl. ¶ 12; Espadero Decl. ¶¶ 7-8, Ex. A to Sommerfeld Decl., ECF No. 264-1. The plaintiffs argue that because SkyWest can impose disciplinary measures on flight attendants who are late to their mandatory report time, SkyWest effectively requires them to check in early to ensure they are on time for duty. Pls.' Reply in Support of Mot. for Class Cert. 3-4, ECF No. 265 ("[F]light attendants must arrive and check-in early at the airport in order to ensure they satisfy their job requirements . . . or otherwise face a very real possibility of reporting late to their assigned gates . . . .").

The plaintiffs further assert that SkyWest provides them with "inaccurate wage statements that prevent flight attendants from understanding how much they are paid," and seek a declaration that SkyWest must provide clear, detailed wage statements and explanations as to the nature of certain payments reflected on those statements. Pls.' Mot. for Class Cert. 1, 7. They seek class certification on their claims for unpaid wages and declaratory judgment as well as their various derivative claims, including waiting time penalties under California law and violations of California's Unfair Competition Law.

## II.     Discussion

All class actions must meet the requirements of Federal Rule of Civil Procedure 23(a):

1. The class must be so numerous that joinder of all members is impracticable (numerosity);
2. There are questions of law or fact common to the class (commonality);
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality);
4. The representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

In addition, a class action must fall into one of the categories of cases set forth in Rule 23(b). The plaintiffs here primarily seek certification under Rule (b)(3) (where questions of law or fact common to all class members predominate over questions affecting individual members and a class action is superior to other methods of adjudication) but also set forth an argument for

---

[1] The four formulas under which SkyWest flight attendants are paid are detailed in the Court's ruling [271] on SkyWest's motions to exclude the reports and associated testimony of the plaintiffs' expert, David Breshears.

certification under Rule 23(b)(2) (where final injunctive or declaratory relief is appropriate to the class as a whole).

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). "Rule 23 does not set forth a mere pleading standard," and plaintiffs seeking class certification must "affirmatively demonstrate [their] compliance" with that Rule. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). A class can only be certified if the Court is "satisfied, after a rigorous analysis," that the prerequisites for certification have been met. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). While a motion for class certification is by no means a motion for summary judgment and does not require the plaintiffs to prove every element of each claim, courts can and must wade into the merits of the plaintiffs' claims as necessary to determine the propriety of certification. *See Wal-Mart*, 564 U.S. at 351 ("Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim." (quotation marks omitted)); *Meek v. SkyWest, Inc.*, 562 F. Supp. 3d 488, 493 (N.D. Cal. 2021) ("[M]erits questions may be considered to the extent, and only to the extent, that they are relevant for determining whether the Rule 23 prerequisites for class certification are satisfied . . . [But the] class certification procedure is decidedly not an alternative form of summary judgment or an occasion to hold a mini-trial on the merits." (quotation marks omitted)).

SkyWest does not dispute the putative class's numerosity, typicality, or adequacy of representation under Rule 23(a)(1) and (3)-(4). It focuses instead on Rule 23(a)(2)'s requirement that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50 (quotation marks omitted). A class-wide proceeding must be capable of generating "common answers apt to drive the resolution of the litigation." *Id*. at 350 (cleaned up). However, "[c]ommonality demands more than a showing that the class members have all suffered a violation of the same provision of law at the hands of the defendant." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (quotation marks omitted). The inquiry of Rule 23(a)(2) focuses on the ***conduct*** of the defendant. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id*. at 756. But "[w]here the defendant's allegedly injurious conduct differs from plaintiff to plaintiff, . . . no common answers are likely to be found." *Id*.

In *Wal-Mart Stores, Inc. v. Dukes*, a putative class of plaintiffs alleged their employer had discriminated against them based on sex in violation of Title VII. 564 U.S. at 343. As evidence of "questions of law or fact common" to the class, the plaintiffs offered statistical evidence about pay disparities within the company, anecdotal reports from more than 100 female employees, and expert testimony regarding Wal-Mart's company culture. *Id*. at 346 (quotation marks omitted). The Court found that certification was not proper because the plaintiffs had not shown there was a uniform "corporate policy" of discrimination—only a "policy of *allowing discretion* by local supervisors over employment matters." *Id*. at 355 (quotation marks omitted). Following *Wal-Mart*, putative classes of employees who can show a common injury, but not "significant proof" of a common company policy causing that injury, have been deemed not to have met their burden under Rule 23(a)(2). *Id*. at 353 (cleaned up); s*ee also, e.g.*, *Bolden v. Walsh Constr. Co.*, 688 F.3d 893,

3

896-98 (7th Cir. 2012) (plaintiffs alleging racial discrimination testified that their experience of racial hostility varied from supervisor to supervisor and therefore had not shown a common question); *Vang v. Kohler Co.*, 488 Fed. App'x 146, 147 (7th Cir. 2012) (plaintiffs alleging that individual supervisors instructed them not to record overtime, *against* the defendant's established policy, had not shown common question); *Creal v. Group O, Inc.*, 155. F. Supp. 3d 831, 838-39 (N.D. Ill. 2016) (decertifying class of plaintiffs alleging unpaid pre-shift work where plaintiffs could not point to any company-wide policy requiring them to perform pre-shift work); *Elder v. Comcast Corp.*, No. 12-cv-01157, 2015 WL 3475968, at *8 (N.D. Ill. June 1, 2015) (service technicians alleging defendants failed to pay for all hours worked pointed to no corporate policy requiring off-the-clock work, and proffered testimony which showed varied reasons for working before or after shifts, meaning no "common answers" could be generated by a class action).

SkyWest argues that the plaintiffs have failed to put forward any evidence—in the form of a written policy or testimony—of any common practice or policy imposed by SkyWest on its flight attendants which requires them to work before their scheduled report time. The plaintiffs conflate flight attendants' ***option*** to check in before their scheduled report time with a ***requirement*** that they do so, SkyWest contends. Similarly, it says, the plaintiffs have not pointed to any persuasive evidence showing that they are under SkyWest's "control" after checking in early. Examining the showing made by the plaintiffs at this stage—and acknowledging that the plaintiffs are in no way required to prove each element of their claims in a motion for class certification—the Court must agree with SkyWest.

The plaintiffs' thesis of SkyWest's liability to the putative class is that it has a "uniform policy" of not paying for work performed during flight attendants' check-in-to-report time. That is the common injury plaintiffs allege. "[T]he correct inquiry," then, is whether the plaintiffs "were in fact working and/or were under SkyWest's control" during that interval. *Meek.*, 562 F. Supp. 3d at 496 (cleaned up). Absent a common answer to that inquiry, the plaintiffs cannot satisfy the commonality requirement.

According to the plaintiffs, SkyWest's rule that flight attendants must check in by their mandatory report time or else face "consequences" is the primary policy that requires them to begin work before their gate report time.[2] Given the unpredictability of passing through security and navigating crowds to reach their assigned gates, the plaintiffs say they *must* check in early (*i.e.*, before they are required to report at their gate) to ensure they are not late. Pls.' Reply 3-4. This argument is entirely unpersuasive. The plaintiffs point to flight attendant declarations—notably, those offered by SkyWest, not by the plaintiffs themselves—in which flight attendants indicated they preferred to arrive at the airport early to ensure they were not late in reporting for

---

[2] The plaintiffs also point, albeit briefly, to SkyWest's "Scheduled Assignment Deviation" (SAD) policy, which the plaintiffs say allows any flight attendant to be rescheduled or moved to a different flight any time after they check in. But a closer examination of the FAPM's section on SAD reveals that it refers only to an instance "when a flight attendant fails to report or is late to report to an assignment as published." FAPM SP-2307.3. It is not at all clear how the SAD policy would allow SkyWest to place a flight attendant who, for example, had checked in for duty two hours early, on a new, previously unscheduled flight.

duty. But that testimony reflects a preference by those employees to ensure adequate arrival time, not a SkyWest policy mandating early arrival or work during the interval between check-in and reporting to the gate. *See Creal*, 155 F. Supp. 3d at 838 ("[T]he record demonstrates no . . . early-in policy, and instead shows that [the defendant's] employees *could* punch in up until their shift start-time . . ." (quotation marks omitted) (emphasis added)).

The fact that SkyWest requires flight attendants to report to work on time and allows them to check in early if they so choose in no way indicates that SkyWest requires flight attendants to come to work early. That a flight attendant might add a cushion of time to her trip to the airport in case she is unexpectedly delayed, for example, says nothing about when she must check in once she arrives at the airport; if she arrives with time to spare, she is not required to check in any earlier than she would have had she made it just in the nick of time. It is entirely at the discretion of the flight attendant as to when she checks in for a flight,³ and that fact undermines the notion that flight attendants are subject to SkyWest's control during the interval between check-in and report time. Depending on how the flight attendant exercises her discretion, there might not be any such interval—or it might be several hours long. That kind of variability is the antithesis of commonality.

The limited testimony available in the record decisively rebuts the plaintiffs' contention that SkyWest has a common policy requiring pre-shift work. After several months of discovery, the plaintiffs append only two flight attendant depositions to their motion for class certification: those of Cheryl Tapp and Bruno Lozano, two of the named plaintiffs. In the portion of his deposition that the plaintiffs attach, Mr. Lozano did not address early check-in policies at all. And as SkyWest points out, Ms. Tapp's testimony on the subject is not clear. She stated that she was supposed to be on the aircraft 35 or 45 minutes before departure, depending on the aircraft, and that what she does before her shift "depends": "If I go get lunch or dinner, I wait until I'm ready to go to work, or sometimes I'll go behind security and I'll go do some work on the computer, like videos, and I'll check in. Every day is different at the airlines." Tapp. Dep. 73:1-18, Ex. B to Briet Decl., ECF No. 260-1. The Court cannot fathom how testimony that "every day is different at the airlines" provides any "glue" to cohere plaintiffs' claims into a common question across more than 3,000 potential class members. *Wal-Mart*, 564 U.S. at 352.

SkyWest, by contrast, offers the declarations of seven flight attendants who uniformly indicate that while they may choose to check in early for their own reasons, they are on their own time until it is time to report for duty. *See, e.g.*, Craig Decl. ¶ 7, Ex. C to Sommerfeld Decl., ECF No. 264-1 ("From the time I check in until I report to the gate, I have no assigned or required work responsibilities or obligations and am free to use my time however I choose."); O'Brien Decl. ¶ 10, Ex. E to Sommerfeld Decl., ECF No. 264-1 ("If I check in early, I have no responsibilities until 35 minutes before my departure time, which is when I need to be at the departure gate ready to board the aircraft."); Hill Decl. ¶ 9, Ex. F to Sommerfeld Decl., ECF No. 264-1 ("From the time I

---

³ SkyWest's flight attendant declarations indicate flight attendants are allowed to check in up to three hours before their mandatory report time. *See, e.g.*, Espadero Decl. ¶ 7; O'Brien Decl. ¶ 8, Ex. E to Sommerfeld Decl., ECF No. 264-1.

check in until I report to the gate, there is no work I need to be doing.").[4] The plaintiffs argue, for the first time in their reply brief, that these declarations demonstrate "a policy and practice of checking in *at least* ten minutes before their report time at the assigned gate," because the flight attendants declare that they had to check in 45 minutes before their first scheduled flight, but arrive at the gate 35 minutes before. Pls.' Reply 2. But a flight attendant's "duty day," for purposes of SkyWest's compensation formulas, begins 45 minutes before her first scheduled flight—not 35 minutes beforehand. FAPM SP-2316.1. There is no indication in the record that plaintiffs are not paid for the full 45 minutes before their first scheduled flight.

This is admittedly not a case like *Wal-Mart* or its progeny where the discretion of individual managers undermined the plaintiffs' claims that they were subject to a uniform company policy. But the plaintiffs here have similarly failed to point to any concrete requirement or policy imposed by SkyWest that would result in unpaid working hours. The plaintiffs cite to *Meek v. SkyWest, Inc.*, to support their proposition that SkyWest's "uniform conduct and policies regarding compensation of its employees support[s] certification." Pls.' Mot. 12 (citing *Meek*, 562 F. Supp. 3d at 501). But *Meek* does not help the plaintiffs' cause. The court in that case found that the plaintiffs (SkyWest's "frontline" employees—ground operations workers paid by the hour) had set forth enough evidence to "support[] the finding that there was . . . a common pattern and practice that could affect the class as a whole"—but that was as to the plaintiff's meal period and rest break claims, which have no parallel in this case. *Meek*, 562 F. Supp. 3d at 499-501 (quotation marks omitted). More germanely, the *Meek* plaintiffs had also argued, as do the plaintiffs here, that SkyWest's compensation policies failed to account for time spent working before their scheduled work day started, but the court found that the plaintiffs had not established commonality as to those claims because "only 25 of the 42 class member declarations submitted by plaintiffs even mentioned this issue [and those that did] almost always used . . . [a] stock formulation with no further factual detail." *Id.* at 496. "Such boilerplate language," the Court held, "does not establish commonality." *Id.* The plaintiffs couldn't very well ignore *Meek*, but their effort to turn a sow's ear into a silk purse falls far short of success.

The plaintiffs here have not put forward *any* declarations or other evidence suggesting that SkyWest requires them to work before their scheduled report time without pay. Without more, the

---

[4] As noted above, the plaintiffs have focused in their motion on check-in time as the point at which they should begin receiving compensation. Their Amended Complaint, however, alleges more specifically that they are not compensated for tasks like training or reviewing manual updates. Am. Compl. ¶¶ 65, 69-71, ECF No. 73. With the exception of Tapp's reference to "videos" in her deposition, the plaintiffs have pointed to no evidence showing that flight attendants are required to complete those tasks off hours or that they are not compensated for doing so, and the flight attendant declarations from SkyWest specifically address these issues. *See* Espadero Decl. ¶¶ 16-17 ("Most of the time, Flight Attendants will do [computer-based training] on sits between flights because there is nothing else to do. We receive additional pay for completing CBT's whether we do them while on duty or at home."); Ben-Meir Decl. ¶ 13, Ex. D to Sommerfeld Decl., ECF No. 264-1 ("I get paid for the time spent doing [trainings] and, if I do them while I am on duty, I am also paid under one of the negotiated pay formulas in the flight attendant contract.").

Court cannot conclude that the "same conduct or practice" of SkyWest gave rise to the plaintiffs' claims for unpaid wages. *Suchanek*, 764 F.3d at 756.

The plaintiffs' arguments regarding SkyWest's alleged failure to provide itemized wage statements under California law similarly fail to point to the existence of a common question. The plaintiffs argue, without much analysis, that "a jury could hold that SkyWest's flight [attendants'] wage statements are inaccurate based on SkyWest's evidence that interpreting them was convoluted and required cross-referencing against information in other documents." Pls.' Mot. for Class Cert. 11-12. Plaintiffs cite to a portion of the deposition of Steven Spagnolo, SkyWest's Rule 30(b)(6) designee, stating that it is not possible for flight attendants to see from their wage statements which compensation formula has been applied to that pay period and generally explaining what is reflected on the wage statements. Spagnolo Dep. 149:4-151:11, Ex. D. to Briet Decl., ECF No. 260-1. But the plaintiffs cite to no testimony from flight attendants indicating that they cannot make sense of their wage statements. Further, to the extent the plaintiffs allege that the wage statements do not show all working hours because they do not show the hours starting at a flight attendant's "check in," the Court has already found that they have not put forward evidence indicating they are required to work after checking in but before reporting for duty. The plaintiffs have not shown that a common question exists as to SkyWest's alleged failure to provide itemized wage statements. Having failed to do so with respect to either their unpaid wages or itemized wage statement claims, the plaintiffs similarly cannot show a common question exists as to their derivative claims for waiting-time penalties or the California Unfair Competition Law.

\*\*\*

The parties make additional arguments regarding whether or not common issues predominate over individual ones for purposes of certification under Rule 23(b)(3), and whether an injunctive or declaratory-relief class under Rule 23(b)(2) is appropriate. The Court need not rule on those issues because the plaintiffs have not met their burden to show, by a preponderance of the evidence, that there are questions of law or fact common to the putative class pursuant to Rule 23(a)(2). On that basis, the Court denies the plaintiffs' motion for class certification.

Date: March 28, 2025

John J. Tharp, Jr.
United States District Judge